1  SHIRLI FABBRI WEISS (Bar No. 079225)
   shirli.weiss@dlapiper.com
2  ALYSSON RUSSELL SNOW (Bar No. 225185)
   alysson.snow@dlapiper.com
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:  619.699.3650
5  Fax:  619.699.2701

6
   Attorneys for Defendant
7  ALEXANDER YAROSHINSKY

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11 | IN RE CONNETICS CORPORATION | CASE NO.  3:07-cv-02940-SI |
12 | SECURITIES LITIGATION | CLASS ACTION |
13 | | **ALEXANDER YAROSHINSKY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
14 | This Document Relates To: | |
15 | ALL ACTIONS. | |
16 | | |
17 | | Date:        October 19, 2007 |
18 | | Courtroom:   10 |
   | | Time:        9:00 a.m. |
19 | | Judge:       Honorable Susan Illston |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1
II. ISSUES TO BE DECIDED ............................................................................................. 3
III. PERTINENT ALLEGATIONS ...................................................................................... 3
    A. Dr. Yaroshinsky .................................................................................................. 3
    B. April 13, 2005 FDA Conference Call ................................................................ 4
    C. April 26, 2005 Press Release and Earnings Call ................................................ 4
    D. FDA Sends Connetics a Non-Approvable Letter for Velac ............................... 4
    E. Plaintiff Does Not Allege Facts Showing It Traded Contemporaneously with Dr. Yaroshinsky ........................................................................................ 5
IV. APPLICABLE PLEADING STANDARDS .................................................................. 5
V. PLAINTIFF FAILS TO PLEAD CONTEMPORANEOUS TRADES ........................... 6
    A. Plaintiff's April 18 and 19 Trades Were Not Contemporaneous With Dr. Yaroshinsky's April 21 or 27 Trades ............................................................ 7
    B. Plaintiff's Failure to Plead Contemporaneous Sales Eviscerates Its Standing – General Allegations that the Other Class Members Might Have Traded Contemporaneously are Insufficient ..................................................... 8
VI. THE SECTION 10(B) CLAIM MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ............ 9
    A. Connetics' April 26, 2005 Disclosures ............................................................. 10
    B. Mr. Wiggans' May 12, 2005 Announcement Regarding His Rule 10b5-1(c) Plan .................................................................................................................. 11
VII. THE SECTION 20A CLAIM MUST BE DISMISSED ON OTHER GROUNDS ...... 12
VIII. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

*Alaska Elec. Pension Fund v. Adecco S.A.*,
    371 F. Supp. 2d 1203 (S.D. Cal. 2005) ................................................................... 5

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ......................................................................... 6, 7, 8

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ................................................................................. 6

*In re Aldus Sec. Litig.*,
    1993 WL 121478 (W.D. Wash. March 1, 1993) ................................................ 9, 12

*In re BellSouth Corp. Sec. Litig.*,
    355 F. Supp. 2d 1350 (N.D. Ga. 2005) ............................................................... 10

*In re Genentech, Inc. Sec. Litig.*,
    1989 WL 201577 (N.D. Cal. Dec. 11, 1989) .................................................. 7, 8, 9

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) .................................................................. 8, 9

*In re NUKO Info. Sys., Inc. Sec. Litig.*,
    199 F.R.D 338 (N.D. Cal. 2000) ......................................................................... 11

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ................................................................................. 9

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) .............................................................. 10

*In re Verifone Sec. Litig.*,
    784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) .......... 8, 9

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007) ............................................................................ 6, 12

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ............................................................................ 6, 7, 8

*O'Shea v. Littleton*,
    414 U.S. 488, 94 S. Ct. 669 (1974) ....................................................................... 7

*Shurkin v. Golden State Vintners, Inc.*,
    2005 WL 1926620 (N.D. Cal. Aug. 10, 2005) ...................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) .............................................................................. 6, 9, 11

*Wietschner v. Monterey Pasta Co.*,
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) .............................................................. 11

# TABLE OF AUTHORITIES
**(continued)**

**Page**

## STATUTES

15 U.S.C. § 78t-1(a) ............................................................................................................. 7

15 U.S.C. § 78t-1(b)(1) ....................................................................................................... 5

15 U.S.C. § 78u-4(b)(2) ...................................................................................................... 5

15 U.S.C. § 78t(a). .............................................................................................................. 2

H.R. Rep. Nos. 141-13692, 141-13702 (1994) .................................................................. 5

15 U.S.C. § 78u-4 ............................................................................................................... 1

15 U.S.C. §§ 78j(b) ............................................................................................................. 2

**NOTICE OF MOTION AND MOTION; RELIEF REQUESTED**

PLEASE TAKE NOTICE that on October 19, 2007, at 9:00 a.m., or at such later date and time as the Court may order, in Courtroom 10 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Alexander Yaroshinsky ("Defendant" or "Dr. Yaroshinsky") will and hereby does move to dismiss Lead Plaintiff's Amended Consolidated Class Action Complaint ("Complaint").

Dr. Yaroshinsky seeks an order dismissing the Complaint with prejudice under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "Reform Act") and Federal Rules of Civil Procedure 9 and 12(b)(6) (respectively, "Rule 9" and "Rule 12(b)(6)"). This motion is based on this Notice; the Memorandum of Points and Authorities, *infra*; the accompanying Declaration of Alysson Snow; the Request for Judicial Notice; the Proposed Order; the Court's files for this action; and any oral argument of counsel at the hearing. Dr. Yaroshinsky also formally joins the motion to dismiss of Defendant Connetics Corporation ("Connetics").

**JOINDER IN MOTION TO DISMISS OF CONNETICS CORPORATION**

Connetics is also moving to dismiss the Complaint. Its motion demonstrates that the Complaint should be dismissed because it fails to plead the requisite elements of a securities fraud claim against any defendant, namely the Plaintiff lacks standing and fails to properly allege misrepresentation or scienter. To avoid unnecessary duplication of argument, this motion incorporates Connetics' motion and the contentions made therein. Dr. Yaroshinsky's motion focuses and addresses only those allegations specifically pertaining to Dr. Yaroshinsky.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff alleges that Connetics, a pharmaceutical company, misled investors by making false and misleading public statements about the Food and Drug Administration ("FDA") status of a drug in development, and by engaging in so-called "channel stuffing." Yet Plaintiff does not allege that Dr. Yaroshinsky, Connetics' former Vice President of Biostatics and Clinical Operations, had anything to do with these matters. Indeed, far less than 10% of the Complaint

(approximately 20 paragraphs out of 372) has anything to do with Dr. Yaroshinsky. Rather, all the Complaint alleges is that Dr. Yaroshinsky engaged in insider trading by selling Connectics stock after attending an April 13, 2005 conference call with the FDA, the substance of which was publicly disclosed less than two weeks later (April 26, 2005). Plaintiff asserts that this renders Dr. Yaroshinsky liable under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), *et seq.*) and the accompanying Rule 10b-5 (17 C.F.R. § 240.10b-5); and under Section 20A of the Exchange Act (15 U.S.C. § 78t(a)).

An essential element of both claims is that Plaintiff plead that it traded contemporaneously with the insider. To do so, Plaintiff, at a minimum, must plead the specific dates on which *it* traded and the insider traded. Plaintiff must so plead even if it is representing a putative class— general allegations that other class members traded contemporaneously with the insider are not enough. Here, Plaintiff alleges that it traded on only two days (April 18 and 19, 2005). These trades were *before* the only two dates specifically identified on which Dr. Yaroshinsky allegedly traded (April 21 and 27, 2005). It is well-settled, and logical, that a plaintiff's trade cannot be contemporaneous with an insider's trade for Exchange Act purposes when it occurs *prior to* the insider's trade. As Plaintiff has failed to plead this essential element of each of its claims against Dr. Yaroshinsky, this motion must be granted on this basis alone.

The Section 10(b) claim must be dismissed for another reason: Plaintiff fails to plead sufficient facts to give rise to a strong inference that Dr. Yaroshinsky acted with scienter, meaning deliberate recklessness or conscious misconduct. This is especially the case with any trades allegedly made *after* the public disclosure on April 26, 2005 of the purported information discussed in the FDA conference call. Indeed, the Complaint's allegations cut against the requisite strong inference of scienter.

The Section 20A claim must be dismissed for independent reasons. First, a Section 20A claim requires an independent, underlying violation of the Exchange Act. The only Exchange Act violation Plaintiff asserts against Dr. Yaroshinsky is the Section 10(b) claim, which Plaintiff fails to sufficiently plead. Second, Plaintiff seeks relief which is not permitted under Section 20A: compensatory damages and/or rescission, interest, and attorneys' fees and costs. As the

1  only remedy available under Section 20A is disgorgement of profits, this claim should be
2  dismissed for this reason as well.
3      For these reasons, Dr. Yaroshinsky respectfully requests that the Court grant this motion
4  to dismiss with prejudice. The first complaint related to this action was filed over nine months
5  ago and Plaintiff has already amended its complaint twice. No amount of re-pleading can cure
6  the fatal defects in Plaintiff's complaint: that Plaintiff did not engage in contemporaneous trades
7  with Dr. Yaroshinsky and Dr. Yaroshinsky did not act with the requisite scienter.

**II.   ISSUES TO BE DECIDED**

9       1.   Whether Plaintiff's Section 10(b) claim should be dismissed because:
10          (a)   Plaintiff fails to plead particularized facts that it traded Connetics' stock
11  contemporaneously with Dr. Yaroshinsky; and
12          (b)   Plaintiff fails to plead particularized facts supporting a strong inference of
13  Dr. Yaroshinsky's scienter.
14      2.   Whether Plaintiff's Section 20A claim should be dismissed because:
15          (a)   Plaintiff fails to plead particularized facts that it traded Connetics' stock
16  contemporaneously with Dr. Yaroshinsky;
17          (b)   Plaintiff does not plead an underlying violation of Section 10(b); and
18          (c)   Plaintiff seeks relief not available under Section 20A.

**III.  PERTINENT ALLEGATIONS**

20      For background purposes, Dr. Yaroshinsky incorporates by reference the "Statement of
21  Facts" section of the Memorandum of Points and Authorities In Support of Connetics' Motion to
22  Dismiss ("Connetics' MTD"). This section of the present memorandum summarizes the pertinent
23  allegations relating to Dr. Yaroshinsky.

24      **A.   Dr. Yaroshinsky.**

25      Dr. Yaroshinsky is a scientist. He served as Vice President of Biostatics and Clinical
26  Operations for Connetics. (Compl. ¶ 25.) The Complaint does not allege that Dr. Yaroshinsky
27  made any statements to investors or that his responsibilities included the preparation of
28  /////

1  Connectics' public statements.  The Complaint does not allege that Dr. Yaroshinsky had any role
2  in the sales of Connectics' products or the preparation of its financial statements.

### B.  April 13, 2005 FDA Conference Call.

Plaintiff asserts that on April 13, 2005, Connectics held a conference call with members of the FDA's Executive Carcinogenicity Assessment Committee ("ECAC") to discuss its comments and conclusions on the New Drug Application ("NDA") for Velac. (Compl. ¶ 68.) Dr. Yaroshinsky allegedly participated in this call, along with members of Connectics' senior management. (*Id*. ¶¶ 25, 68.) The ECAC allegedly indicated that the "positive dermal" experienced in the preclinical transgenic mouse study was a serious impediment for the approval of Velac for market and sale in the United States. (*Id*. ¶ 69.) The ECAC allegedly stated that: (i) "[Velac] may be a tumor promoter or a carcinogen"; and (ii) "this is a serious issue for a topical product for the treatment of acne." (*Id*. (*citing* SEC Am. Compl. ¶ 20).) The Complaint does *not* allege that either the ECAC, or the full FDA, stated that the FDA would not approve Velac.

### C.  April 26, 2005 Press Release and Earnings Call.

On April 26, 2005, Connectics issued a press release and conducted a conference call, in which it disclosed the April 13 FDA Conference Call and findings of a toxicology panel convened on June 28, 2004.[1] (Compl. ¶¶ 74-75.) Plaintiff nevertheless characterizes the disclosures as only "partial" disclosures. (*Id*. ¶ 74.)

### D.  **FDA Sends Connectics a Non-Approvable Letter for Velac.**

After the close of the market on Friday, June 10, 2005, Connectics received a non-approvable letter for Velac from the FDA. (Compl. ¶ 82.) The Complaint does not allege that prior to this letter, the FDA informed either Connectics or Dr. Yaroshinsky that it would not approve Velac. On Monday, June 13, 2005, before the market opened, Connectics issued a press release and SEC Form 8-K disclosing the FDA letter. (*Id*.)

/////
/////

---

[1] Dr. Yaroshinsky specifically incorporates the statements made in Connectics' brief relating to the April 26 disclosures.

### E. Plaintiff Does Not Allege Facts Showing It Traded Contemporaneously with Dr. Yaroshinsky.

During the time period relevant to this motion, Plaintiff purchased Connetics stock on only two occasions: April 18 and 19, 2005. (Compl. ¶ 371.) These purchases were made *before* the only two dates on which Plaintiff *specifically* alleges that Dr. Yaroshinsky sold Connectics stock: April 21, 2005 and April 27, 2005. (*Id.* ¶¶ 89, 90, 92.) Plaintiff also alleges that Dr. Yaroshinsky traded Connetics' stock "sometime between May 2005 and June 10, 2005," and that Dr. Yaroshinsky realized over $650,000 in profits from selling Connectics stock during the purported Class Period of January 27, 2004 to July 9, 2006. (*Id.* ¶¶ 25, 89, 90, 92.)

## IV. APPLICABLE PLEADING STANDARDS

Plaintiff alleges securities fraud, based on purported insider trading in violation of the Exchange Act. The strict pleading requirements of the Reform Act apply to these claims. 15 U.S.C. §§ 78u-4(b)(1), (2) (standards for pleading falsity and scienter apply to all private actions arising under Exchange Act). Federal Rule of Civil Procedure 9(b) requires that many aspects of securities fraud claims be pleaded with specificity, but Congress found that Rule 9(b) had "not prevented abuse of the securities laws by private litigants." H.R. REP. NOS. 141-13692, 141-13702 (1994) (Conf. Reps.) (report of Conference Committee responsible for Reform Act as enacted). To forestall this abuse, Congress passed the Reform Act. In this insider trading context, the heightened pleading standard under the Reform Act requires that a plaintiff must plead the specific dates on which the plaintiff and the insider traded and, if not the same dates, specific facts as to why the trades should be deemed "contemporaneous." *See* Section V, *infra*.

The Reform Act's heightened pleading standards also mandate that the plaintiff's complaint, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind," meaning scienter. 15 U.S.C. § 78u-4(b)(2). These particularized facts giving rise to a strong inference of scienter must be pleaded on an individualized, defendant-by-defendant basis; scienter allegations cannot be attributed from one individual to another. *Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1220-21 (S.D. Cal. 2005). An inference is not

"strong" unless it is "powerful," "cogent" and "compelling"—it is not enough that the inference be "reasonable" or "permissible." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). If a complaint fails to plead a strong inference of scienter, dismissal is mandatory. 15 U.S.C. § 78u-4(b)(3)(A).

In this regard, the Reform Act departs from the standard of review under Rule 12(b)(6) relating to *inferences*. In the non-securities litigation context, courts construe inferences in a light most favorable to the plaintiff. Under the Reform Act, this is not true. Rather, "[t]he strength of an inference cannot be decided in a vacuum," and the court must draw ***all*** inferences from the allegations of the complaint—including the fact that a complaint does *not* include allegations one would expect to see if a defendant acted with scienter—and from matters of judicial notice, including inferences that are unfavorable to the plaintiff. *Tellabs*, 127 S. Ct. at 2510; *accord Gompper v. VISX, Inc.*, 298 F.3d 893, 896-97 (9th Cir. 2002) ("the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.") (emphasis in original). Indeed, to meet this high pleading standard, the inference of scienter from a plaintiff's allegations "must be more than merely 'reasonable' or 'permissible' – it must be cogent…and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510.

The Complaint fails to meet these elevated pleading requirements for its Section 10(b) claim against Dr. Yaroshinsky, and hence must be dismissed. Likewise, as Section 20A is a derivative claim, the purported insider trading claim under that statute must be dismissed. *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007) ("Claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act."); *Shurkin v. Golden State Vintners, Inc.*, No. C 04-3434 MJJ, 2005 WL 1926620, at *15 (N.D. Cal. Aug. 10, 2005) (dismissing Section 20A claim for failure to plead Section10(b) claim).

### V. PLAINTIFF FAILS TO PLEAD CONTEMPORANEOUS TRADES

It is well-settled that in order to state an insider trading claim under Section 10(b), a plaintiff must plead ***with particularity*** that the plaintiff traded contemporaneously with the insider. *Neubronner v. Milken*, 6 F.3d 666, 669-70 (9th Cir. 1993); *Brody v. Transitional Hosps.*

*Corp.*, 280 F.3d 997, 1001 (9th Cir. 2002). The same is true with respect to Section 20A claims. Section 20A provides:

> Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, *contemporaneously with the purchase or sale of securities that is the subject of such violation*, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78t-1(a) (emphasis added). Contemporaneous trades also are necessary for a plaintiff to have standing to bring the insider trading claims. *See Brody*, 280 F. 3d at 1001. Failure to plead contemporaneous trades, therefore, requires dismissal. *See id.*; *Neubronner*, 6 F.3d at 669-70.

In order to plead contemporaneous trades (and hence a claim as well as standing), the plaintiff must, at minimum, plead the specific dates on which it traded. General assertions that other class members may have traded contemporaneously are insufficient. *See Brody*, 280 F. 3d at 1001; *see also O'Shea v. Littleton*, 414 U.S. 488, 493-94, 94 S. Ct. 669, 675 (1974). The plaintiff also must plead the specific dates on which the insider traded. General allegations that the insider traded during a certain time period are insufficient. *See In re Genentech, Inc. Sec. Litig.*, No. C-88-4038-DLJ, 1989 WL 201577, at *6 (N.D. Cal. Dec. 11, 1989). These requirements make sense, for a court must have this information in order to determine whether the plaintiff contemporaneously traded with the insider.

As demonstrated below, the Complaint fails to meet these pleading standards. Hence, Dr. Yaroshinsky's motion to dismiss may and should be granted in its entirety on this basis alone.

### A. Plaintiff's April 18 and 19 Trades Were Not Contemporaneous With Dr. Yaroshinsky's April 21 or 27 Trades.

In defining "contemporaneous" trading, courts have held that where a plaintiff trades prior to an insider's trades, the contemporaneous trading requirement is not met. The concept behind providing an insider trading private right of action is to allow those who have actually been injured by an insider's trading on non-public information to recover. *See Neubronner*, 6 F.3d at

669-70. If a plaintiff trades prior to the alleged insider trading, it is impossible for it to have purchased the shares sold by the insider at a time when the insider, but not the purchasers, possessed material nonpublic information. Hence, courts have held there is no recovery for an insider's trades made *after* the plaintiff's purchases. *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992) ("No liability can attach for trades made by plaintiffs before the insider engages in trading activity"), *aff'd*, 11 F.3d 865 (9th Cir. 1993).

For example, in *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620 (E.D. Va. 2000), the plaintiff alleged that she traded on October 25, 1999, and that four of the alleged insider defendants traded *after* her trade. *Id*. at 664 n. 91. The court noted that no liability can attach if plaintiff's trades are before the insider's trades. *Id*. (*citing Verifone*, 784 F. Supp. at 1489). As the court explained, if the plaintiff trades before the defendant, the plaintiff is not disadvantaged. The court thus held that plaintiff failed to state an insider trading claim against the defendants who traded after her. *Id*. at 664.

The same logic applies here. Plaintiff alleges that it traded on only two days: April 18 and April 19, 2005. Plaintiff identifies only two specific dates on which Dr. Yaroshinsky traded: April 21 and April 27, 2005. These trades were after Plaintiff's trades, and hence were not contemporaneous as a matter of law. Plaintiff's only other allegation with respect to Dr. Yaroshinsky's transactions is that he purchased 2,020 puts at unspecified times between May 12 and June 10, 2005, which is insufficient to plead contemporaneous trading.[2] *See Genentech*, 1989 WL 201577, at *6.

**B.     Plaintiff's Failure to Plead Contemporaneous Sales Eviscerates Its Standing – General Allegations that the Other Class Members Might Have Traded Contemporaneously are Insufficient.**

In order to avoid dismissal, Plaintiff also generally alleges that other parties—putative class members— traded during the entire time period.

These allegations are irrelevant. To have standing, the plaintiff must meet the contemporaneous requirement (*Brody*, 280 F. 3d at 1001), which means that the *plaintiff* itself

---

[2] These allegations also must fail because Plaintiff does not allege that it sold these (or any other) puts to Dr. Yaroshinsky.

must have traded contemporaneously with the insider. *See Neubronner*, 6 F.3d at 669-70. A plaintiff *cannot* rely on assertions that others in the class may have been harmed when they allegedly trade contemporaneously. *See Brody*, 280 F. 3d at 1001; *O'Shea*, 414 U.S. at 493-94. If a plaintiff lacks standing to bring a claim against the insider personally, and it is the sole claimant and class representative on the insider trading counts, the claims must be dismissed. *See In re Verifone Sec. Litig.*, 784 F. Supp. at 1489 ("Where a plaintiff lacks standing to bring a claim personally, that plaintiff cannot represent the class."); *In re MicroStrategy, Inc. Sec. Litig.* 115 F. Supp. 2d at 664; *In re Aldus Sec. Litig.*, No. C92-885C, 1993 WL 121478, at *7 (W.D. Wash. March 1, 1993); *Genentech,* 1989 WL 201577 at *6 (dismissing insider trading claim where plaintiff lacked standing for failure to meet contemporaneous requirement).

As demonstrated above, Plaintiff did not trade contemporaneously with Dr. Yaroshinsky and, therefore, lacks standing to bring a claim against Dr. Yaroshinsky. Because Plaintiff is the sole claimant and class representative on the Section 10(b) and Section 20A counts, this motion to dismiss must be denied in its entirety for lack of standing.

**VI.   THE SECTION 10(B) CLAIM MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER**

Even if Plaintiff has plead contemporaneous transactions (which it has not), the Section 10(b) claim must be dismissed for an independent reason: The Complaint fails to plead a strong inference that Dr. Yaroshinsky acted with scienter with respect to his alleged transactions after April 26, 2005, as required by 15 U.S.C. § 78u-4(b)(2). To plead scienter, Plaintiff must allege "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct" and a "mental state embracing intent to deceive, manipulate, or defraud." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974-75 (9th Cir. 1999). As noted above, in assessing whether a complaint meets this requirement, a court must consider all reasonable inferences to be drawn from the complaint and the judicially noticeable record, including inferences unfavorable to the plaintiffs; and dismiss unless the resulting inference of scienter is cogent and at least as compelling as any opposing inference of nonfraudulent intent. *See* Section IV, *supra*. It is not enough that the inference is merely plausible or reasonable. *Id.* Stock sale

allegations, by themselves, cannot plead a cogent and compelling inference of Dr. Yaroshinsky's scienter. *See In re Splash Tech. Holdings*, *Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1081 (N.D. Cal. 2001). This is especially the case here, where Plaintiff's purported claims are based solely on stock sales themselves. Asserting that a defendant's stock sales were made with scienter because the defendant sold stock would be a circular argument.[3]

The Complaint does not satisfy these standards for any alleged transaction on the part of Dr. Yaroshinsky after April 26, 2005, including his April 27 trade and the unspecified transactions thereafter. Rather, allegations of the Complaint—Connetics' April 26 disclosures regarding Velac—and a fact of which the Court may take judicial notice—the publicly disclosed adoption of a trading plan under SEC Rule 10b5-1(c) by Thomas Wiggans, Connetics' Chief Executive Officer—establish that the more cogent and compelling inference is that by April 26, Dr. Yaroshinsky believed that he did not possess any material non-public information and that he could trade without violating the securities laws.

### A.     Connetics' April 26, 2005 Disclosures

The Complaint admits that on April 26, 2005, by press release and in a conference call, Connetics disclosed information related to the April 13 FDA conference call and the transgenic mouse study results for Velac. While Plaintiff asserts that the April 26 disclosures were false or misleading, it does not allege specific facts indicating that Dr. Yaroshinsky knew or would have any reason to believe that all material facts related to the April 13 FDA call and the transgenic mouse study were not disclosed on that date. To this end, the Complaint does not allege that there was any material variation between what had been disclosed by the FDA on April 13 and what Connetics disclosed on April 26. Rather, as shown in Connetics' MTD, the April 26 press release and conference call neither contained false or misleading statements, nor failed to disclose any information about the April 13 FDA call required under the federal securities laws. (*See* Connetics' MTD, Section IV(C) (*citing*, *inter alia, Brody*, 280 F.3d at 1006).)

---

[3] *See In re BellSouth Corp. Sec. Litig.,* 355 F. Supp. 2d 1350, 1374 (N.D. Ga. 2005) (plaintiffs' "principal argument seems to be that this conduct occurred and that its occurrence itself evidences each defendant acted with scienter. The logic is circular.").

Given Connectics' disclosures, it is impossible that Dr. Yaroshinsky could have traded on non-public material information allegedly known to him or thought that he was doing so. Rather, the more cogent and compelling inference is that Dr. Yaroshinsky believed, and had no reason not to believe, that all material non-public information regarding the April 13 call and the transgenic mouse study had been disclosed to the market, and that there was no legal impediment to trading. Thus, not only do Plaintiff's allegations *not* give rise to an inference of scienter that is "cogent and at least as compelling as [this] opposing inference of nonfraudulent intent"; they do not give rise to an inference of scienter that is even "plausible or reasonable." *Tellabs*, 127 S.Ct. 2504-05.

**B.     Mr. Wiggans' May 12, 2005 Announcement Regarding His Rule 10b5-1(c) Plan.**

After April 27, Dr. Yaroshinsky did not allegedly trade again until May 12. (Compl. ¶¶ 90-91 (alleging unspecified trades between May 12 and June 10).) On May 12, Mr. Wiggans, Connectics' Chief Executive Officer, announced that he had entered into a stock trading plan pursuant to SEC Rule 10b5-1(c), 17 C.F.R. § 240.10b5-1(c). (*See* Declaration of Alysson Snow Exhibit B, attaching the May 12, 2005 Form 8-K disclosing the plan.[4]) Under Rule 10b5-1(c), an insider may enter into a pre-programmed trading plan at a time he is not aware of material nonpublic information, and later trades executed pursuant to such a plan will not be considered to have been made on the basis of material nonpublic information even if the insider is in possession of such information at the time the trades are executed. *See* Selective Disclosure and Insider Trading, 65 Fed. Reg. 51,716 (Aug. 24, 2000) (codified at 17 C.F.R. pts. 240, 243, 249) (attached as Exhibit A to the Snow Declaration); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003) (Rule 10b5-1(c) allows corporate insiders to set a schedule by which to sell shares, and may give rise to inference that sales are not suspicious).

/////

---

[4] Dr. Yaroshinsky requests that the Court take judicial notice of this document, as it is a document filed with the SEC. *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d at 986 (judicially noticing SEC filings was proper); *In re NUKO Info. Sys., Inc. Sec. Litig.*, 199 F.R.D 338, 341 (N.D. Cal. 2000) ("In a securities fraud action, the court may take judicial notice of public records outside the pleadings, including SEC filings.").

1 The judicially noticeable fact that Connectics' CEO, who presumably was kept appraised of the FDA status of Velac and the contents of the Company's public statements, entered into such a trading plan and publicly disclosed that he was doing so, would have reinforced the signal given to Dr. Yaroshinsky by the April 26 disclosures: Connetics had disclosed all material information concerning the April 13 FDA call and transgenic mouse study. The Complaint does not allege any facts as to how or why Dr. Yaroshinsky would have thought that not all material information had been disclosed by the time Mr. Wiggans entered into the 10b5-1(c) plan, or that Mr. Wiggans (or Dr. Yaroshinsky) possessed any nonpublic material information as of that date. Hence, this fact, too, bolsters the conclusion that the more reasonable, compelling (and accurate) inference to be drawn for purposes of this motion is that not only did Dr. Yaroshinsky have no reason to believe he possessed material non-public information after the April 26 disclosures, but that all non-public material information must have been disclosed by that time, and by the time of the (unspecified) additional transactions from May 12 to June 10.

## VII. THE SECTION 20A CLAIM MUST BE DISMISSED ON OTHER GROUNDS

Even if Plaintiff had sufficiently pled contemporaneous sales (which it has not), its Section 20A claim must be dismissed on independent grounds.

First, as noted above, claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act. *See* Section IV, *supra* (*quoting Johnson*, 490 F.3d at 781). As the Complaint does not plead an underlying Section 10(b) violation on the part of Dr. Yaroshinsky, the Section 20A claim must be dismissed as well.

Second, the Section 20A claim should be dismissed under Rule 12(b)(6) for failure to state a claim for which the relief requested can be granted. Federal law limits contemporaneous trading actions to profit gained or loss avoided. 15 U.S.C. § 78t-1(b)(1). The total amount of damages imposed by Section 20A cannot exceed the profit gained or loss avoided in the transaction that is the subject of the alleged violation. *Id*; *In re Aldus Sec. Litig.*, 1993 WL 121478 at *7 (the only remedy available for alleged "wrongful insider trading is disgorgement of trading profits, and is only available to actual or potential victims of the insider trades.") Plaintiff, in contrast, seeks compensatory damages and/or rescission, interest, and attorneys' fees

and costs. This relief is not available under Section 20A, which is limited to disgorgement. Therefore, Plaintiff has failed to state a claim for which the type of relief requested can be granted, and the Section 20A claim should be dismissed.

## VIII.  CONCLUSION

The Complaint fails to plead any insider trading claim against Dr. Yaroshinsky because it failed to allege facts with particularity evincing that Plaintiff traded contemporaneously with Dr. Yaroshinsky. As a result, Plaintiff lacks standing to pursue these claims. The Complaint also fails to plead an insider trading claim under Section 10(b) because it does not plead specific facts giving rise to a strong inference of Dr. Yaroshinsky's scienter. The Section 20A claim also fails because Plaintiff fails to allege an underlying Section 10(b) violation, and because it seeks relief that is not available under Section 20A. There is no indication that any of these defects (which go to standing and other fundamental elements) may be remedied by amendment. Therefore, for these reasons, the Court should dismiss Plaintiff's claims against Dr. Yaroshinsky with prejudice.

Dated: August 13, 2007

DLA PIPER US LLP


By  /s/ Alysson Snow
SHIRLI FABBRI WEISS
ALYSSON RUSSELL SNOW
Attorneys for Defendant
ALEXANDER YAROSHINSKY