BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
DAVID R. STICKNEY   (Bar No. 188574)
NIKI L. MENDOZA (Bar No. 214646)
MATTHEW P. SIBEN   (Bar No. 223279)
TAKEO A. KELLAR   (Bar No. 234470)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
davids@blbglaw.com
nikim@blbglaw.com
matthews@blbglaw.com
takeok@blbglaw.com
      -and-
CHAD JOHNSON
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:     (212) 554-1400
Fax:     (212) 554-1444
chad@blbglaw.com

Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CONNETICS SECURITIES LITIGATION | Case No. C 07-02940 SI<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS YAROSHINSKY'S AND ZAK'S MOTIONS TO DISMISS PLAINTIFF'S AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:          October 19, 2007<br>Time:          9:00 a.m.<br>Courtroom:  10<br>Judge:        Hon. Susan Illston |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT ..................................................................................................2

      A.    Summary Of Allegations ....................................................................2

      B.    The Complaint Sufficiently Pleads
            Contemporaneous Trading For Standing
            To Assert §§ 10(b) And 20A Claims ..................................................3

      C.    The Complaint Raises A Strong Inference Of
            Scienter ..............................................................................................6

      D.    Defendants' Alternative Arguments Are Not
            Grounds For Dismissal .......................................................................8

III.  CONCLUSION................................................................................................9

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                           <u>Page</u>

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*,
    2007 U.S. App. LEXIS 19917 (5th Cir. Aug. 21, 2007) ...................................................8

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................................7

*In re DDi Corp. Sec. Litig.*,
    2005 WL 3090882 (C.D. Cal. July 21, 2005)...................................................................7

*In re Eng'g Animation Sec. Litig.*,
    110 F. Supp. 2d 1183 (S.D. Iowa 2000) ..........................................................................4

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) .............................................................................4

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007) ...........................................................................................8

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ...............................................................................................5

*No. 84 Employer-Teamster Joint Council Pension Trust Fund*
    *v. America West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...........................................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) .....................................................................................4

*In re Qwest Commc'ns Int'l Sec. Litig.*,
    396 F. Supp. 2d 1178 (D. Colo. 2004)..............................................................................4

*S.E.C. v. Clark*,
    915 F.2d 439 (9th Cir. 1990) ...........................................................................................3

*United States v. O'Hagan*,
    521 U.S. 642 (1997).....................................................................................................3, 8

<u>Statutes, Rules & Regulations</u>

15 U.S.C.
    § 78a...................................................................................................................................5
    § 78t-1(c)...........................................................................................................................5

17 C.F.R.
    § 240.10b5-1(c).................................................................................................................8

I.    **INTRODUCTION**

The Court-appointed Lead Plaintiff Teachers' Retirement System of Oklahoma ("Lead Plaintiff") hereby submits this opposition to Alexander Yaroshinsky's Motion to Dismiss Plaintiff's Amended Consolidated Class Action Complaint (the "Yaroshinsky Motion" or "Yaroshinsky Mot.") and Victor E. Zak's Motion to Dismiss, which incorporates by reference the Yaroshinsky Motion.  Defendant Victor E. Zak ("Zak") initially filed an Answer to the Complaint [Docket No. 20] but then sought to dismiss the Complaint, incorporating the arguments from Yaroshinsky's motion [Docket No. 38].

Yaroshinsky was the Vice President of Biostatics and Clinical Operations of Connetics Corp. ("Connetics" or the "Company").[1]  ¶25.  At all relevant times between January 27, 2004 until July 9, 2006 (the "Class Period"), Yaroshinsky was responsible for conducting required testing and obtaining Food and Drug Administration ("FDA") approval of Connetics' new acne medication, Velac.  In his role as an officer of Connetics, Yaroshinsky was directly informed by the FDA that Velac would not likely be approved.  ¶¶68-69.  On that same day, weeks before Connetics conveyed this information to the marketplace, Yaroshinsky told his former neighbor, defendant Zak, of the news, and the two of them traded in Connetics securities on the basis of this material nonpublic information – obtaining illegal insider selling profits of over $1.5 million. *See infra* § II.A.  By trading on the basis of this material, non-public information concerning the unlikelihood of FDA approval, Yaroshinsky and Zak violated §§ 10(b) and 20A of the Securities Exchange Act of 1934, both of which prohibit illegal insider trading.  *See infra* § II.B.  The United States Securities and Exchange Commission ("SEC") has commenced actions against Yaroshinsky and Zak for their illegal insider trading.  ¶¶96-98.

Lead Plaintiff and members of the class, as contemporaneous purchasers of Connetics securities at the time defendants Yaroshinsky and Zak (together herein, "defendants") were engaging in illegal insider selling, have standing to bring claims against defendants.  *Id.*

---

[1]  All "¶__" references herein are to Amended Consolidated Class Action Complaint For Violations Of The Federal Securities Laws ("Complaint") filed herein.

Moreover, as a "tipper," Yaroshinsky is liable, jointly and severally, for the illegal sales by Zak. *See infra* § II.C.

Yaroshinsky (and Zak presumably) contend that the Complaint does not plead a strong inference of scienter. The well-pleaded facts, however, establish that both Yaroshinsky and Zak knew the FDA had very serious concerns about the safety of Velac; the Company did not disclose the true extent of those concerns; and both Yaroshinsky and Zak made massive, unprecedented short-sales and purchased "put options" in order to benefit from a collapse of Connetics stock when the truth emerged.[2] There is a strong inference of scienter. *See infra* § II.D. The Complaint more than sufficiently pleads actionable claims against both Yaroshinsky and Zak; and their motions for dismissal should therefore be denied.

## II.    ARGUMENT

### A.    Summary Of Allegations

The Complaint's well pleaded allegations establish that on the basis of material, non-public information known by Yaroshinsky and conveyed to Zak, both defendants engaged in massive short-selling of Connetics stock, resulting in profits exceeding $1.5 million.[3]

During the Class Period, defendant Yaroshinsky, as Connetics' Vice President of Biostatistics and Clinical Operations, was responsible for conducting development studies on drugs, including the Company's blockbuster new acne medicine, Velac. ¶25. Beginning as early as 2002, the Company continually touted Velac as a safe and effective treatment for acne that would bring substantial revenue into the Company. *See, e.g.,* ¶¶40-51.

On April 13, 2005, Connetics held a nonpublic conference call with members of the FDA's Executive Carcinogenicity Assessment Committee ("ECAC") for the purpose of discussing the FDA's comments and conclusions on Velac. Defendant Yaroshinsky personally participated on this call. ¶68. The ECAC directly told Connetics (including defendant

---

[2] A "put option" is a contract that allows the buyer to sell a share at a later time for a certain price (the strike price) to the seller of the option. A buyer of a put option profits if the company's stock price declines.

[3] Lead Plaintiff incorporates by reference the summary of the Complaint set forth in Opp. To MTD at Section II.

Yaroshinsky) that (i) "[Velac] may be a tumor promoter or a carcinogen"; and (ii) "this is a serious issue for a topical product for the treatment of acne." ¶69. Recognizing that a formal non-approvable letter from the FDA was now imminent, Connetics' senior management imposed a ban on trading in Connetics securities, which prohibited any employees who had attended the conference call with the FDA or were involved in preparing regulatory submissions for Velac from trading in the Company's securities. ¶71. Despite this trading ban, shortly after the conference call with the FDA discussed above, defendant Yaroshinsky telephoned Zak (Yaroshinsky's former neighbor) and told him about the FDA's comments and conclusions. ¶86.

That very day, defendant Zak accessed his online brokerage account using his office computer. He sold short 7,000 shares of Connetics and liquidated 3,000 shares from his previously held long position in Connetics common stock. Between April 14, 2005 and June 10, 2005 (when Connetics was forced to disclose the inevitable FDA non-approval letter), Zak sold short an additional 68,000 shares of Connetics common stock and purchased 430 "put contracts" in Connetics common stock. ¶87. During the pendency of the trading ban at Connetics, Yaroshinsky himself transacted in Connetics securities in order to profit when the news became public, and he continued to do so up until the FDA issued its non-approval letter for Velac. ¶¶89-93. As a result of their insider trading, defendants Yaroshinsky and Zak profited by more than $1.58 million before the truth was fully disclosed. ¶¶94-95.

**B.    The Complaint Sufficiently Pleads Contemporaneous Trading For Standing To Assert §§ 10(b) And 20A Claims**

Insider trading applies to transactions and to persons who "tip" others for the purpose of trading on material non-public information. "[Section] 10(b) and Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997). "[A] person violates Rule 10b-5 by buying or selling securities on the basis of material nonpublic information if (1) he owes a fiduciary or similar duty to the other party to the transaction; (2) he is an insider of the corporation in whose shares he trades, and thus owes a fiduciary duty to the corporation's shareholders; or (3) he is a tippee who received his information from an insider of the

1    corporation and knows, or should know, that the insider breached a fiduciary duty in disclosing

2    the information to him." *S.E.C. v. Clark*, 915 F.2d 439, 443 (9th Cir. 1990).

3    "Under § 20A, any defendant who violated § 10(b) or related rules by purchasing or

4    selling a security is liable to any person who traded securities 'contemporaneously' with the

5    defendant . . . .  The precise scope of the term contemporaneously is not defined in § 20A

6    [but] . . . various courts have read this requirement to encompass trades on the same day, within

7    the same week, within a month, and including 'the entire period while relevant and non-public

8    information remained undisclosed.'"  *In re Qwest Commc'ns Int'l Sec. Litig.*, 396 F. Supp. 2d

9    1178, 1201 (D. Colo. 2004).  Trading within three days of a defendant's sales is generally

10   considered sufficiently contemporaneous to satisfy both §§ 10(b) and 20A.  *See, e.g., In re*

11   *Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 138 (S.D.N.Y. 1999) (plaintiff's purchases

12   five days after defendants' sales were contemporaneous); *In re Enron Corp. Sec., Deriv. &*

13   *ERISA Litig.*, 258 F. Supp. 2d 576, 600 (S.D. Tex. 2003) ("this Court finds that two or three

14   days, certainly less than a week, constitute a reasonable period to measure the contemporaneity

15   of a defendant's and a plaintiff's trades under § 20A"); *In re Eng'g Animation Sec. Litig.*, 110 F.

16   Supp. 2d 1183, 1196 (S.D. Iowa 2000) (purchase three days after defendant's sale

17   contemporaneous).

18   Here, Lead Plaintiff traded contemporaneously with Zak.  Zak sold Connetics stock on

19   April 13 and, according to the SEC complaint against Zak, throughout the period between

20   April 14, 2005 and June 10, 2005.  ¶87.  Lead Plaintiff purchased Connetics stock on April 18

21   and 19, 2005.  ¶371.  Zak's sales on April 13, 2005 were only three trading days prior to Lead

22   Plaintiff's purchases on April 18, 2005 (April 13, 2005 was a Wednesday).  As set forth above,

23   separation by three trading days is well within §§ 10(b) and 20A's contemporaneous-trading

24   requirement.  Moreover, Lead Plaintiff pleads (and Zak admits in answering the Complaint) "that

25   he traded between April 13 and June 10, 2005 . . . ."  Zak Answer [Docket No. 20] ¶¶87, 370.

26   Thus, the Complaint has sufficiently pleaded that Lead Plaintiff's trades on April 18 and 19 were

27   contemporaneous with the defendants' trades between April 14 and April 26.  *Cf. Qwest,* 396 F.

28   Supp. 2d at 1201 (plaintiffs' § 20A claim "is not subject to dismissal for failure to plead

1    contemporaneous trades unless it appears beyond doubt that the plaintiffs can prove no set of

2    facts in support of their claim that would entitle them to relief"). Here, defendant Zak traded

3    close to or on the same days as Lead Plaintiff.[4]

4         Yaroshinsky asserts that Lead Plaintiff "did not trade contemporaneously with [him] and,

5    therefore, lacks standing to bring a claim against [him]." Yaroshinsky Mot. at 9. This argument

6    fails in at least two respects. ***First,*** defendant Yaroshinsky ignores his liability as a tipper for

7    defendant Zak's illegal insider trading. In addition to facing liability for his own illegal insider

8    selling in violation of §§ 10(b) and 20A, defendant Yaroshinsky is jointly and severally liable for

9    defendant Zak's illegal insider trading. Section 20A states: "Any person who violates any

10   provision of this title [15 U.S.C. § 78a, et seq.] or the rules or regulations thereunder ***by***

11   ***communicating material, nonpublic information*** shall be jointly and severally liable under

12   subsection (a) of this section with, and to the same extent as, any person or persons liable under

13   subsection (a) to whom the communication was directed." (Emphasis added.) 15 U.S.C. § 78t-

14   1(c).[5] Here, as set forth above, Zak violated subsection (a). The Complaint more than

15   sufficiently sets forth that Yaroshinsky communicated material, non-public information to Zak

16   concerning the contents of the Company's conference call with the FDA, upon which

17   information Zak traded contemporaneously with Lead Plaintiff and the class. ¶¶68-80, 86-95,

18   368-372. Accordingly, Yaroshinsky faces joint-and-several liability for Zak's violations of

19   § 20A.

---

22   [4] For purposes of pleading violations of § 20A, the Ninth Circuit recognizes that certain

23   information is not available to plaintiffs without discovery. *See, e.g., Neubronner v. Milken,* 6
     F.3d 666, 671 (9th Cir. 1993), ("But surely we can not expect a private plaintiff in an insider
24   trading case to plead with the specificity Rule 9(b) requires without allowing some limited
     opportunity for discovery.").

26   [5] Subsection (a) states: "Any person who violates any provision of this title [15 U.S.C. § 78a, et
     seq.] or the rules or regulations thereunder by purchasing or selling a security while in possession
27   of material, nonpublic information shall be liable in an action in any court of competent
     jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is
28   the subject of such violation, has purchased (where such violation is based on a sale of securities)
     or sold (where such violation is based on a purchase of securities) securities of the same class."

**Second**, Lead Plaintiff has standing to assert §§ 10(b) and 20A claims on behalf of the entire class.[6]    Accordingly, Lead Plaintiff has standing to bring §§ 10(b) and 20A claims on behalf of the proposed class against Yaroshinsky regardless of whether it traded contemporaneously with Yaroshinsky.

### C.    The Complaint Raises A Strong Inference Of Scienter

The Complaint raises a strong inference that defendants Yaroshinsky and Zak knowingly traded on material, non-public information.[7]    After Yaroshinsky directly participated in a private phone call with the ECAC and learned that the FDA would not approve Velac, he immediately telephoned defendant Zak to inform him of these non-public facts, after which both defendants (contrary to their prior trading history) entered into Connetics securities transactions (*i.e.*, sold shares and purchased "put options") calculated to profit when news of the phone call and subsequent FDA non-approval letter were reported to the markets.    ¶¶86-95.   There is no reasonable basis to believe that the defendants traded on anything but material, inside information.

Defendant Yaroshinsky miscasts plaintiffs' scienter allegations, incorrectly asserting:

> Stock sale allegations, by themselves, cannot plead a cogent and compelling inference of Dr. Yaroshinsky's scienter. . . . This is especially the case here, where Plaintiff's purported claims are based solely on stock sales themselves. Asserting that a defendant's stock sales were made with scienter because the defendant sold stock would be a circular argument.

Yaroshinsky Mot. at 9-10. Lead Plaintiff's scienter allegations are not limited to Yaroshinsky's stock sales. Rather, they are based on well-pleaded facts detailing, among other things: (i) Yaroshinsky's role in attempting to obtain FDA approval of Velac (*see, e.g.,* ¶¶25, 55); (ii) Yaroshinsky's participation in a non-public conference call where he learned Velac would not be approved (¶¶68-71); (iii) Yaroshinsky's immediate phone calls to his former neighbor Zak after which Zak immediately sold a lot of Connetics stock (¶¶86-87); and (iv) Yaroshinsky's

---

[6]  To avoid duplication, Lead Plaintiff incorporates herein by reference Section VII of the Opp. To MTD, explaining Lead Plaintiff's ability to assert class-wide claims.

[7]   Lead Plaintiff incorporates by reference the Opp. To MTD addressing the pleading requirements for alleging a strong inference of scienter.

extreme change in his position in Connetics securities, changing to extremely bearish after the conference call and trading directly in violation of the Company's ban from doing so (¶¶88-94). While it may be true that Lead Plaintiff's § 20A claims are based upon defendant Yaroshinsky's insider sales and illegal communications to Zak, Lead Plaintiff's scienter allegations are supported by additional specific facts not limited to defendant Zak's or Yaroshinsky's trading.

Attempting to dispute the facts, defendant Yaroshinsky contends that the Company's April 26, 2005 disclosures revealed all material, non-public information to the market concerning the April 13 conference call and the Tg.AC mouse study, thereby allowing him to trade afterwards. Yaroshinsky Mot. at 10-11. Yaroshinsky's argument is contrary to the well-pleaded allegations. The April 26 disclosures were only partial truths that did not disclose the full extent of the Tg.AC mouse study or the FDA's concerns about Velac. ¶¶68-80. *See also* Opp. To MTD at Section IV.D.

Moreover, Yaroshinsky's argument ignores numerous facts, including that he traded before the April 26 disclosures (¶89), as did Zak (¶87), and that Yaroshinsky closed out nearly all of his put contracts immediately after the FDA non-approval letter for Velac was made publicly known (¶93). There is no reasonable basis to conclude that Yaroshinsky – an employee of Connetics – suddenly became a massive short-seller of the Company's securities for any reason other than that the April 26 disclosures failed to inform the market of the whole truth about the likelihood that the FDA would reject Velac.

Finally, Yaroshinsky's argument – that the Company adequately disclosed the full extent of the Tg.AC mouse study and the FDA's concerns about Velac – is improper in that it asks the Court to resolve a factual dispute by motion to dismiss: "It would be premature for this court to evaluate the actual materiality of defendants' omissions, because the materiality of an omission is a question reserved for a jury unless 'reasonable minds could not differ' on the adequacy of the disclosure and the question is appropriate for resolution as a matter of law." *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1086 (N.D. Cal. 2005); *see also In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *11 (C.D. Cal. July 21, 2005) (same). Dismissal is not warranted as to Yaroshinsky's or Zak's sales after April 26.

Finally, Yaroshinsky contends that because his co-defendant Wiggans entered into a Rule 10b5-1 trading plan on May 12, 2005, all material, non-public information must have been disclosed to the market and that, therefore, Yaroshinsky was free to short-sell Connetics stock after May 12. Yaroshinsky Mot. at 11-12. This argument glosses over the fact that Yaroshinsky sold 15,100 shares of Connetics stock and bought 41 put contracts before Wiggans supposedly entered into the Rule 10b5-1 Trading Plan on April 27, 2005. ¶90. Moreover, Yaroshinsky's argument puts the cart before the horse. Simply because a Rule 10b5-1 trading plan is valid only if entered into "[b]efore becoming aware of the information[,]" 17 C.F.R. 240.10b5-1(c)(A), this does not mean that any 10b-5 plan is valid here. Courts routinely reject reliance on Rule 10b5-1 trading plans as a defense. *See, e.g., Cent. Laborers' Pension Fund v. Integrated Elec. Servs*., 2007 U.S. App. LEXIS 19917, at *16-17 (5th Cir. Aug. 21, 2007) (finding insider sales made pursuant to Rule 10b5-1 trading plan contributed to strong inference of scienter). Indeed, the SEC suspects that such plans are subject to manipulation and "corporate watchdogs say the plans may be easily abused." Dionne Searcey and Kara Scannell, *SEC Now Takes a Hard Look At Insiders' 'Regular' Sales*, Wall Street J., April 4, 2007, at C1. Yaroshinsky's attempt to bolster the significance of a trading plan − that was not even his own − fails.

### D.    Defendants' Alternative Arguments Are Not Grounds For Dismissal

In Section VII of the Yaroshinsky Motion, defendants Yaroshinsky and Zak (by incorporation) assert two purportedly independent bases for dismissal of the § 20A claims against them: (i) Lead Plaintiff does not sufficiently plead a predicate violation of § 10(b); and (ii) the relief Lead Plaintiff seeks is "not available under Section 20A, which is limited to disgorgement." Yaroshinsky Mot. at 12-13. In truth, however, Lead Plaintiff pleads Yaroshinsky and Zak violated § 10(b) by engaging in illegal insider trading. ¶¶342-355. Section 10(b) prohibits insider trading on the basis of material, non-public information. *O'Hagan*, 521 U.S. at 651; s*ee also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp*., 320 F.3d 920, 937 (9th Cir. 2003) ("Individuals or corporations that engage in insider trading can be held liable under Section 10(b)"). As set forth above, these allegations are more than sufficiently pleaded. Assuming, *arguendo*, the Court were to dismiss Lead

Plaintiff's § 10(b) claims against Yaroshinsky for lack of standing − which it should not − Lead Plaintiff still has adequately pleaded that Yaroshinsky violated § 10(b) for the purposes of satisfying the predicate violation requirement of § 20A.  *See, e.g., Johnson v. Aljian*, 490 F.3d 778, 783 (9th Cir. 2007) (Section 20A claims actionable despite court's dismissal of Section 10(b) claims on technical statute of limitations grounds because "the predicate violation need not itself be actionable").

Further, Lead Plaintiff seeks all appropriate relief that this Court deems just and proper, including disgorgement of illegally gained proceeds from insider selling.  Defendants' contention that the § 20A allegations should be dismissed (with prejudice), because the Complaint does not specifically use the word "disgorgement" in its prayer for relief, is specious.

## III.     CONCLUSION

For the foregoing reasons, and as set forth in Opp. To MTD, Lead Plaintiff respectfully submits that the Court should deny defendants' motions to dismiss.

Dated: September 17, 2007                    Respectfully submitted,

                                            BERNSTEIN LITOWITZ BERGER
                                              & GROSSMANN LLP


                                                 /s/ David R. Stickney
                                            DAVID R. STICKNEY

                                            DAVID R. STICKNEY
                                            NIKI L. MENDOZA
                                            MATTHEW P. SIBEN
                                            TAKEO A. KELLAR
                                            12481 High Bluff Drive, Suite 300
                                            San Diego, CA 92130
                                            Tel:    (858) 793-0070
                                            Fax:    (858) 793-0323
                                                    -and-
                                            CHAD JOHNSON
                                            1285 Avenue of the Americas, 38th Floor
                                            New York, NY 10019
                                            Tel:    (212) 554-1400
                                            Fax:    (212) 554-1444

                                            Attorneys for Lead Plaintiff Teachers' Retirement
                                            System of Oklahoma and Lead Counsel to the Class

1

## **CERTIFICATE OF SERVICE**

2

      I, KAYE A. MARTIN, do hereby certify that on this 17th day of September, 2007, true and correct copies of the foregoing

3

4

      **Lead Plaintiff's Opposition To Defendants Yaroshinsky's And Zak's Motions To Dismiss Plaintiff's Amended Consolidated Class Action Complaint**

5

6

were filed electronically.  Those attorneys who are registered with the Electronic Case Filing ("ECF") System may access this filing through the Court's system, and notice of this filing will be sent to the parties by operation of the Court's ECF System.  Attorneys not registered with the Court's ECF system will be duly and properly served via facsimile and/or Federal Express (as indicated on the attached Service List), in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules.

7

8

9

                         /s/ Kaye A. Martin
                         KAYE A. MARTIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Service List**

In re CONNETICS SECURITIES LITIGATION
Case No.: 07-02940

| | |
|---|---|
| **COUNSEL FOR CONSOLIDATED PLAINTIFF FISHBURY LIMITED** | |
| Jean-Marc Zimmerman<br>Eduard Korsinsky<br>Pamela Lynam Mahon<br>**ZIMMERMAN, LEVI<br>    & KORSINSKY LLP**<br>39 Broadway, Suite 1601<br>New York, NY 10006<br>Tel: 212-363-7500<br>Fax: 212-363-7171<br>ek@zlk.com<br>jmzimmerman@zlk.com<br>pmahon@zlk.com<br><br>*Via ECF* | |
| **COUNSEL FOR CONSOLIDATED PLAINTIFF BRUCE GALLANT** | |
| Evan J. Smith<br>**BRODSKY & SMITH LLC**<br>240 Mineola Blvd.<br>Mineola, NY 11501<br>Tel: 516-741-4977<br><br>*Via FedEx* | |
| **COUNSEL FOR CONSOLIDATED PLAINTIFF MARCUS A. SEIGLE** | |
| Catherine A. Torell<br>**COHEN MILSTEIN HAUSFELD<br>    & TOLL P.L.L.C**<br>150 East 52nd Street<br>New York, NY 10022<br>Tel: 212-838-7797<br>Fax: 212-383-7745<br><br>*Via FedEx* | |

| | |
|---|---|
| **COUNSEL FOR DEFENDANTS CONNETICS CORPORATION, THOMAS G. WIGGANS, C. GREGORY VONTZ, JOHN HIGGINS, LINCOLN KROCHMAL, EUGENE A. BAUER, R. ANDREW ECKERT, CARL B. FELDBAUM, DENISE M. GILBERT, JOHN C. KANE, THOMAS D. KILEY, LEON E. PANETTA AND G. KIRK RAAB** | |
| Susan S. Muck<br>Dean S. Kristy<br>Christopher J. Steskal<br>Kalama M. Lui-Kwan<br>Emily St. John Cohen<br>**FENWICK & WEST**<br>275 Battery Street, Suite 1600<br>San Francisco, CA 94111<br>Tel: 415-875-2300<br>Fax: 415-281-1350<br>smuck@fenwick.com<br>dkristy@fenwick.com<br>csteskal@fenwick.com<br>klui-kwan@fenwick.com<br>ecohen@fenwick.com | Gregory A. Markel<br>**CADWALADER, WICKERSHAM & TAFT LLP**<br>1 World Financial Center<br>New York, NY 10281<br>Tel: 212-504-6112<br>Fax: 212-504-6666<br>gregory.markel@cwt.com |
| *Via ECF* | *Via ECF* |
| **COUNSEL FOR DEFENDANT ALEXANDER J. YAROSHINSKY** | |
| James P. Duffy IV<br>**DLA PIPER US LLP**<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel: 212-335-4500<br>Fax: 212-504-6666<br>James.duffy@dlapiper.com<br><br>Alysson Russell Snow<br>**DLA PIPER US LLP**<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>Tel: 619-699-2858<br>Fax: 619-699-2701<br>Alysson.snow@dlapiper.com | |
| *Via ECF* | |

| **Defendant Victor E. Zak** | |
|---|---|
| Victor E. Zak (*pro se*)<br>24 Oakmont Road<br>Newton, MA 02459<br>Tel: 617-610-2538<br>zakvic@yahoo.com<br><br>***Via FedEx*** | |