BERNSTEIN LITOWITZ BERGER
      & GROSSMANN LLP
DAVID R. STICKNEY   (Bar No. 188574)
NIKI L. MENDOZA   (Bar No. 214646)
MATTHEW P. SIBEN   (Bar No. 223279)
TAKEO A. KELLAR   (Bar No. 234470)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
davids@blbglaw.com
nikim@blbglaw.com
matthews@blbglaw.com
takeok@blbglaw.com
         -and-
CHAD JOHNSON
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:     (212) 554-1400
Fax:     (212) 554-1444
chad@blbglaw.com

Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CONNETICS SECURITIES LITIGATION | Case No. C 07-02940 SI |
| | **CLASS ACTION** |
| | **LEAD PLAINTIFF'S RESPONSE AND OPPOSITION TO REQUEST FOR JUDICIAL NOTICE BY DEFENDANTS CONNETICS CORP., JOHN L. HIGGINS, LINCOLN KROCHMAL, C. GREGORY VONTZ, AND THOMAS G. WIGGANS** |
| | Date:          October 19, 2007<br>Time:          9:00 a.m.<br>Courtroom:   10<br>Judge:         Hon. Susan Illston |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii-iii

I.    INTRODUCTION .......................................................................................1

II.   ARGUMENT ..............................................................................................2

      A.    Applicable Legal Standard.................................................................2

      B.    It Is Improper To Take Judicial Notice Of
            Documents Referenced In The Complaint For The
            Truth Of Disputed Facts Asserted Therein ........................................4

            1.    Exhibits 1 And 2 .....................................................................4

            2.    SEC Filings Referenced In The Complaint ............................6

      C.    Judicial Notice Of Documents Not Referenced In
            The Complaint Is Unwarranted...........................................................9

            1.    FDA Filings And Notices .......................................................10

            2.    Summary Exhibits Created By Defendants ............................10

III.  CONCLUSION............................................................................................12

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                          <u>Page</u>

*In re Adaptive Broadband Sec. Litig.*,
    2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ........................................................6

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002)................................................................................8

*In re Applied Micro Circuits Corp. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 22403 (S.D. Cal. Oct. 3, 2002) ......................................3

*In re CV Therapeutics, Inc. Sec. Litig.*,
    2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ..........................................6, 10, 11

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1998) .................................................................... passim

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005).................................................2, 3, 10

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)...............................................................................4

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .....................................................................1, 2, 3, 4

*In re NPS Pharm., Inc.*,
    2007 U.S. Dist. LEXIS 48713 (D. Utah July 3, 2007) ......................................3

*In re Network Equip. Techs., Inc. Litig.*,
    762 F. Supp. 1359 (N.D. Cal. 1991) ..................................................................6

*In re Northpoint Commc'ns Group, Inc., Sec. Litig.*,
    221 F. Supp. 2d 1090 (N.D. Cal. 2002) ...................................................3, 4, 6

*Perretta v. Prometheus Dev. Co.*,
    2006 U.S. Dist. LEXIS 10108 (N.D. Cal. Feb. 24, 2006) ..................................6

*Shurkin v. Golden State Vintners, Inc.*,
    471 F. Supp. 2d 998 (N.D. Cal. 2006) ...............................................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007)........................................................................................2

*United States v. Mariscal*,
    285 F.3d 1127 (9th Cir. 2002) ...........................................................................3

*United States v. S. Cal. Edison Co.*,
    300 F. Supp. 2d 964 (E.D. Cal. 2004)..................................................................3

*In re Vantive Corp. Sec. Litig.*,
    110 F. Supp. 2d 1209 (N.D. Cal. 2000) ..........................................................12

<u>Statutes</u>

Federal Rule of Civil Procedure
    Rule 12(b)(6)...................................................................................................1, 3
    Rule 12(c).........................................................................................................3, 4

Federal Rules of Evidence
    Rule 201(b) .....................................................................................................2, 3

1   **I.    <u>INTRODUCTION</u>**

2          In support of their Motion to Dismiss the Amended Consolidated Class Action

3   Complaint, defendants Connetics Corp. ("Connetics" or the "Company"), John L. Higgins,

4   Lincoln Krochmal, C. Gregory Vontz, and Thomas G. Wiggans (collectively "defendants") ask

5   the Court to take judicial notice of extraneous material consisting of 41 documents, totaling over

6   700 pages, attached to defendants' Request for Judicial Notice ("RJN").    Lead Plaintiff

7   Teachers' Retirement System of Oklahoma ("Lead Plaintiff") hereby opposes defendants' RJN

8   as an improper attempt to circumvent the procedural restrictions governing motions to dismiss

9   under Federal Rule of Civil Procedure 12(b)(6) and instead proceed directly to a weighing of

10  evidence before the record is developed through discovery.

11         Lead Plaintiff does not oppose consideration of certain documents that are proper for

12  judicial notice; rather, Lead Plaintiff opposes defendants' characterizations and improper use of

13  such documents.  For that reason, and pursuant to the incorporation doctrine, Lead Plaintiff does

14  not oppose the Court considering Exhibits 1, 2, 7, 8, 13-16, and 19 which are documents

15  referenced or relied upon in the Complaint.[1]  *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir.

16  1998) ("a court ruling on a motion to dismiss may consider the full texts of documents which the

17  complaint quotes only in part").    Lead Plaintiff objects, however, to judicial notice of these

18  documents for the ***truth*** of the contents of those documents.    Such judicial notice constitutes

19  reversible error under Ninth Circuit jurisprudence, because the documents contain facts in

20  dispute, as explained below.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)

21  (when facts contained in a document are disputed, a court may consider the document only for

22  the limited purpose of recognizing the fact that the document exists and not for the truth of such

23  document).    Defendants' own authority cited in their motion to dismiss ("MTD" at 13) is in

24  accord.  *See Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1011 (N.D. Cal. 2006)

25  ("the Court takes judicial notice of these documents, ***not for the truth of the statements***

26  ***contained therein***, but for the fact that these documents that were publicly-filed and for the fact

27  ─────────────────────

28  [1]  "Complaint" refers to the Amended Consolidated Class Action Complaint For Violation Of
    The Federal Securities Laws.  "¶__" refers to paragraphs in the Complaint.

1   that the statements made therein were made to the public on the dates specified") (emphasis

2   added).

3       Lead Plaintiff opposes judicial notice of Exhibits 30-33 and 39-40, which are neither

4   referenced in the Complaint, nor central to nor form the basis of plaintiff's claims. *See Cooper,*

5   137 F.3d at 623 (refusing to consider evidence not referenced in complaint); *In re Immune*

6   *Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005) (denying judicial notice of

7   documents which were not "central to, or form the basis of, Plaintiffs' claims" and "the

8   Complaint does not 'extensively' refer to any of them; nor do Plaintiffs' claims necessarily rely

9   on them"). Further, in relying upon these exhibits, defendants attempt to resolve a number of

10  factual disputes, which is inappropriate at this early stage of litigation.[2]

11  **II.    ARGUMENT**

12      **A.    Applicable Legal Standard**

13      At the motion to dismiss stage, "courts must consider the complaint in its entirety, as well

14  as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

15  particular, documents incorporated into the complaint by reference, and matters of which a court

16  may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509

17  (2007). Thus, there are only two exceptions to the general rule that the Court may consider only

18  material within the four corners of a complaint. *Id.*; *Lee*, 250 F.3d at 688. First, a court may

19  consider documents properly submitted as part of the complaint or, under the "incorporation by

20  reference" doctrine, documents upon which the complaint necessarily relies and the authenticity

21  of which is not disputed. *Lee*, 250 F.3d at 688-89; *Cooper*, 137 F.3d at 623. The purpose for

22  this exception is to allow the court to assess the complaint's allegations in context. Second, a

23  court may take judicial notice of facts that are: (1) "matters of public record," *Lee*, 250 F.3d at

24  689; or (2) "capable of accurate and ready determination by resort to sources whose accuracy

25  cannot reasonably be questioned," Fed. R. Evid. 201(b). But, "this is a narrow exception . . . . It

26

27  [2] For the limited purposes that defendants cite the following documents in defendants' MTD,
    Lead Plaintiff does not presently oppose judicial notice of Exhibits 3-6, 9-12, 17-18, 20-29, 34-
28  38, and 41.

is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Immune Response*, 375 F. Supp. 2d at 995 (citation omitted).

A judicially noticed fact "must be one not subject to reasonable dispute" because it can be determined from sources "whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002). The Ninth Circuit holds that a district court may judicially notice "undisputed matters of public record" but *not* "disputed facts stated in public records." *Lee*, 250 F.3d at 688-90. Thus, when facts contained in a document are disputed, a court may only consider the document for the limited purpose of recognizing the fact that the document exists and not for the truth of such documents. *Id.*; *In re Northpoint Commc'ns Group, Inc., Sec. Litig.*, 221 F. Supp. 2d 1090, 1095 (N.D. Cal. 2002) (refusing to consider filings with the United States Securities and Exchange Commission ("SEC") that defendants wanted judicially noticed because they contained disputed facts); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004) ("While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean.").

Judicial notice of documents not referenced in the Complaint is improper and could convert the motion into one for summary judgment.[3] Federal Rule of Civil Procedure 12(c) provides that, if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to

---

[3] *Cooper*, 137 F.3d at 623. *See, e.g., Immune Response*, 375 F. Supp. 2d at 995 (striking exhibits to motion for dismissal when "considering these documents as part of the pleadings at this stage would expand the 'narrow exception' and eliminate the distinction between a motion for summary judgment and a motion to dismiss"); *In re Applied Micro Circuits Corp. Sec. Litig.*, 2002 U.S. Dist. LEXIS 22043, at *8 (S.D. Cal. Oct. 3, 2002) (court not willing to consider "extrinsic evidence" in securities action); *In re NPS Pharm., Inc.*, 2007 U.S. Dist. LEXIS 48713, at *6, *9 (D. Utah July 3, 2007) ("If, when assessing a Rule 12(b)(6) motion, a court considers matters outside the pleadings, the court must treat the motion as a motion for summary judgment under Rule 56.").

such a motion."  Fed. R. Civ. P. 12(c).  This includes "giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  Here, the PSLRA's discovery stay currently precludes Lead Plaintiff from conducting any discovery prior to resolution of defendants' motion to dismiss, and Lead Plaintiff therefore objects at this stage to converting defendants' motion into one for summary judgment.

**B.    It Is Improper To Take Judicial Notice Of Documents Referenced In The Complaint For The Truth Of Disputed Facts Asserted Therein**

The Court should not accept as true defendants' own self-serving, disputed factual assertions simply because these purported facts appear as statements in publicly available documents – written by defendants – that Connetics filed with the SEC.  Lead Plaintiff does not object to taking judicial notice of the full text of Exhibits 1, 2, 7, 8, 13-16, and 19 under the incorporation doctrine, since Lead Plaintiff has referenced or relied on these documents in the Complaint.  *Lee*, 250 F.3d at 688-90.  Lead Plaintiff also does not oppose the Court taking judicial notice of the existence and publication of these exhibits; however, such judicial notice of the documents should not be extended to the truth of the matters contained therein.  *Id*.; *Northpoint*, 221 F. Supp. 2d at 1095.  The purported "facts" that defendants request the Court to accept as true are hotly contested.  Many of these "facts" are fabrications Lead Plaintiff alleges to be false.  Some of these "facts" were written by defendants to cover-up their own fraudulent activities.  To the extent that defendants offer the following exhibits discussed below for the truth of the contents contained therein, defendants' request should be denied.

**1.    Exhibits 1 and 2**

Exhibit 1 is a transcript of Connetics' April 26, 2005 conference call in which Connetics partially disclosed for the first time that FDA approval was not as likely as previously stated.  As explained in the Complaint, however, during the call, defendants made further false statements and omissions regarding Velac.  ¶¶78-79, 261-265.  The Court should not take judicial notice of Exhibit 1 for the truth of the matters asserted therein, as defendants have requested.  For example, defendants cite this transcript in support of their contention that "[c]onsistent with

industry norms, it was not Connetics' practice to disclose interim communications with the FDA." MTD at 5. Defendants use their own false statements as purported evidence of industry norms and to dispute the making of misleading statements concerning Connetics' communications with the FDA. Defendants also offer the transcript to support their contention that the Company was "aware of other products that had a similar positive finding in Tg.AC mice but nevertheless had been approved by the FDA" by citing the Company's own *post hoc* statement that "benzoyl peroxide . . . has labeling that notes a positive result in the transgenic mouse model." MTD at 7.

Lead Plaintiff disputes the purported fact that benzoyl peroxide had "similar" test results to Velac. Moreover, this purported similarity is a matter properly addressed by expert testimony and not mere *ipse dixit* pronouncement. Accordingly, it is improper to take judicial notice of the disputed "fact" that defendants were aware of other products that had ***similar*** Tg.AC study results indicating alarming rates of carcinogenicity that were approved by the FDA. As Velac's safety is in dispute, judicial notice of Exhibit 1 is improper for the purposes that defendants offer this exhibit. In addition, the authenticity of the transcript is in question at this point – there is no indication of the source or who transcribed it or if the transcript is accurate. *See Cooper*, 137 F.3d at 623 (refusing to take judicial notice of a conference call transcript for which the authenticity and accuracy were disputed).

Exhibit 2 is a document titled "Transgenic Mouse Models: Their Role in Carcinogen Identification." Lead Plaintiff quotes the document in the Complaint to show that transgenic mice studies are known to provide reliable results. ¶56 ("[A]ccording to a National Institutes of Health research paper published in October 2002, transgenic mouse models 'made the 'correct' calls (positive for carcinogens; negative for noncarcinogens) 77-81%' of the time"). Defendants do not dispute the accuracy of the Complaint's quotation. Rather, they cite the document for the unremarkable point that transgenic mice are engineered so that tumors, if they develop, will develop more quickly. MTD at 6, n.3. Defendants further assert that these mice are "overly sensitive to certain chemicals" making them unreliable indicators of human carcinogenicity. *Id.* Nothing in Exhibit 2 supports defendants' contention that Tg.AC mouse studies are unreliable or

that the mice are "overly sensitive." Lead Plaintiff disputes any such assertion. Indeed, the FDA allows (and defendants themselves picked) the Tg.AC study presumably because it is an accurate predictor of carcinogenicity. ¶54. If defendants wish at trial to challenge their own decision to use the test because, after receiving the results, they claim that the test was not "reliable," they can do so by expert testimony after a full record is developed. The Court should not judicially notice defendants' (false) contention that Tg.AC studies are unreliable because the subject mice contain genetic mutations. Nor should defendants be able to use this purported fact to draw unreasonable inferences as to what defendants may have believed concerning the results of the Tg.AC study. "The Court should not use judicial notice to generate an evidentiary record and then weigh evidence – which plaintiffs have not had the opportunity to challenge – to dismiss plaintiffs' complaint." *In re Network Equip. Techs., Inc. Litig.*, 762 F. Supp. 1359, 1363 (N.D. Cal. 1991) (denying defendants' motion to dismiss securities fraud claims). [4]

## 2. SEC Filings Referenced In The Complaint

Exhibits 7, 8, 13-16, and 19 are Company-prepared SEC filings referenced in the Complaint. The Court may consider these documents for the purpose of determining what the documents state. It is improper, however, to judicially notice the SEC filings for the truth of the statements contained therein because the accuracy of such statements is disputed. [5] The

---

[4] Lead Plaintiff is aware that this Court has previously stated that it does not "restrict its taking of judicial notice [as to the truth of their contents]." *See In re CV Therapeutics, Inc. Sec. Litig.*, 2004 WL 1753251, at *12 (N.D. Cal. Aug. 5, 2004). Unlike here, however, plaintiffs in *CV Therapeutics* only broadly opposed judicial notice with boilerplate objections that the facts were disputed. *See* Opposition Brief, *CV Therapeuitics*, Case No. 03-03709 [Docket No. 75]. Here, in contrast, Lead Plaintiff sets forth specific examples of the improper use of the exhibits by defendants and why the specific contents of the documents are disputed. Thus, Lead Plaintiff respectfully submits that the Court's statement in *CV Therapeutics* is not applicable in this case, and the Ninth Circuit's holding in *Lee* applies. 250 F.3d at 688-89.

[5] *See Perretta v. Prometheus Dev. Co.*, 2006 U.S. Dist. LEXIS 10108, at *7-8 (N.D. Cal. Feb. 24, 2006) ("Judicial notice is proper . . . of the specific proxy materials filed with the SEC . . . . Such public documents, however, are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents"); *Northpoint*, 221 F. Supp. 2d at 1095 (refusing to consider SEC filings that defendants wanted judicially noticed because they contained disputed facts); *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478, at *20 (N.D. Cal. Apr. 2, 2002) (taking judicial notice that statements were made in a Form 10-K referenced in the complaint but not taking judicial notice of the truth of the statements).

Complaint alleges that defendants made false and misleading statements regarding Velac, specifically regarding the drug's safety and efficacy and the timing and likelihood of FDA approval, and that defendants caused Connetics to issue false financial statements. ¶¶100-126. ¶¶52-80. The Complaint alleges that defendants disseminated these statements through Connetics' SEC filings. Because Lead Plaintiff disputes the accuracy of the representations made by defendants in these documents, judicial notice of the truth of their contents is improper. Specifically, defendants attempt to improperly use the SEC filings as follows:

Exhibit 8 is Connetics' own Form 8-K filed with the SEC on or about May 24, 2002, attaching Connetics' own May 14, 2002 press release. This press release was issued by Connetics nearly two years prior to the beginning of the Class Period and prior to the Tg.AC study. Defendants cite this pre-Class Period press release for their factual assertion that there were "clinical studies in Europe in more than 700 patients . . . [which] demonstrated that Velac gel was both 'safe and as effective as leading topical treatments.'" MTD at 6, 18. Defendants' assertion that Velac was found to be "safe" is both misleading and disputed. There is no indication that the purported European study even tested for carcinogenicity. If the purported study did not test for carcinogenicity, then the supposed findings are completely irrelevant and misleadingly cited by defendants. Moreover, defendants' utilization of a press release preceding the findings of the Tg.AC study cannot alter the actual outcome of the FDA-mandated study that revealed Velac's dangers and the certainty that the FDA would not approve the drug. Because the results of the purported studies from 2002 are not before the Court, defendants should not be allowed to build "a record" based on a single pre-Class Period press release. If, at trial, defendants wish to argue that the FDA somehow failed to properly credit the European study over the alarming results of the Tg.AC study, such factual arguments can be addressed at that later stage based on a fully-developed record.

Defendants cite Exhibit 7, the Company's restatement in its Form 10-K/A filed with the SEC on July 25, 2006, for the false, self-serving, and disputed factual assertion: "Connetics' reserve estimates were impacted by inaccurate and inconsistent inventory level reports provided by its three main wholesale customers . . . . Once Connetics began to receive accurate reports, it

1   was able to conclude that its product inventory at these wholesalers was higher than previously

2   estimated, and accordingly took steps to increase its reserves." MTD at 10, n.5. Defendants

3   seek to substitute their own disputed explanation concerning the false financial statements for the

4   Complaint's allegations of intentional channel stuffing and defendants' awareness of excessive

5   inventory levels. ¶¶109-120. To take judicial notice of defendants' self-serving alibi as the

6   "truth" simply because it is found in the Company's restatement is improper and would "allow

7   officers and directors of corporations to exercise an unwarranted degree of control over whether

8   they are sued, because they must agree to a restatement of the financial statements." *Aldridge v.*

9   *A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002).

10        Defendants also request judicial notice of Exhibits 13, 14 and 19 which are Connetics'

11   own Forms 8-K, attaching Connetics' own press releases.[6] Lead Plaintiff alleges that these SEC

12   filings contain materially false and misleading statements, including false representations

13   concerning the Company's financial performance. ¶¶201-204, 217-220, 282-286. Defendants

14   quote Exhibits 13, 14 and 19 as purported evidence to support defendants' contention that

15   "Connetics products experienced sales growth[,]" from which fact defendants erroneously

16   contest the accuracy of the Complaint's well pleaded allegations describing defendants'

17   continual channel stuffing activities. MTD at 35. Statements in Exhibits 13, 14, and 19

18   concerning purported sales growth were false and misleading because the Company engaged in

19   intentional channel stuffing. ¶¶109-120. Defendants ask the Court to take judicial notice of

20   disputed facts and to draw conclusions from those disputed facts that are directly contrary to the

21   Complaint's allegations. This is improper.

22        Defendants cite Exhibits 14 and 15 as evidence that "Connetics incurred the substantial

23   time and expense to prepare and file the NDA," suggesting that the Company would not have

24   "acted in accordance with that belief" if defendants knew that Velac would not be approved.

25   MTD at 7. Defendants' argument is illogical. *See* Opp. To MTD at Section IV.B.1. Moreover,

26

27   [6] Exhibit 13 is Connetics' Form 8-K and Exs. 99.1 and 99.2 attached thereto, filed with the SEC on or about July 28, 2004; Exhibit 14 is Connetics' Form 8-K and Ex. 99.1 attached thereto, filed

28   with the SEC on or about October 25, 2004; and Exhibit 19 is Connetics' Form 8-K and Ex. 99.1 attached thereto, filed with the SEC on or about August 2, 2005.

1  neither defendants nor their proferred exhibits set forth any actual amount of expenses, and

2  Exhibits 14 and 15 do not establish that the Company incurred any "substantial" expense.

3  Exhibit 14 merely states the Company filed an NDA, and Exhibit 15 says there is a fee for the

4  application.  Lead Plaintiff objects to the Court taking judicial notice of the characterization that

5  Connetics incurred "substantial time and expense" to prepare and file the NDA.

6          Similarly, Exhibit 16 is Connetics' own Form 8-K and own press release attached thereto,

7  filed with the SEC on or about January 25, 2005.  Defendants cite Exhibit 16 as purported

8  evidence that Connetics "hir[ed] more than 60 new sales professionals in January 2005 as part of

9  a sales force expansion" preparing for the launch of Velac.  MTD at 7.  Nothing in Exhibit 16

10  suggests the hiring of new sales staff had anything to do with the Company's purported launch of

11  Velac.  If the Company hired 60 new sales people, it could have done so for any number of

12  reasons, such as an attempt to rescue the lagging sales of its other drugs.  Evoclin, for example,

13  was the subject of a new "comprehensive sales and marketing program" at the time the Company

14  hired the sales people.  Ex. 16.  The Court cannot take judicial notice of the purported fact that

15  the Company hired new sales staff to sell Velac because that purported fact is simply not found

16  anywhere in Exhibit 16 (or anywhere else for that matter) and is, in any event, irrelevant.

17  Accordingly, the Court should likewise reject defendants' arguments based on this purported

18  fact.

19       **C.**     **Judicial Notice Of Documents Not**
              **Referenced In The Complaint Is Unwarranted**

20          Lead Plaintiff opposes judicial notice of defendants' Exhibits 30-33 and 39-40, because

21  these exhibits are neither referenced in the Complaint, nor central to nor form the basis of Lead

22  Plaintiff's claims.  *See Cooper,* 137 F.3d at 623; *Immune Response,* 375 F. Supp. 2d at 995

23  (denying judicial notice of documents which were not "central to, or form the basis of, Plaintiffs'

24  claims" and "the Complaint does not 'extensively' refer to any of them; nor do Plaintiffs' claims

25  necessarily rely on them").  Moreover, the documents are offered for a patently improper

26  purpose on a motion to dismiss – as supposed "evidence that defendants did not commit

27  securities violation." *Immune Response,* 375 F. Supp. 2d at 995 ("At this stage, the Court must

28  resolve any ambiguities in Plaintiffs' favor" instead of converting a motion to dismiss into a

1  summary judgment motion.).  These proffered documents, which are not referenced or relied

2  upon in the Complaint, can be divided into the following categories: (1) FDA filings and notices;

3  and (2) summary exhibits created by defendants.  Each of these exhibits is discussed below.

### 1.    FDA Filings And Notices

5         Defendants assert that their false statements concerning Velac gel were appropriate

6  because the "Company was [ ] aware of other products that had a *similar* positive finding in

7  Tg.AC mice but nevertheless had been approved by the FDA" and seek judicial notice of

8  Exhibits 30 and 31 to establish this purported fact.[7]  MTD at 7.  Defendants also seek judicial

9  notice of Exhibits 32 and 33 to assert the purported fact that Clobex was another drug with

10  "*similar* 'safety' concerns" approved by the FDA.  MTD at 8, n.4.  Defendants cite these

11  extraneous exhibits attempting to improperly buttress their argument that defendants were

12  reasonable in expressing optimism about FDA approval of Connetics' Velac gel.  Whether or not

13  these other drugs had "similar" safety concerns or "similar" positive Tg.AC study findings is not

14  at all discernable from the exhibits and this is a fact highly disputed by Lead Plaintiff.  Whether

15  such drugs were "similar" and yet approved by the FDA is more properly the purview of expert

16  testimony, and it is a matter improper to address at the motion to dismiss stage.  Because

17  Exhibits 30-33 are not documents that were relied upon or even referenced by Lead Plaintiff in

18  the Complaint, they do not form the basis of Lead Plaintiff's allegations against defendants and

19  are not properly noticeable.  *See Immune Response*, 375 F. Supp. 2d at 995.

### 2.    Summary Exhibits Created By Defendants

21         Exhibits 39 and 40 are documents prepared by defense counsel.  These documents were

22  not attached to the Complaint or referenced therein.  Defendants cite to these exhibits to

23  challenge the accuracy of Lead Plaintiff's allegations and seek judicial notice of the disputed

24  facts therein.  These documents are not appropriate for the Court's consideration in ruling on a

25  Rule 12(b)(6) motion and are improper material for judicial notice.  *See, e.g., CV Therapeutics,*

26

27

28  [7]  Lead Plaintiff notes that Exhibit 31 is not cited in defendants' MTD, although the exhibit is included in the RJN.

2004 WL 1753251, at *12 (refusing to take judicial notice of charts prepared by defense counsel, "since the Court is capable of synthesizing information").

Exhibit 39 is a chart created by defense counsel which purports to set forth each of the Insider Defendants' stock sales as a percentage of their individual total holdings remaining "as of May 23, 2006, as reported in Connetics' 2006 proxy statement." Ex. 39, n.1. Relying on this document, defendants contend that each of the Insider Defendants sold only a small portion of his total holdings in Connetics, which defendants argue "refute[s] any inference of scienter." MTD at 23-24. Exhibit 39 is inherently misleading and the Court should not take judicial notice of it. In calculating the percentage of the defendants' total holdings sold during the Class Period, defendants improperly inflated the defendants' total holdings by including valueless stock options, *i.e.*, underwater options.[8] By including underwater options in the total amount of stock retained by defendants, defendants distort downwards the percentage of their portfolios they sold to take advantage of fraud-induced inflation. Defendants have not disclosed, either publicly or before the Court, the amount of defendants' unexercised options that were underwater (and therefore worthless) that they have included as part of their personal, retained holdings presented in this exhibit. Exhibit 39 is a misleading document created by defense counsel that was not referred to, nor relied upon, in the Complaint. Accordingly, it would be inappropriate for this Court to take judicial notice of Exhibit 39.

Exhibit 40 is a chart summarizing what defendants call "meaningful cautionary language." RJN at 8. This is not a document that any investor saw. Rather, it was created by defense counsel to make boilerplate "cautionary language" seem more understandable than the form in which it actually appeared. Defendants imply that their reason for presenting Exhibit 40

---

[8] Defendants' calculation "includes common stock as well as exercisable options." MTD at 24, n.19. But, defendants did not exclude exercisable options without any value. For example, in Exhibit 39 defendants assert Krochmal owned 214,193 shares as of May 23, 2006, which is the number found in the Company's 2006 proxy statement. The 2006 proxy also states: "Dr. Krochmal's total includes options to purchase 153,333 shares of common stock that will be exercisable on or before May 23, 2006." Ex. 27 at 10. Importantly, the 2006 proxy statement notes that all of Dr. Krochmal's options were worthless as of December 31, 2005 (and therefore worthless on May 23, 2006 when the Company's stock price was lower than it was on December 31, 2005). *Id.* at 24.

1   to the Court is merely to show the existence of cautionary statements.  *Id*.  In their motion to

2   dismiss, however, defendants rely on Exhibit 40 to challenge the accuracy of Lead Plaintiffs'

3   allegations that defendants' disclosures misled the public.  MTD at 15.  Consideration of such an

4   argumentative document is improper at the motion to dismiss stage.  *See, e.g.*, *In re Vantive*

5   *Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1213 (N.D. Cal. 2000) (refusing to consider defendants'

6   compilation of plaintiffs' allegations and defendants' cautionary statements because defendants

7   sought to include them to challenge the accuracy of the allegations, rather than to demonstrate

8   the warnings existed).   In addition, Lead Plaintiff objects to Exhibit 40 to the extent that

9   defendants have highlighted certain language in the summary, which is entirely inappropriate –

10  as even defendants must concede that such language was not highlighted in the underlying SEC

11  filings or during the analyst conference call that are supposedly "summarized" in the proposed

12  exhibit.

## III.   **CONCLUSION**

14          The fact remains that the Complaint is a well pleaded document, with or without judicial

15  notice of any of the extraneous documents submitted by defendants.  Defendants' attempt to rely

16  on materials outside of the Complaint to support their motion to dismiss should be rejected.

17  Accordingly, the Court should deny defendants' request for judicial notice of Exhibits 30-33 and

18  39-40 and should not consider Exhibits 1, 2, 7, 8, 13-16, and 19 for the truth of the matters

19  asserted therein.

20  Dated: September 17, 2007                    Respectfully submitted,

21                                               BERNSTEIN LITOWITZ BERGER
                                                    & GROSSMANN LLP

23                                                      /s/ David R. Stickney
                                                      DAVID R. STICKNEY

25                                               DAVID R. STICKNEY
                                                 NIKI L. MENDOZA
                                                 MATTHEW P. SIBEN
26                                               TAKEO A. KELLAR
                                                 12481 High Bluff Drive, Suite 300
27                                               San Diego, CA 92130
                                                 Tel:    (858) 793-0070
28                                               Fax:    (858) 793-0323
                                                         -and-

CHAD JOHNSON
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class

1

## CERTIFICATE OF SERVICE

2

      I, KAYE A. MARTIN, do hereby certify that on this 17th day of September, 2007, true

3

and correct copies of the foregoing

4

**Lead Plaintiff's Response And Opposition To Request For Judicial Notice By**
**Defendants Connetics Corp., John L. Higgins, Lincoln Krochmal, C. Gregory**

5

**Vontz, And Thomas G. Wiggans**

6

were filed electronically.  Those attorneys who are registered with the Electronic Case Filing

7

("ECF") System may access this filing through the Court's system, and notice of this filing will
be sent to the parties by operation of the Court's ECF System.  Attorneys not registered with the

8

Court's ECF system will be duly and properly served via facsimile and/or Federal Express (as
indicated on the attached Service List), in accordance with the Federal Rules of Civil Procedure

9

and the Court's Local Rules.

10

                /s/ Kaye A. Martin
                KAYE A. MARTIN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**Service List**

In re CONNETICS SECURITIES LITIGATION
Case No.: 07-02940

4

| **COUNSEL FOR CONSOLIDATED PLAINTIFF FISHBURY LIMITED** | |
|---|---|
| Jean-Marc Zimmerman<br>Eduard Korsinsky<br>Pamela Lynam Mahon<br>**ZIMMERMAN, LEVI**<br>   **& KORSINSKY LLP**<br>39 Broadway, Suite 1601<br>New York, NY 10006<br>Tel: 212-363-7500<br>Fax: 212-363-7171<br>ek@zlk.com<br>jmzimmerman@zlk.com<br>pmahon@zlk.com<br><br>*Via ECF* | |
| **COUNSEL FOR CONSOLIDATED PLAINTIFF BRUCE GALLANT** | |
| Evan J. Smith<br>**BRODSKY & SMITH LLC**<br>240 Mineola Blvd.<br>Mineola, NY 11501<br>Tel: 516-741-4977<br><br>*Via FedEx* | |
| **COUNSEL FOR CONSOLIDATED PLAINTIFF MARCUS A. SEIGLE** | |
| Catherine A. Torell<br>**COHEN MILSTEIN HAUSFELD**<br>   **& TOLL P.L.L.C**<br>150 East 52nd Street<br>New York, NY 10022<br>Tel: 212-838-7797<br>Fax: 212-383-7745<br><br>*Via FedEx* | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| **COUNSEL FOR DEFENDANTS CONNETICS CORPORATION, THOMAS G. WIGGANS, C. GREGORY VONTZ, JOHN HIGGINS, LINCOLN KROCHMAL, EUGENE A. BAUER, R. ANDREW ECKERT, CARL B. FELDBAUM, DENISE M. GILBERT, JOHN C. KANE, THOMAS  D. KILEY, LEON E. PANETTA AND G. KIRK RAAB** | |
|---|---|
| Susan S. Muck<br>Dean S. Kristy<br>Christopher J. Steskal<br>Kalama M. Lui-Kwan<br>Emily St. John Cohen<br>**FENWICK & WEST**<br>275 Battery Street, Suite 1600<br>San Francisco, CA 94111<br>Tel: 415-875-2300<br>Fax: 415-281-1350<br>smuck@fenwick.com<br>dkristy@fenwick.com<br>csteskal@fenwick.com<br>klui-kwan@fenwick.com<br>ecohen@fenwick.com | Gregory A. Markel<br>**CADWALADER, WICKERSHAM<br>    & TAFT LLP**<br>1 World Financial Center<br>New York, NY 10281<br>Tel: 212-504-6112<br>Fax: 212-504-6666<br>gregory.markel@cwt.com |
| *Via ECF* | *Via ECF* |
| **COUNSEL FOR DEFENDANT ALEXANDER J. YAROSHINSKY** | |
| James P. Duffy IV<br>**DLA PIPER US LLP**<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel: 212-335-4500<br>Fax: 212-504-6666<br>James.duffy@dlapiper.com<br><br>Alysson Russell Snow<br>**DLA PIPER US LLP**<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>Tel: 619-699-2858<br>Fax: 619-699-2701<br>Alysson.snow@dlapiper.com<br><br>*Via ECF* | |

| **Defendant Victor E. Zak** | |
|---|---|
| Victor E. Zak (*pro se*)<br>24 Oakmont Road<br>Newton, MA 02459<br>Tel: 617-610-2538<br>zakvic@yahoo.com<br><br>***Via FedEx*** | |