SUSAN S. MUCK (CSB NO. 126930)
DEAN S. KRISTY (CSB NO. 157646)
CHRISTOPHER J. STESKAL (CSB NO. 212297)
CATHERINE DUDEN KEVANE (CSB NO. 215501)
EMILY ST. JOHN COHEN (CSB NO. 239674)
GAURAV MATHUR (CSB NO. 242630)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:      (415) 875-2300
Facsimile:      (415) 281-1350
smuck@fenwick.com
dkristy@fenwick.com
csteskal@fenwick.com
ckevane@fenwick.com
ecohen@fenwick.com
gmathur@fenwick.com

Attorneys for Defendants
Connetics Corp., John L. Higgins, Lincoln Krochmal,
C. Gregory Vontz, and Thomas G. Wiggans

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE CONNETICS CORP. SECURITIES LITIGATION | Case No.  C 07-02940 SI<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CONSOLIDATED CLASS ACTION COMPLAINT BY DEFENDANTS CONNETICS CORP., JOHN L. HIGGINS, LINCOLN KROCHMAL, C. GREGORY VONTZ, AND THOMAS G. WIGGANS**<br><br>Date:       October 19, 2007<br>Time:       9:00 a.m.<br>Dept:       Courtroom 10, 19th Floor<br>Judge:      Honorable Susan Illston |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................................... 1

II.   PLAINTIFF CANNOT AVOID THE GOVERNING  LEGAL STANDARDS ................. 2

III.  PLAINTIFF'S OPPOSITION FAILS TO SUPPORT A FRAUD CLAIM WITH
      RESPECT TO VELAC-RELATED STATEMENTS ..................................................... 4

      A.    Plaintiff Cannot Evade The Standing Requirement ................................................. 4

      B.    Plaintiff's Opposition Neither Overcomes The Safe Harbor Nor Identifies
            Facts Establishing Actual Knowledge Of Falsity ..................................................... 5

            1.    Plaintiff Provides No Meaningful Response To The Safe Harbor............. 5

            2.    Even If Not Protected By The Safe Harbor, The Opposition Has
                  Failed to Show Actual Knowledge Of Falsity ........................................... 7

      C.    Plaintiff Has Failed To Identify Facts Showing That Any Other Statement
            Was Misleading Or Made With Scienter ................................................................. 10

      D.    Plaintiff's Insider Trading Allegations Fail To Raise The Required Strong
            Inference of Scienter .............................................................................................. 13

      E.    Plaintiff Fails To Show Loss Causation.................................................................. 14

IV.   PLAINTIFF'S OPPOSITION FAILS TO SUPPORT A FRAUD CLAIM
      PERTAINING TO CONNETICS' FINANCIAL STATEMENTS ................................. 14

      A.    Plaintiff's Opposition Fails to Identify Specific Facts Showing That
            Connetics Deliberately Misstated Its Financial Results.......................................... 14

      B.    Plaintiff's "Channel Stuffing" Arguments Are Equally Deficient....................... 16

      C.    Plaintiff's Loss Causation Argument Is Unavailing And Unsupported By
            Allegations In The Amended Complaint ............................................................... 19

V.    PLAINTIFF'S ARGUMENT UNDER SECTION 20A FAILS ...................................... 19

VI.   PLAINTIFF'S CONTROL PERSON ARGUMENT UNDER SECTION 20(A)
      FAILS........................................................................................................................ 20

VII.  CONCLUSION ........................................................................................................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) .................................................................................... 8

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001) ........................................................... 10, 13

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................................ 12

*Conneticut Nat. Bank v. Germain*,
  503 U.S. 249 (1992) ........................................................................................... 6

*Dawson v. City of Seattle*,
  435 F.3d 1054 (9th Cir. 2006) ............................................................................ 7

*DeMarco v. DepoTech Corp.*,
  149 F. Supp. 2d 1212 (S.D. Cal. 2001) .......................................................... 9, 11

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ............................................................................ 14

*Dura Pharms. Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................... 19

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .......................................................................... 15

*Employees Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) ............................................................................ 5

*Garfield v. NDC Health Corp*,
  466 F.3d 1255 (11th Cir. 2006) ........................................................................ 17

*Gargiulo v. Isolagen*,
  2007 WL 2791827 (E.D. Pa. Sept. 26, 2007) ..................................................... 9

*Gaylinn v. 3Com Corp.*,
  185 F. Supp. 2d 1054 (N.D. Cal. 2000) ............................................................ 17

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) ........................................................................ 4, 16

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ............................................................................ 17

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ............................................................................ 7

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ....................................................................... 16, 17

*Hockey v. Medhekar*,
  30 F. Supp. 2d 1209 (N.D. Cal. 1998) .............................................................. 16

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2003) .......................................................................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Adaptive Broadband Sec. Litig.*,
   2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ............................................................ 3

*In re Alkermes Sec. Litig.*,
   2005 WL 2848341 (D. Mass. Oct. 6, 2005).................................................... 10, 11

*In re Amylin Pharms. Inc., Sec. Litig.*,
   2003 WL 21500525 (S.D. Cal. May 1, 2003) ....................................................... 9

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989)................................................................................ 7

*In re Apple Computer, Inc. Sec. Litig.*,
   243 F. Supp. 2d 1012 (N.D. Cal. 2002) .............................................................. 13

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   2002 U.S. Dist. LEXIS 22403 (S.D. Cal. Oct. 3, 2002) ...................................... 3

*In re Ashworth, Inc. Sec. Litig.*,
   2000 WL 33176041 (S.D. Cal. July 18, 2000) ................................................... 17

*In re AST Research Sec. Litig.*,
   887 F. Supp. 231 (C.D. Cal. 1995)...................................................................... 20

*In re Boston Scientific Corp. Sec. Litig.*,
   490 F. Supp. 2d 142 (D. Mass. 2007) ................................................................. 12

*In re Carter-Wallace, Inc. Sec. Litig.*,
   220 F.3d 36 (2d Cir. 2000)................................................................................... 11

*In re CBT Group PLC Sec. Litig.*,
   1999 WL 1249287 (N.D. Cal. July 21, 1999) ...................................................... 8

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .............................................................. 12

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2004 WL 17532, 7-8 (N.D. Cal. Aug. 5, 2004) ................................................... 9

*In re Dauo Sys. Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005).............................................................................. 17

*In re Foundry Networks, Inc. Sec. Litig.*,
   2003 WL 22077729 (N.D. Cal. Aug. 29, 2003).................................................. 16

*In re Harmonic, Inc. Sec. Litig.*,
   163 F. Supp. 2d 1079 (N.D. Cal. 2001) ................................................................ 3

*In re IAC/InterActiveCorp. Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007).................................................................. 13

*In re ICN Pharms., Inc. Sec. Litig.*,
   299 F. Supp. 2d 1055 (C.D. Cal. 2004) .............................................................. 16

*In re Impax Labs., Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 723 (N.D. Cal. Jan. 3, 2007) ........................................ 19

*In re Infineon Techs. AG Secs. Litig.*,
   2006 WL 2925680 (N.D. Cal. Sept. 11, 2006) ................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Invision Tech., Inc. Sec. Litig.*,
2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ............................................. 18

*In re iPass, Inc. Sec. Litig.*,
2006 WL 496046 (N.D. Cal. Feb. 28, 2006) ............................................... 8

*In re Lattice Semiconductor Corp. Sec. Litig.*,
2006 WL 538756 (D. Or. Jan. 3, 2006) .................................................... 18

*In re Lockheed Martin Corp. Sec. Litig.*,
272 F. Supp. 2d 944 (C.D. Cal. 2003) ........................................................ 6

*In re MedImmune, Inc. Sec. Litig.*,
873 F. Supp. 953 (D. Md. 1995) ......................................................... 9, 11

*In re Netflix, Inc. Sec. Litig.*,
2005 WL 1562858 (N.D. Cal. Jun. 28, 2005) ......................................... 13

*In re Portal Software, Inc. Sec. Litig.*,
2006 WL 2385250 (N.D. Cal. Aug. 17, 2006) ........................................... 7

*In re Ramp Networks, Inc. Sec. Litig.*,
201 F. Supp. 2d 1051 (N.D. Cal. 2002) ................................................... 14

*In re Seebeyond Tech. Corp. Sec. Litig.*,
266 F. Supp. 2d 1150 (C.D. Cal. 2003) ..................................................... 7

*In re Sierra Wireless, Inc. Sec. Litig.*,
482 F. Supp. 2d 365 (S.D.N.Y. 2007) ..................................................... 17

*In re Silicon Graphics Inc., Sec. Litig.*,
970 F. Supp. 746 (N. D. Cal. 1997),
*aff'd,* 183 F.3d 970 (9th Cir. 1999) ....................................................... 20

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)........................................................... 9, 18, 20

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
2007 WL 760535 (N.D. Cal. Mar. 9, 2007) ............................................... 2

*In re Spectrum Brands, Inc. Sec. Litig.*,
461 F. Supp. 2d 1297 (N.D. Ga. 2006) ................................................... 17

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................... 2, 16

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996).................................................................... 8

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002)..................................................... passim

*In re Verisign, Inc., Deriv. Litig.*,
2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ....................................... 14

*In re Verisign, Inc., Sec. Litig.*,
2005 WL 88969 (N.D. Cal. Jan. 13, 2005) ............................................... 4

*In re Vertex Pharms. Inc. Sec. Litig*,
357 F. Supp. 2d 343 (D. Mass. 2005) ............................................. 8, 9, 11

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iv-

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Worlds of Wonder Sec. Litig.,*
  35 F.3d 1407 (9th Cir. 1994)................................................................ 8

*Kane v. Madge Networks N.V.,*
  2000 WL 33208116 (N.D. Cal. May 26, 2000),
  *aff'd sub nom.,* 32 Fed. Appx. 905 (9th Cir. 2002)............................ 15

*Lentell v. Merrill Lynch & Co.,*
  396 F.3d 161 (2d Cir. 2005).............................................................. 14

*Lipton v. PathoGenesis Corp.,*
  284 F.3d 1027 (9th Cir. 2002)............................................................ 8

*Morgan v. AXT, Inc.,*
  2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ............................ 15, 18

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*
  *America West Holding Co.,*
  320 F.3d 920 (9th Cir. 2003)............................................................... 7

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.,*
  2005 WL 4161977 (D. Colo. Oct. 20, 2005) ................................... 6, 8

*Osher v. JNI Corp.,*
  308 F. Supp. 2d 1168 (S.D. Cal. 2004),
  *aff'd in relevant part,* 183 Fed. Appx. 604 (9th Cir. 2006)................ 3

*Paracor Fin., Inc. v. General Elec. Cap. Corp.,*
  96 F.3d 1151 (9th Cir. 1996)............................................................. 20

*Reiger v. Altris Software, Inc.,*
  1999 WL 540893 (S.D. Cal. Apr. 30, 1999) ....................................... 3

*Ronconi v. Larkin,*
  253 F.3d 423 (9th Cir. 2001)........................................................... 7, 8

*Schuster v. Symmetricom,*
  2000 WL 33115909 (N.D. Cal. Aug. 1, 2000).................................. 13

*Steckman v. Hart Brewing, Inc.,*
  143 F.3d 1293 (9th Cir. 1998)........................................................... 18

*Tellabs v. Makor Issues & Rights, Ltd.,*
  127 S. Ct. 2499 (2007) ............................................................. passim


**STATUTES**

15 U.S.C. § 78u-4(b)(1)(B) ................................................................. 2

15 U.S.C. § 78u-5............................................................................... 6

15 U.S.C. § 78u-5(c)(1) ...................................................................... 6

15 U.S.C. § 78u-5(c)(1)(A) ................................................................ 5

15 U.S.C. § 78u-5(c)(1)(B) ................................................................. 7

15 U.S.C. § 78u-5(e) .......................................................................... 4

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **I.    INTRODUCTION**

2          Though purporting to be a response to defendants' motion to dismiss, plaintiff's

3    Opposition assiduously avoids addressing the fundamental pleading deficiencies defendants have

4    identified.  For instance, the lynchpin of plaintiff's case centers on forward-looking statements

5    Connetics made about the prospects for Velac, a new drug under development.  Yet, in the

6    Opposition, plaintiff never addresses the cautionary warnings Connetics issued concerning the

7    Velac approval process which plainly establish that such statements fall within the statutory safe

8    harbor.  Thus, in 40 pages, plaintiff does not directly address warnings that Velac "may not be

9    approved by the FDA in the timeframes projected, if at all," that "U.S. development of Velac may

10   not succeed" and "Velac may not be approved for marketing in the U.S," and that Velac and other

11   drugs under development "may not reach the market for a number of reasons," including

12   "because the FDA has substantial discretion in the approval process" and "may not interpret our

13   clinical data the way we do."  Def. Mem. at 5, 14-15.

14          Instead, plaintiff tries to skirt the safe harbor, asserting that defendants had indicated "that

15   FDA approval was a foregone conclusion."  Opp. at 11.  Tellingly, however, plaintiff does not

16   cite any factual basis for this assertion – since no defendant ever made such a statement – and no

17   reasonable investor could interpret Connetics' actual statements as any sort of "guarantee."  Nor

18   can plaintiff cast aside Connetics' cautionary statements with the conclusory argument that they

19   are "boilerplate," given the case law holding that the same types of warnings are covered by the

20   safe harbor.

21          Equally significant is plaintiff's inability to address the fundamental irrationality of its

22   case.  It never tries to explain why, if defendants knew from the very beginning that Velac "stood

23   virtually no chance of being approved" (AC ¶ 1), defendants would thereafter spend millions of

24   dollars on milestone payments to the licensor of the drug, pursue expensive and time-consuming

25   approval from the FDA, hire and train dozens of sales personnel in anticipation of approval, and

26   prepare commercial operations to manufacture, distribute and sell Velac.  *See* AC ¶¶ 47-49, 202-

27   203, 217, 222, 242.  The case law, which plaintiff does not address, firmly holds that a strong

28   inference of scienter does ***not*** emerge in this context, and plaintiff's conclusory assertions that

-1-

1    defendants' had "actual knowledge" that any statement was allegedly misleading is no substitute

2    for the concrete allegations and analysis the Reform Act requires.

3         The Opposition is similarly deficient in attempting to discharge plaintiff's burden of

4    identifying specific facts establishing that Connetics' financial restatement of 2004 and 2005

5    results (collectively by just $9 million) was the product of fraud rather than an innocent or even

6    negligent error.  Although challenged to do so, plaintiff has failed to identify specific facts that

7    could conceivably support a claim that defendants deliberately misstated Connetics' reserves

8    which led to the restatement.  In fact, plaintiff tries to avoid meaningful discussion of reserves

9    altogether.  While it at least pays lip-service to its "channel stuffing" allegations, it still has not

10   identified a single transaction, customer or product associated with that claim, indicated how any

11   such transaction was accounted for, much less provided information suggesting that any

12   defendant directed or had knowledge of any supposedly improper accounting.  For these and the

13   other reasons detailed herein, the Amended Complaint fails as a matter of law.

14   **II.    PLAINTIFF CANNOT AVOID THE GOVERNING  LEGAL STANDARDS**

15        The Reform Act requires plaintiff to allege, in a clear way, (1) precisely which statement

16   is at issue, (2) the reasons why the statement is false, and (3) particularized facts giving rise to a

17   strong inference of scienter.  15 U.S.C. § 78u-4(b)(1)(B).  In light of this standard, plaintiff has no

18   answer for the fact that the Amended Complaint quotes more than 40 pages of statements from

19   Connetics' press releases, transcripts, and SEC filings, and then concludes that "these statements"

20   were false and misleading for reasons set forth elsewhere in the Amended Complaint.  AC ¶¶

21   178-332.  This type of pleading "obfuscates rather than clarifies" and fails to "divine precisely

22   which statements (or portion of statements) are alleged to be false or misleading, and the reason

23   or reasons why each statement is false or misleading."  *In re Splash Tech. Holdings, Inc. Sec.*

24   *Litig.*, 160 F. Supp. 2d 1059, 1075 (N.D. Cal. 2001) (quotations omitted).  It is the kind of

25   "puzzle pleading" condemned by the Reform Act.  *See id.; In re Silicon Storage Tech., Inc., Sec.*

26   *Litig.*, 2007 WL 760535, *10 n.5 (N.D. Cal. Mar. 9, 2007).

27        Ignoring the infirmities of its pleading, plaintiff complains that defendants cite to the very

28   same statements and SEC filings – which plaintiff either quoted or partially quoted (out of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

context) in the Amended Complaint – and claims that, by asking the Court to look at them, defendants are somehow converting this into a motion for summary judgment.  *See* Opp. at 7-10. This tactic is contrary to well-established law.  The Court can, and should, consider these statements and documents in context. *Tellabs v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2509 (2007) (court must consider documents incorporated into the complaint by reference); *In re Applied Micro Circuits Corp. Sec. Litig.,* 2002 U.S. Dist. LEXIS 22403, *12 (S.D. Cal. Oct. 3, 2002) (where plaintiff "refer[s] to the SEC filings in its amended complaint, [] it cannot therefore selectively argue that Defendants' cannot rely on the same material"); *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478, *20 (N.D. Cal. Apr. 2, 2002) (same).

The Amended Complaint is replete with examples of selective editing.  For example, in paragraph 261, the Amended Complaint quotes the discussion of Velac from Connetics' April 26, 2005 conference call, but elides the statements (in the middle of that discussion) indicating that other products with a "positive finding in [the Tg.AC mouse] model" have been approved by the FDA and "in fact, benzoyl peroxide, a commonly used OTC acne product and an ingredient in several prescription acne products, has Rx labeling that notes a positive result in this model." Def. Mem. at 7; AC ¶ 261; Steskal Decl. Ex. 1.[1]   This was among the myriad of factors that Connetics considered when evaluating the prospects for Velac.

Unable to address the point, or explain its decision to incorporate the conference call in its pleading yet ***edit out this key statement***, plaintiff now argues that the Court should disregard it because, according to the Opposition, it is "false."  Opp. at 8.   Not only is plaintiff's position unclear from the puzzle-pleading plaintiff has employed, it lacks supporting factual allegations. For the statement to be false, plaintiff would have to plead that benzoyl peroxide had not been approved, or that it did not have a positive response in a preclinical mouse study, or that it was

---

[1]  Despite plaintiff's self-serving attempt to edit the statement, the law is clear that when a plaintiff selectively quotes from a document, the court should consider the entire document.  *See Osher v. JNI Corp.*, 308 F. Supp. 2d 1168, 1186 (S.D. Cal. 2004), *aff'd in relevant part,* 183 Fed. Appx. 604 (9th Cir. 2006) (considering full document, not only portion plaintiffs "selectively quote"); *Reiger v. Altris Software, Inc.*, 1999 WL 540893, *2 (S.D. Cal. Apr. 30, 1999) ("the court may consider the full text of those documents, even when the complaint quotes only selected portions"); *In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1084 (N.D. Cal. 2001) (defendants may "attach to a 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  not really considered by Connetics.  The Amended Complaint does none of those things.[2]  As

2  such, there is nothing to plaintiff's argument that the Court should ignore the full text of

3  statements or facts favorable to defendants merely because plaintiff makes a conclusory

4  allegation that they are "false."  *See Tellabs,* 127 S. Ct. at 2509 ("courts **must** consider the

5  complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

6  12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by

7  reference, and matters of which a court may take judicial notice") (emphasis added); *Gompper v.*

8  *VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002) (dismissing complaint where facts alleged in the

9  complaint negated strong inference of scienter).[3]

10  **III.    PLAINTIFF'S OPPOSITION FAILS TO SUPPORT A FRAUD CLAIM WITH
    RESPECT TO VELAC-RELATED STATEMENTS**

11

12      **A.      Plaintiff Cannot Evade The Standing Requirement**

13          Plaintiff does not dispute that it sold all of its Connetics shares **before** the June 13, 2005

14  announcement that the FDA had issued a "non-approvable" letter for Velac.  *See* Opp. at 2.  As

15  such, plaintiff could not have been harmed by the alleged "scheme" to mislead investors about

16  Velac's prospects for FDA approval.  Plaintiff cites a single case for the proposition that it has

17  standing despite the fact that it was not a Connetics shareholder when the alleged loss occurred.

18  However, in that case, defendants challenged the standing of plaintiffs where the

19  misrepresentations were "made after they **purchased** their stock" and they were shareholders

20  when the loss occurred.  *In re Verisign, Inc.*, *Sec. Litig.,* 2005 WL 88969, *3 (N.D. Cal. Jan. 13,

21  2005) (emphasis added).  Accordingly, it is of no help to plaintiff.

22

23

24  [2]  The same is true with respect to the conclusion of the expert panel "that the positive response
    was the result of a limitation of the [mouse] model."  AC ¶ 257.  It is not enough for plaintiff to
25  allege in conclusory fashion that a statement was "false or misleading."  Plaintiff does not allege
    – nor can it – any facts with the requisite particularity showing that the panel reached a different
26  conclusion.

27  [3]  Plaintiff's argument also overlooks the fact that, with respect to forward-looking statements, the
    Reform Act *explicitly* provides that courts need to examine the contents of public statements
28  when evaluating whether the safe harbor provision applies.  15 U.S.C. § 78u-5(e).  Plaintiff's
    position is contrary to the statute, which it never addresses.

**B.**    **Plaintiff's Opposition Neither Overcomes The Safe Harbor Nor Identifies Facts Establishing Actual Knowledge Of Falsity**

**1.**    **Plaintiff Provides No Meaningful Response To The Safe Harbor**

Plaintiff does not dispute that it bears a heavy burden with respect to forward-looking statements:  it must plead facts establishing, among other things, that the statements were not accompanied by "meaningful cautionary language."  15 U.S.C. § 78u-5(c)(1)(A)(i); *Employees Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132-33 (9th Cir. 2004).  There can be no dispute that the statements at issue were forward-looking.  *See* Def. Mem. at 13-14 (summarizing statements).  Indeed, throughout its brief, plaintiff repeatedly identifies forward-looking statements about Velac's prospects as the foundation of its case.  *See, e.g.,* Opp. at 2 ("Defendants misled investors about Velac's prospects for FDA approval"); *id.* ("[Defendants] falsely reported that the Company was poised to capture a large part of the acne medication market").

Notwithstanding the stringent requirements of the Reform Act, however, plaintiff provides no meaningful analysis of the safe harbor, including the specific cautionary language Connetics repeatedly used concerning the fact that Velac may not be approved.  Among other things, the Company warned that: (1) "Connetics faces risks and uncertainties that . . .Velac may not be approved by the FDA in the timeframes projected, if at all"; (2) "U.S. development of Velac may not succeed" and "Velac may not be approved for marketing in the U.S."; (3) "successful product development in our industry is highly uncertain, the process of obtaining FDA approval is lengthy and expensive" and, as a result, "very few research and development projects produce a commercial product"; and (4) "product candidates that appear promising in the early phases of development may not reach the market for a number of reasons," including "because the FDA has substantial discretion in the approval process" and "may not interpret our clinical data the way we do."  *See* Def. Mem. at 14-15.

Plaintiff ***never addresses*** these statements head-on, but instead asserts that defendants indicated "that FDA approval was a foregone conclusion." Opp. at 11.  Such argument lacks any factual basis, since no reasonable investor could interpret Connetics' actual statements as any sort

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of "guarantee." Likewise, plaintiff's conclusory assertion that the cautionary statements were "boilerplate" (Opp. at 31) disregards the case law holding that the same type of cautionary language was covered by the safe harbor because "[the company's] statements were sufficient to inform a reasonable investor about the uncertainties surrounding FDA approval. Investors who purchased [company] stock during the Class Period had notice that a risk of investing was that the FDA might not approve [the product] in the near term or ever." *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, *9 (D. Colo. Oct. 20, 2005); *see* Def. Mem. at 15 (citing additional cases).

Nor can plaintiff circumvent the safe harbor by claiming that it does not apply because plaintiff's claim is based on the "concealment of then-existing facts . . . ." Opp. at 30-31. It is the nature of the statement, *not* the purported reason it is misleading, that governs whether it is forward-looking. *See* 15 U.S.C. § 78u-5 (defining forward-looking statements). Indeed, virtually every safe harbor case involves the allegation that a company's projections were false or misleading because the defendant was in possession of then-existing facts that cast doubt on them. "To accept plaintiff's position would be to discard a statutory framework that provides protection for forward-looking statements, replacing it instead with the notion that mere allegations of omission . . . would make such statements actionable." *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944, 950 (C.D. Cal. 2003).

Finally, plaintiff incorrectly asserts that it can evade the safe harbor if it alleges that a defendant had actual knowledge of a statement's falsity. Opp. at 30. That position is flatly contradicted by the statutory language. The Reform Act provides that a person "***shall not be liable*** with respect to any forward-looking statement" if either (a) it was accompanied by "meaningful cautionary statements," "***or***" (b) "plaintiff fails to prove" actual knowledge of falsity. 15 U.S.C. § 78u-5(c)(1) (emphasis added). Thus, if (as here), the safe harbor applies, then the Court's inquiry is complete, regardless of any claims about defendants' alleged state of mind.[4]

_____

[4] Plaintiff's interpretation ignores the statute's use of the disjunctive and would make the requirement for "meaningful cautionary language" superfluous. *See Conneticut Nat. Bank v. Germain,* 503 U.S. 249, 253 (1992) ("courts should disfavor interpretations of statutes that render

DEFS' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – CASE NO.  C 07-02940 SI

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## 2.   Even If Not Protected By The Safe Harbor, The Opposition Has Failed to Show Actual Knowledge Of Falsity

Even if the safe harbor did not act as a complete bar, plaintiff's claim would fail because it has not identified facts showing that each defendant had "actual knowledge" that Velac would not be approved by the FDA at the time of each forward-looking statement. *See* 15 U.S.C. § 78u-5(c)(1)(B)(i); *Ronconi v. Larkin,* 253 F.3d 423, 429 (9th Cir. 2001). Plaintiff fails to identify a single fact showing that defendants lacked a genuine belief in their statements about Velac or intended to deceive investors about Velac's prospects. Indeed, that is precisely why plaintiff felt obligated to plead that defendants either knew "***or should have known***" that Velac would not be approved (AC ¶ 58), a deficient formulation they simply run away from in their Opposition.

Morover, plaintiff fails to make any real effort to reconcile its claim of "actual knowledge" that Velac would not be approved with the concrete business decisions Connetics made throughout the putative class period. Among other things, Connetics made a $3.5 million milestone payment to Yamanouchi, the licensor of Velac, upon filing the NDA in August 2004 (AC ¶¶ 217, 222); it devoted resources to the expensive and time consuming process of seeking FDA approval (*id.* ¶¶ 47-49); it hired and trained dozens of sale people (*id.* ¶ 242); and it prepared for commercial operations to manufacture, distribute and sell Velac if and when it was approved (AC ¶¶ 202, 242, 244). Put simply, defendants did not merely "tout" Velac, ***they invested significant resources*** in anticipation of its approval throughout the class period. The case law firmly holds that this eviscerates scienter. *See, e.g.*, *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1118 (9th Cir. 1989) (scienter dispelled by decision to contribute "millions of dollars into

---

language superfluous"); *Dawson v. City of Seattle*, 435 F.3d 1054, 1063 (9th Cir. 2006) ("a statute is normally to be interpreted so that all of its words are given meaning and not rendered superfluous"). Accordingly, other courts have rejected plaintiff's interpretation of the safe harbor and held that "if a statement is accompanied by 'meaningful cautionary language,' the defendants' state of mind is irrelevant." *Harris v. Ivax Corp.*, 182 F.3d 799, 803-04 (11th Cir. 1999); *see In re Portal Software, Inc. Sec. Litig.*, 2006 WL 2385250, *12 (N.D. Cal. Aug. 17, 2006) (same). The holding of *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Co.,* 320 F.3d 920 (9th Cir. 2003), is not to the contrary. That case's discussion of the safe harbor was dicta because it held that the statements at issue were not forward-looking. *Id.* at 937; *see also In re Seebeyond Tech. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1164-65 (C.D. Cal. 2003) ("It is important to note that this Court is not bound by *America West . . .* because the relevant statements are dicta.").

DEFS' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – CASE NO.  C 07-02940 SI

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

product development, market research and promotions"); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1420 (9th Cir. 1994) (same).[5]

Likewise, plaintiff glosses over the host of reasons that made the prospects for approval of Velac promising, including: (1) its impressive Phase III clinical results in humans (*see* AC ¶¶ 44-48); (2) the absence of adverse comments by the FDA during the pre-NDA process, in the 74-day letter, or at any time prior to April 13, 2005 (*see* AC ¶¶ 68, 261); (3) the limitations of and number of "false positives" associated with the Tg.AC model (*see* AC ¶¶ 56, 75, 257, 261); and (4) that other products such as BenzaClin have been approved by the FDA notwithstanding a "positive signal" in a Tg.AC mouse study (*see* AC ¶ 257).  *See* Def. Mem. at 18-20.

Contrary to plaintiff's suggestion, undisclosed problems do ***not*** render a forward-looking statement actionable unless other facts show that defendants genuinely lacked the belief that such problems could be overcome.  *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 930 (9th Cir. 1996) ("company could have known of problems in the testing procedures, planned to remedy those deficiencies, and still thought it would achieve FDA approval by the estimated date");[6] *In re Vertex Pharms. Inc. Sec. Litig*, 357 F. Supp. 2d 343, 352 (D. Mass. 2005) (undisclosed preclinical animal tests that signal toxicity do not render optimistic statements about Phase I and II human clinical trials knowingly false or misleading unless defendants know facts that "doom the drug's commercial prospects"); *Noble Asset Mgmt.*, 2005 WL 4161977, *7 ("fact that the FDA staff

---

[5]  Plaintiff's answer is to assert that defendants engaged in such activity to inflate Connetics' stock price. Opp. at 27.  Not only is this a conclusion rather than a well-pleaded fact, but it is also the type of allegation that courts regularly reject as insufficient to plead scienter because it could be said about virtually every company that ultimately suffers a setback.  *See Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (such generic motives would apply to any company and thus do not raise an inference of scienter); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.").

[6]  *See also Ronconi*, 253 F.3d at 434 ("Problems and difficulties are the daily work of business people.  That they exist does not make a lie out of any of the alleged false statements."); *Acito,* 47 F.3d at 53 (holding that disclosure of FDA inspection deficiencies was not required where "one cannot infer that it was a 'foregone conclusion'" that the plant would fail the inspection and the FDA would close the plant); *In re iPass, Inc. Sec. Litig.*, 2006 WL 496046, *7 (N.D. Cal. Feb. 28, 2006) (plaintiffs must show that defendants were aware of facts that "made the projections untenable"); *In re CBT Group PLC Sec. Litig.*, 1999 WL 1249287, *3 (N.D. Cal. July 21, 1999) ("even if a company knows that a problem exists, it could still honestly and in good faith report that the company will continue to perform as expected").

members raised questions did not impose a duty upon the defendants to revise their opinions about the drug's efficacy or to report to the public the substance of their conversations with the FDA"); *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1224 (S.D. Cal. 2001) (undisclosed statements by FDA advisory committee about product's toxicity did not foreclose possibility of FDA approval); *In re MedImmune, Inc. Sec. Litig.*, 873 F. Supp. 953, 966 (D. Md. 1995) ("Mere questioning by the FDA imposed no duty upon Defendants either to trim back their opinions as to the efficacy of the drug or to report to the public the FDA staffers' questions as they arose").[7] Accordingly, because plaintiff has not and cannot plead that defendants lacked the belief that any problem associated with the Tg.AC preclinical study could be overcome, it has failed to plead a claim. *See Vertex,* 357 F. Supp. 2d at 352. [8]

It was, of course, disappointing that Velac was not approved. But even before *Tellabs*, plaintiff's case was contrary to law and amounted to nothing more than "fraud by hindsight."

---

[7]  Although plaintiff asserts that *MedImmune* is contrary to the "great weight of authority," the only case plaintiff cites says no such thing.  In *In re Amylin Pharms. Inc., Sec. Litig.*, 2003 WL 21500525 (S.D. Cal. May 1, 2003), the court held that plaintiff adequately alleged falsity where defendants represented that a drug's clinical trial results "met the requirements for FDA approval," but did not disclose that the FDA had already told defendants that its clinical trial results were not sufficient to gain approval. *Id.* at *8.  The *Amylin* court accepted *MedImmune*'s holding that a defendant's optimistic statements regarding a drug are not false merely because the FDA raises concerns about the drug, but distinguished the case on its facts. *Id.* In each of the other cases cited by plaintiff, the gravamen of the claim was that defendants made "allegedly fraudulent and/or misleading statements of historical fact." *In re CV Therapeutics, Inc. Sec. Litig.*, 2004 WL 1753251, *7-8, 10 (N.D. Cal. Aug. 5, 2004) (defendants made misleading statements contrary to known facts, such as the FDA's stated reasons for cancellation of a meeting with defendants and the contents of FDA correspondence); *see also Gargiulo v. Isolagen*, 2007 WL 2791827, *3-4 (E.D. Pa. Sept. 26, 2007) (defendants misrepresented drug's efficacy).

[8]  Plaintiff is incorrect when it argues that defendants were "informed by their own experts that FDA approval was unlikely."  Opp. at 12.  The Amended Complaint alleges no such facts.  Rather, it alleges that a "panel of expert toxicologists informed Connetics that the panel did not know of any drug that exhibited a 'positive dermal' similar to Velac that ever had been approved by the FDA."  AC ¶ 57.  Plaintiff does not identify who was on the expert panel, the person or people who made the statement, or who at the Company heard the statement.  Plaintiff pleads no "adequate corroborating detail" that would tend to support its allegation regarding the alleged conclusions of the expert panel. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) ("[Plaintiff] would have us speculate as to the basis for the allegations about the reports, the severity of the problems, and the knowledge of the officers.  We decline to do so.").  More fundamentally, the alleged statement by the expert panel does not demonstrate that defendants knew that Velac would not be approved by the FDA.  Rather, the alleged statement merely establishes that the speaker *lacked knowledge* about whether a product that exhibited a "positive dermal" in a preclinical mouse test had or had not been approved.  In fact, the Company's own disclosures quoted in the Amended Complaint show that benzoyl peroxide was precisely such a product. *See* AC ¶ 261, Def. Mem. at 7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

After *Tellabs*, which requires plaintiff to plead specific facts supporting a "cogent and compelling inference" of scienter (here, actual knowledge), and requires consideration of "nonculpable explanations," plaintiff's case is irredeemably flawed. *Id.* at 2509-10.

## C.    Plaintiff Has Failed To Identify Facts Showing That Any Other Statement Was Misleading Or Made With Scienter

Plaintiff's Opposition concedes that Connetics did not make any statements about the preclinical Tg.AC mouse study prior to April 26, 2005, and hence did not misrepresent the results of that study in any way before that time (*i.e.*, since the beginning of the class period on January 27, 2004). Plaintiff also does not claim – nor could it – that Connetics had an independent legal obligation to disclose the results of the preclinical study. *See* Def. Mem. at 20-21 (citing cases). Although plaintiff resorts to arguing that every historical statement that Connetics ever made about Velac was false and misleading because it "omitted" reference to the preclinical study, it fails to show how the statements actually made on other subject matters were somehow rendered "false and misleading" based on this "omission." The absence of such analysis is not surprising, since nothing about Connetics filing of the NDA (AC ¶¶ 219, 234), its payment of a $3.5 million licensing fee to Yamanouchi (*id.* ¶¶ 217, 222), the results of Phase III clinical trials (*id.* ¶¶ 199, 255), and the expansion of Connetics' sales force in anticipation of Velac's approval and launch (*id.* ¶ 242) was in any way untruthful or misleading. *See In re Alkermes Sec. Litig.*, 2005 WL 2848341, *16 (D. Mass. Oct. 6, 2005) (no duty to disclose FDA's request for additional preclinical studies when company announced completion of Phase III clinical trials); *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 904-05 (N.D. Ill. 2001) (no duty to disclose FDA warning letters regarding quality control issues when company described regulatory environment, products, and growth in products).

Plaintiff fares no better when trying to argue that defendants "made false statements and omissions regarding the safety and efficacy of Velac." Opp. at 11. Defendants never promised that Velac was "safe and effective." Rather, on March 23, 2004, Connetics accurately disclosed the results of Phase III clinical trials in humans, including the fact that in these clinical trials

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-10-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Velac "was safe and well tolerated" by the patients.[9]  Plaintiff's Opposition simply ignores the context of the statement, which was limited to Phase III clinical trials.  *See Alkermes,* 2005 WL 2848341, at *16 (disclosure regarding clinical study does not trigger obligation to disclose FDA's request for additional preclinical studies); *Vertex,* 357 F. Supp. 2d at 352 (statements about clinical trials did not require disclosure of preclinical problems).  In any event, the law is clear that a company does not have an automatic duty to disclose potentially adverse test results even where it makes more sweeping positive statements about a drug's safety or efficacy.  *See In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 38, 40-42 (2d Cir. 2000) (holding that statements touting drug's "unprecedented safety profile" and lack of side effects were not misleading even though defendant had received "fifty-seven adverse medical reports," including reports of deaths); *DeMarco*, 149 F. Supp. 2d at 1223-24 (holding that positive statements regarding "safety and efficacy" were not misleading where defendants were aware of adverse test results); *MedImmune*, 873 F. Supp. at 966 (holding that statements regarding efficacy of drug were neither false nor misleading where FDA raised questions about test results and efficacy of drug).

Moreover, whatever quarrels plaintiff may now purport to have with Connetics' disclosures concerning Phase III clinical trials, it fails to offer specific facts showing that they were intentionally designed to deceive investors about Velac.  Given all the factors that weighed in favor of Velac's approval (as described above), as well as the Company's expenditure of resources and its cautionary disclosures, plaintiff lacks facts giving rise to a strong inference of scienter, *i.e.*, one that "must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations."  *Tellabs*, 127 S. Ct. at 2510; s*ee also Vertex*, 357 F. Supp. 2d at 352 (no strong inference of scienter where defendants made positive announcements regarding clinical trials but did not disclose negative preclinical test; fact that other products on the market had negative preclinical test rebutted inference of scienter); *DeMarco*, 149 F. Supp. 2d at 1224-25 ("Plaintiffs improperly ignore numerous contemporaneous

---

[9]  AC ¶ 47 ("The data from each trial demonstrated a consistently robust and statistically superior testament effect for Velac . . . the data from these trial results also demonstrated that Velac was safe and well tolerated, with the most commonly observed adverse affects being application site reactions (e.g., burning, dryness, redness and peeling).").

facts that provided ample factual support for Defendants' optimistic statements [regarding safety and efficacy]"). [10]

Plaintiff also does not identify *any* specific facts to show that Connetics' April 26, 2005 disclosures concerning recent communications with the FDA's advisory committee (the ECAC) regarding the preclinical study were the product of fraud. Although plaintiff characterizes this as a "partial disclosure," the Ninth Circuit has recognized that "no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). To be actionable, the statement "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* That is hardly the case here.

Even though ECAC statements, by the FDA's own rules, are "***not [to] be interpreted by the sponsor as a measure of the approvability of their application***" (s*ee* Def. Mem. at 8) – a point plaintiff studiously avoids throughout its brief – Connetics nevertheless advised the market shortly after the ECAC raised this issue for the first time that: (1) the preclinical study for carcinogenicity resulted in a "positive response"; (2) Connetics and the FDA disagreed over the interpretation of the data; (3) the FDA had not raised this issue previously; (4) other products had been approved notwithstanding a positive response in the Tg.AC model; and (5) Connetics had been advised by experts that the response was the result of limitations in the Tg.AC model. *See* Def. Mem. at 22. This more than adequately advised the market of the "state of affairs," and analysts revised their estimates about Connetics accordingly, projecting delays of up to one year.

---

[10]  In its Opposition, plaintiff quotes portions of a January 25, 2005 conference call. Opp. at 4, 11-12 (citing AC ¶¶ 242-245). During that call, defendants Wiggans and Higgins discussed Connetics' efforts to prepare for the launch of Velac and their belief that Velac will compete well against other products when and if it was approved. When an analyst asked about "potential competitors to Velac," defendant Wiggans stated that "we're very confidant in the data set we got." Supp. Steskal Dec. Ex. 42 at 17-18; *see also id.* at 3 ("[O]ur planning case is that there will be a competitive product for Velac but we have excellent data on Velac"). However, far from demonstrating fraud, those statements show that defendants believed Velac could be brought to market. Moreover, it is undisputed that the Phase III clinical trials demonstrated the efficacy of Velac ("excellent data") and provided ample reason to be confident in Velac's ability to compete. In any event, the law is clear that such generalized assertions of corporate optimism (*e.g.*, "excellent results") are not actionable under the securities laws. *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005); *see also In re Boston Scientific Corp. Sec. Litig.*, 490 F. Supp. 2d 142, 162 (D. Mass. 2007) ("Every company praises its products and its objectives, and these statements are nothing more than corporate puffery.").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *See* Def. Mem. at 9.  In any event, the proposition that Connetics would make this disclosure, yet

2   deliberately tell a half-truth at the time, is unsupported by contemporaneous facts showing that

3   defendants did not believe the disclosures were reasonable and accurate.  *See Schuster v.*

4   *Symmetricom*, 2000 WL 33115909, *7 (N.D. Cal. Aug. 1, 2000); *Anderson*, 140 F. Supp. 2d at

5   907 (holding that where regulatory decision is not final, company is entitled to "express[] its

6   opinion about its own compliance").[11]

### D.    Plaintiff's Insider Trading Allegations Fail To Raise The Required Strong Inference of Scienter

9       Lacking any other particularized facts showing that Connetics intended to commit fraud,

10  plaintiff resorts to the familiar claim that defendants made "suspicious" stock sales.  Opp. at 28.

11  But Dr. Krochmal sold ***no*** shares during the class period, and the other defendants sold small

12  percentages of their holdings.  *See* Def. Mem. at 24.  Moreover, those sales were made under

13  10b5-1 plans (for example, Mr. Vontz's transaction in April 2005) and hence are not suspect at

14  all.  *See In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, *8 (N.D. Cal. Jun. 28, 2005) (no

15  scienter based on 10b5-1 plan sales); *In re IAC/InterActiveCorp. Sec. Litig.*, 478 F. Supp. 2d 574,

16  604 (S.D.N.Y. 2007) (same); Steskal Decl. Ex. 26 (Vontz Form 4 showing April 25, 2005

17  transaction was pursuant to a 10b5-1 plan).

18      Furthermore, the alleged two-and-a-half year class period is so long that it is "difficult to

19  see how particular stock sales would strengthen allegations that particular statements were uttered

20  with deliberate recklessness at the times they were made."  *In re Vantive Corp. Sec. Litig.*, 283

21  F.3d 1079, 1092 (9th Cir. 2002) (63-week class period).  Plaintiff offers no response.  Instead,

22  plaintiff asks the Court to rig the numbers in its favor by excluding "underwater options" from the

23  calculation of how many Connetics' shares each individual retained.  Opp. at 28.  The assertion

24  that underwater options "don't count" – much like plaintiff's argument that use of 10b5-1 trading

---

[11]  Plaintiffs assertion that Mr. Yaroshinsky's supposed knowledge (in the form of a pessimistic opinion) is attributable to Connetics is dead-wrong.  Opp. at 3 n.2.  Such imputed or collective scienter is contrary to Ninth Circuit law.  *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) ("defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter"); *see also In re Infineon Techs. AG Secs. Litig.*, 2006 WL 2925680, *3 (N.D. Cal. Sept. 11, 2006).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   plans raises an inference of scienter – contravenes common sense as well as Ninth Circuit law.

2   *Silicon Graphics,* 183 F.3d at 986-87 (court must consider all of a defendant's exercisable stock

3   options).

4       **E.    Plaintiff Fails To Show Loss Causation**

5       Although admitting that it did not own any shares when the FDA denied approval for

6   Velac, plaintiff nonetheless argues that it can plead loss causation based on the alleged April 26,

7   2005 "partial" disclosure.  It cannot.  To plead loss causation, plaintiff must allege that its loss

8   was caused by the "materialization of the concealed risk."  *Lentell v. Merrill Lynch & Co.*, 396

9   F.3d 161, 173 (2d Cir. 2005); *In re Verisign, Inc., Deriv. Litig.*, 2007 WL 2705221, *31 (N.D.

10  Cal. Sept. 14, 2007) (stock drop must result from revelation of the previously concealed

11  information).  Here, the "risk" that Velac might not be approved by the FDA was hardly

12  "concealed," since Connetics had disclosed that risk from the very beginning.  The fact that a

13  known risk ultimately came to fruition does not reveal a "misrepresentation" that caused a loss.

14  In any event, because there was nothing false about the April 26, 2005 disclosure, plaintiff cannot

15  allege loss causation based upon that disclosure.  *See* Def. Mem. at 26-27.

16  **IV.   PLAINTIFF'S OPPOSITION FAILS TO SUPPORT A FRAUD CLAIM
        PERTAINING TO CONNETICS' FINANCIAL STATEMENTS**

17

18      **A.    Plaintiff's Opposition Fails to Identify Specific Facts Showing That Connetics
                Deliberately Misstated Its Financial Results**

19      Plaintiff's Opposition does not discharge its burden of identifying specific facts

20  establishing that Connetics' restatement was the product of fraud.  As a matter of black-letter law,

21  the mere fact of a restatement does not give rise to an inference of scienter against any defendant.

22  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002); *In re Ramp*

23  *Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1060 (N.D. Cal. 2002).  Instead, to establish a

24  strong inference of scienter, plaintiff must make specific allegations of contemporaneous

25  conditions known to each defendant that strongly suggest that the defendant understood that

26  Connetics' accounting was incorrect at the time.  *Vantive*, 283 F.3d at 1091.

27      Rather than identifying such specific facts, plaintiff's Opposition suffers from the same

28  type of conclusory argument that plagues the Amended Complaint.  For example, despite

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-14-

claiming that there was a "massive" financial fraud at Connetics, plaintiff never once mentions the modest size of the restatement, or attempts to reconcile its overheated rhetoric with it.  Nor does plaintiff come forward with specific facts establishing that anyone at Connetics intentionally or with deliberate recklessness "understated" its reserves for chargebacks, rebates or returns.  *See* Def. Mem. at 28.

In fact, the Opposition barely references reserves at all.  It never states what Connetics' reserves were in any period, who set them, what contemporaneous evidence existed establishing that the reserves in each period were inadequate and deliberately set too low, or whether or when defendants had such information or how they received it.  Plaintiff has thereby failed to satisfy the most basic elements of pleading securities fraud under Ninth Circuit law.  *See Vantive*, 283 F.3d at 1090-91; *Kane v. Madge Networks N.V.*, 2000 WL 33208116, *5-6 (N.D. Cal. May 26, 2000), *aff'd sub nom.*, 32 Fed. Appx. 905 (9th Cir. 2002).

Although plaintiff laments that it is "hard" to locate such information (Opp. at 19), the Ninth Circuit has unequivocally held that the standard is meant to be hard because the filing of a fraud suit is a serious matter:  "The PSLRA requires a plaintiff to plead a complaint for securities fraud with an unprecedented degree of specificity and detail . . . .  This is not an easy standard to comply with – it was not intended to be – and plaintiff must be held to it."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Plaintiff was required to allege that "defendants knew specific facts at the time that rendered their accounting determinations fraudulent."  *Morgan v. AXT, Inc.,* 2005 WL 2347125, *14 (N.D. Cal. Sept. 23, 2005).  It has failed to do so.[12]

---

[12]  Rather than coming forward with facts showing that Connetics' restatement was the product of fraud, plaintiff, for the first time, quarrels with Connetics' explanation for the restatement, which was set forth in detail in its Form 10-K/A filed on July 25, 2006.  *See* AC ¶ 130.  While plaintiff asserts that the restatement is an "admission," it simultaneously maintains that the Court should ignore the Form 10-K/A to the extent it explains the circumstances leading to the restatement based on the assertion that plaintiff has alleged that this disclosure was "false and misleading."  Opp. at 10.  In fact, however, plaintiff has *not* alleged that the Form 10-K/A was false anywhere in its 110 page Amended Complaint because the Form 10-K/A was filed *after* the class period when plaintiff maintains that there was *no* fraud.  *See* AC ¶ 127 (the "truth" was revealed by July 10, 2006); AC ¶ 130 (describing the restatement and quoting portions of the Form 10-K/A without any allegation that it was incorrect).  Accordingly, the Court is not limited to plaintiff's highly selective reading of the document (which plaintiff otherwise partially quotes) when considering whether a strong inference of scienter emerges "in light of other explanations."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**B.    Plaintiff's "Channel Stuffing" Arguments Are Equally Deficient**

2   Nor can plaintiff rely on its woefully deficient "channel stuffing" allegations.  Even after

3   reading the Opposition, one has no idea how much revenue plaintiff contends that Connetics

4   recognized improperly, in what periods and on which products.  *See Vantive*, 283 F.3d at 1091

5   (complaint defective where "there is no sufficient allegation of the amounts by which revenues

6   were allegedly overstated").  Indeed, despite well-established law requiring that channel stuffing

7   be pleaded with particularity (*see* Def. Mem. at 30-31), plaintiff fails to identify any specific

8   instances where this occurred, the customer involved, the identity of the product, the "excess"

9   amount that was supposedly returned, the amount that was improperly booked, and the basis for

10  each defendants' knowledge of such facts.  *See Splash*, 160 F. Supp. 2d at 1076; *Hockey v.*

11  *Medhekar*, 30 F. Supp. 2d 1209, 1216 (N.D. Cal. 1998); *In re ICN Pharms., Inc. Sec. Litig.*, 299

12  F. Supp. 2d 1055, 1062 (C.D. Cal. 2004).

13  Instead, plaintiff relies on generalities from so-called confidential witnesses who provide

14  no specifics about transactions or accounting, but instead claim in one form or another (stripped

15  of rhetoric) that Connetics' management increased forecasts, were aggressive or sought to sell

16  product above historical prescription levels.[13]  As set forth in defendants' moving papers, such

17  general allegations have been repeatedly rejected as insufficient to plead channel stuffing.  *In re*

18  *Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, *6 (N.D. Cal. Aug. 29, 2003)

19  (allegations that defendants had "directed the sales and shipping departments to go ahead and ship

20  product in September that customers had indicated should not . . .  be shipped until the fourth

21

22  *Tellabs*, 127 S. Ct. at 2510 (holding that courts "must" consider documents incorporated into the
    complaint by reference); *Gompper*, 298 F.3d at 897 (court must consider all inferences, including

23  those unfavorable to plaintiff, at the pleading stage); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d
    753, 757 (7th Cir. 2007) ("*Tellabs* requires judges to weigh the strength of plaintiffs' favored

24  inference in comparison to other possible inferences").  In any event, plaintiff's argument is a red
    herring – this motion should be granted due to the absence of concrete allegations establishing

25  fraud, even if plaintiff is permitted to turn a blind-eye to those parts of the Form 10-K/A it now
    dislikes.

26  [13]  As noted in defendants' moving papers, the fact that Connetics' forecasts or shipments
    exceeded historical prescription rates is hardly surprising since Connetics' business was growing.

27  *See* Def. Mem. at 35.  To meet such growth, management must necessarily predict the sales
    growth rate for each Connetics product, rather than rely on historical rates reflecting *past* sales.

28  Accordingly, there is nothing fraudulent about management predicting future product sales that
    exceed historical prescription rates.  Plaintiff makes no effort to address this point.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

quarter" insufficient to state channel stuffing claim); *In re Ashworth, Inc. Sec. Litig.*, 2000 WL 33176041, *6 (S.D. Cal. July 18, 2000) (dismissing claim where complaint failed "to identify specific instances where [defendant] shipped product to a specified customer in a specified amount and booked the sale only to have the material returned at a later date"). Unable to respond, plaintiff ignores the issue.[14]

Likewise, to state a claim for channel stuffing, plaintiff had to allege that defendants "coerced its customers to accept more [product] than they wanted." *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 376 (S.D.N.Y. 2007); *see also Gaylinn v. 3Com Corp.*, 185 F. Supp. 2d 1054, 1057 n.3 (N.D. Cal. 2000) (channel stuffing occurs "when a company induces" its customers to purchase more product than they otherwise would); *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1310 (N.D. Ga. 2006). This is what distinguishes so-called "nefarious" channel stuffing from perfectly legitimate efforts to increase sales. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir. 1999); *Garfield v. NDC Health Corp*, 466 F.3d 1255, 1261-62 (11th Cir. 2006). Yet, rather than getting any sort of special deal, plaintiff *admits* that over-ordering would have been contrary to the interests of Connetics' customers because they would have lost five percent of the purchase price on any product they ultimately returned to Connetics. *See* AC ¶ 106 (Connetics would provide a credit on 95% of the price on the product

---

[14] Plaintiff's reliance on anonymous witnesses ultimately fails because plaintiff's allegations lack the *substantive* details needed to plead a channel stuffing or accounting fraud claim. *See* Def. Mem. at 33-35. Plaintiff does not address that flaw, but instead argues that it has pleaded enough specifics about the backgrounds of a couple of these witnesses to satisfy *pre-Tellabs* standards in the Ninth Circuit. Opp. at 17-18 (addressing only CW1 and CW3). This is simply wishful thinking: Plaintiff does not describe the job responsibilities of any of these witnesses, who are variously described with vague terms such as a "manager" or "territory manager" of unidentified aspects of Connetics' business for as little as "six months" (AC ¶¶ 116-117 (CW5, 8)), as "sales" personnel (*id.* ¶¶ 55, 116 (CW3-4, 6-7)), or involved in "marketing" or "toxicology" (*id.* ¶ 53 (CW1, 2)). Nothing in *In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005), endorses such inadequate allegations. Moreover, while the Ninth Circuit has not yet had the opportunity to address the issue, the Seventh Circuit carefully analyzed the use of anonymous sources in the wake of *Tellabs* and found "that anonymity conceals information that is essential to the sort of comparative evaluation [of possible inferences] required by *Tellabs*. To determine whether a 'strong' inference of scienter has been established, the judiciary must evaluate what the complaint reveals and disregard what it conceals." *Higginbotham*, 495 F.3d at 757. Accordingly, information described from such sources must be steeply discounted on a motion to dismiss. *Id.* While plaintiff pejoratively characterizes *Higginbotham* as "out-of-Circuit" authority (Opp. at 18), its reasoning is unassailable. Similarly, plaintiff's attempt to distinguish *Higginbotham* as not involving sources who were employees of the defendant company is simply untrue, as three of the five sources were former employees. *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   returned).  In other words, plaintiff's position ultimately rests on the notion that Connetics

2   somehow "knew" that its customers (three of the largest distributors in the country) were ordering

3   more than they needed without any incentive – indeed, a *disincentive* – to do so.  Such a theory is

4   nonsensical, and hardly gives rise to a cogent and compelling inference that defendants were

5   committing "fraud."  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)

6   (rejecting speculative channel stuffing claim made only in hindsight).[15]

7          Because plaintiff lacks concrete facts that could give rise to a strong inference of scienter,

8   the Opposition ultimately resorts to the predictable refrain that defendants "intentionally" shipped

9   excess product in an "effort to meet quarterly forecasts."  Opp. at 5.  Such a generic allegation of

10  motive is insufficient.  *Lipton*, 284 F.3d at 1038.  Moreover, whatever dubious merit such an

11  argument might have in other cases, plaintiff makes no effort to show how it fits the facts here.

12  Indeed, plaintiff cannot do so given that (1) in three quarters, Connetics exceeded guidance even

13  *after* the restatement (Q1 and Q2 of 2004, and Q3 of 2005); (2) in one quarter, Connetics did not

14  meet guidance even *before* the restatement (Q4 of 2005); and (3) in two other quarters (Q2 of

15  2004 and Q2 of 2005), the effect of the restatement was to *increase*, not decrease, Connetics' net

16  revenue (that is, Connetics' reported net revenue was *lower* than it should have been).  *See* Def.

17  Mem. at 29.  Put simply, there is no pattern of just making earnings that could support plaintiff's

18  theory, much less one that gives rise to a "cogent and compelling" inference of scienter.  *Tellabs*,

19  127 S. Ct. at 2510.  Although this point was made in defendants' moving papers, plaintiff does

20  not address it.[16]

---

[15]  Plaintiff's Opposition recognizes the importance of coercion to its channel stuffing claim by
asserting that Connetics employees "pressured" distributors to take more product (Opp. at 20).
But that is simply an empty conclusion – plaintiff never explains how this "pressure" was applied,
by whom, when, or whether and what caused the distributor to relent.  Such conclusory
allegations are insufficient.  *Silicon Graphics*, 183 F.3d at 974.

[16]  Nor is plaintiff correct in arguing that scienter can be established merely by asserting that
certifications made by Messrs. Wiggans and Higgins under the Sarbanes-Oxley Act were
incorrect.  *See Morgan*, 2005 WL 2347125, at *15 (certification fails to raise inference of
scienter); *In re Invision Tech., Inc. Sec. Litig.*, 2006 WL 538752, *7 n.3 (N.D. Cal. Jan. 24, 2006)
(same).  The case cited by plaintiff does not hold otherwise.  *See In re Lattice Semiconductor
Corp. Sec. Litig.*, 2006 WL 538756, *17-18 (D. Or. Jan. 3, 2006) (cited in Opp. at 25-26).
Rather, in that case, it was the *contradiction* between the CFO's certification of effective internal
controls and the company's admission that the very same CFO "overrode the internal controls to
make incorrect and misleading journal entries" which bolstered an inference of scienter.  *Id.* at 17.
No such allegations exist here.

-18-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**C.    Plaintiff's Loss Causation Argument Is Unavailing And Unsupported By Allegations In The Amended Complaint**

As plaintiff concedes, Connetics announced that it would be restating its historical financial statements by approximately $8–9 million after the market closed on May 3, 2006.  AC ¶ 121.  Because Connetics' stock price did not decrease, but instead increased, after that announcement, plaintiff cannot plead loss causation.  *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005);  *In re Impax Labs., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 723, *16-18 (N.D. Cal. Jan. 3, 2007); *see* Def. Mem. at 36-37 (citing additional authorities).  While plaintiff speculates in the Opposition that information may have somehow "leaked" into the market earlier (Opp. at 34), absolutely nothing is cited in the Amended Complaint for that proposition.  Likewise, plaintiff's assertion that this will someday be "an area for expert testimony" ignores that plaintiff must first plead the basic elements of loss causation.

Plaintiff's attempt to show loss causation with respect to Connetics' July 10, 2006 announcement is equally unavailing.  There was nothing new in that announcement concerning Connetics' historical financial statements for 2004 and 2005, which are the subjects of plaintiff's supposed claims.  *See* AC ¶ 127; Def. Mem. at 37.  Rather, that announcement indicated that Connetics was revising its forward-looking guidance because it had made the business decision to "ship below estimated prescription demand during the remainder of 2006" in order to reduce "average wholesale inventory levels to approximately two months on hand by the end of 2006." AC ¶ 127.  While Connetics' share price may have declined because its future results may have been less bright, plaintiff has not shown that anything announced on July 10, 2006 related to Connetics' 2004 and 2005 financial statements or any supposed improper revenue recognition associated with channel stuffing.  *See Dura*, 544 U.S. at 343 (it is not enough for disclosure to "touch upon" the subject in some way; rather, the disclosure must reveal the "relevant truth" to have "caused" the loss).

**V.    PLAINTIFF'S ARGUMENT UNDER SECTION 20A FAILS**

Nothing in plaintiff's Opposition remedies its failure to show that each defendant, while in possession of material nonpublic information, traded contemporaneously with plaintiff.  A claim

-19-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

that *one* defendant traded contemporaneously with plaintiff cannot substitute for a claim that *each*

*individual* defendant traded contemporaneously.  *In re Silicon Graphics Inc., Sec. Litig.*, 970 F.

Supp. 746, 761 (N. D. Cal. 1997), *aff'd,* 183 F.3d 970 (9th Cir. 1999).  Absent such detailed

allegations, plaintiff's Section 20A claim must be dismissed.  *In re AST Research Sec. Litig.*, 887

F. Supp. 231, 235 (C.D. Cal. 1995) ("Amorphous allegations that individuals sold stock on

unspecified inside information, and on unspecified dates . . . do not state a claim under Section

20A"); *see also Vantive*, 283 F.3d at 1093.

## VI.    PLAINTIFF'S CONTROL PERSON ARGUMENT UNDER SECTION 20(a) FAILS

Since plaintiff fails to allege a viable Section 10(b) claim, plaintiff's allegations of control

person liability against Mr. Wiggans, Mr. Vontz and Mr. Higgins must be dismissed.  *Paracor*

*Fin., Inc. v. General Elec. Cap. Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *Howard v. Everex*

*Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2003).

## VII.    CONCLUSION

For the foregoing reasons, defendants' motion should be granted.

Dated: October 4, 2007                    FENWICK & WEST  LLP


                                          By:        /s/ Christopher J. Steskal
                                                       Christopher J. Steskal

                                          Attorneys for Defendants Connetics Corp.,
                                          John L. Higgins, Lincoln Krochmal,
                                          C. Gregory Vontz, and Thomas G. Wiggans

25251/00402/LIT/1274016.3

**PROOF OF SERVICE**

The undersigned declares as follows:

I am a citizen of the United States and employed in San Francisco County, State of California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Fenwick & West LLP, San Francisco California, 555 California Street, 12th Floor San Francisco, California 94104. On the date set forth below, I served a copy of the following document(s):

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CONSOLIDATED CLASS ACTION COMPLAINT BY DEFENDANTS CONNETICS CORP., JOHN L. HIGGINS, LINCOLN KROCHMAL, C. GREGORY VONTZ, AND THOMAS G. WIGGANS**

on the interested parties in the subject action by placing a true copy thereof as indicated below, addressed as follows:

> Victor E. Zak
> 24 Oakmont Road
> Newton Center, MA 02459

**☒**  **BY OVERNIGHT COURIER:** by placing the document(s) listed above in a sealed envelope with a prepaid shipping label for express delivery and causing such envelope to be transmitted to an overnight delivery service for delivery by the next business day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Date: October 4, 2007

_____/s/ Margaret E. Vertin_____
Margaret E. Vertin

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO