SHIRLI FABBRI WEISS (Bar No. 079225)
shirli.weiss@dlapiper.com
GERARD A. TRIPPITELLI (Bar No. 235788)
jerry.trippitelli@dlapiper.com
ALYSSON RUSSELL SNOW (Bar No. 225185)
alysson.snow@dlapiper.com
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.3650
Fax:  619.699.2701

Attorneys for Defendant
ALEXANDER YAROSHINSKY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONNETICS CORPORATION SECURITIES LITIGATION | CASE NO.  3:07-cv-02940-SI |
| | CLASS ACTION |
| This Document Relates To: | **ALEXANDER YAROSHINSKY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ALL ACTIONS. | |
| | Date:          August 15, 2008 |
| | Courtroom:  10 |
| | Time:          9:00 a.m. |
| | Judge:         Honorable Susan Illston |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................2

II. ISSUES TO BE DECIDED ..........................................................................................5

III. PERTINENT ALLEGATIONS .....................................................................................5

    A. Dr. Yaroshinsky ...............................................................................................5

    B. April 13, 2005 FDA Conference Call .............................................................5

    C. April 26, 2005 Press Release and Earnings Call .............................................6

    D. FDA Sends Connetics a Non-Approvable Letter Regarding Velac Gel.................6

    E. Plaintiff Does Not Allege Facts Showing It Traded Contemporaneously with Dr. Yaroshinsky.................................................................................6

    F. Plaintiff Does Not Allege Facts Showing that It Traded Contemporaneously With Defendant Zak ........................................................7

IV. APPLICABLE PLEADING STANDARDS ....................................................................7

V. PLAINTIFF FAILS TO PLEAD CONTEMPORANEOUS TRADES................................9

    A. Plaintiff's April 18 and 19 Trades Were Not Contemporaneous With Dr. Yaroshinsky's April 21 or 27 Trades ................................................10

    B. Plaintiff's Failure to Plead Contemporaneous Sales Eviscerates Its Standing; General Allegations that the Other Class Members Might Have Traded Contemporaneously are Insufficient ......................................................11

    C. Defendant Zak's Sales Cannot Be Imputed to Dr. Yaroshinsky and, Even if They Could, Plaintiff did not Trade Contemporaneously with Zak ......................11

VI. THE SECTION 10(b) CLAIM MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER..............15

    A. The SAC Fails to Plead with Particularity that Dr. Yaroshinsky Received Material Non-Public Information .........................................................16

    B. Connetics' April 26, 2005 Disclosures .............................................................17

    C. Plaintiff's Reliance on a Confidential Witness and a Non-Existent Admission Fail to Establish Scienter ........................................................18

VII. THE SECTION 20A CLAIM MUST BE DISMISSED ON OTHER GROUNDS ..........19

    A. Plaintiff Has Failed to Sufficiently Plead an Underlying Section 10(b) Violation ......................................................................................................19

    B. The Relief Plaintiff Seeks is Not Available Under Section 20A............................19

    C. Plaintiff Fails to Sufficiently Plead Tipper/Tippee Liability .................................19

VIII. CONCLUSION...........................................................................................................21

## TABLE OF AUTHORITIES

**Page**

*Alaska Elec. Pension Fund v. Adecco S.A.,*
371 F. Supp. 2d 1203 (S.D. Cal. 2005) ................................................................8

*Backman v. Polaroid Corp.,*
540 F. Supp. 667 (D. Mass. 1982) ......................................................................13

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002) ...........................................................................9, 11

*Buban v. O'Brien, No. C 94-0331,*
1994 WL 324093 (N.D. Cal. June 22, 1994)...........................................12, 13, 14, 15

*Copland v. Grumet,*
88 F. Supp. 2d 326 (D.N.J. 1999) .......................................................................13

*Gompper v. VISX, Inc.,*
298 F.3d 893 (9th Cir. 2002) ..............................................................................8

*In re AST Research Sec. Litig.,*
887 F. Supp. 231 (C.D. Cal. 1995) ..................................................................12, 13

*In re Aldus Sec. Litig.,*
No. C92-885C, 1993 WL 121478 (W.D. Wash. March 1, 1993)........................11, 13, 19

*In re Am. Bus. Computers Corp. Sec. Litig.,*
1994 WL 848690 (S.D.N.Y. February 24, 1994) .....................................................13

*In re BellSouth Corp. Sec. Litig.,*
355 F. Supp. 2d 1350 (N.D. Ga. 2005) .................................................................16

*In re Connetics Corp. Sec. Litig.,*
---F.3d---, 2008 WL 269467 (N.D. Cal. Jan. 29, 2008)............................................16

*In re Daou Systems, Inc.,*
411 F.3d 1006 (9th Cir. 2005) ............................................................................18

*In re Fed. Nat'l Mortgage Ass'n Sec. Deriv. and "ERISA" Litig.,*
Nos. 04-1639 (RJL), 06-0082, 06-0139, 2007 WL 2248037
(D.D.C. July 31, 2007)......................................................................................13

*In re Genentech, Inc. Sec. Litig.,*
No. C-88-4038, 1989 WL 201577 (N.D. Cal. Dec. 11, 1989)..................................9, 11

*In re MicroStrategy, Inc. Securities Litigation,*
115 F. Supp. 2d 620 (E.D. Va. 2000) ...............................................10, 11, 13, 14

*In re Silicon Graphics Inc. Sec. Litig.,*
183 F.3d 970 (9th Cir. 1999) ...........................................................................8, 15

*In re Splash Tech. Holdings, Inc. Sec. Litig.,*
160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................15

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Stratus Computer, Inc. Sec. Litig.,*
　　No. 89-2075-Z, 1992 WL 73555 (D. Mass. March 27, 1992)............................13

*In re Verifone Sec. Litig.,*
　　784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993)....................10, 11

*Johnson v. Aljian,*
　　490 F.3d 778 (9th Cir. 2007) ...............................................................8, 19

*Middlesex Retirement System v. Quest Software, Inc.,*
　　527 F.Supp.2d 1164 (C.D. Cal. 2007) .........................................................13

*Neubronner v. Milken,*
　　6 F.3d 666 (9th Cir. 1993) ...........................................9, 10, 11, 12, 13

*O'Shea v. Littleton,*
　　414 U.S. 488, 94 S. Ct. 669 (1974) ...............................................9, 11

*Shurkin v. Golden State Vintners Inc.,*
　　471 F. Supp. 2d 998 (N.D. Cal. 2006) ..........................................................20

*Shurkin v. Golden State Vintners, Inc.,*
　　No. C 04-3434, 2005 WL 1926620 (N.D. Cal. Aug. 10, 2005) ...........................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
　　127 S. Ct. 2499 (2007).................................................................8, 17

*United States Sec. Exch. Comm'n v. Maxwell,*
　　341 F. Supp. 2d 941 (S.D. Ohio 2004) .........................................................20

*Wilson v. Comtech Telecommunications Corp.,*
　　648 F.2d 88 (2d Cir.1988) .....................................................................13

### STATUTES

15 U.S.C. § 78t-1(a)..........................................................................9

15 U.S.C. § 78t-1(b)(2)......................................................................13

15 U.S.C. § 78t-1(b)(1)......................................................................19

15 U.S.C. §§ 78u-4 ...........................................................................1

15 U.S.C. §§ 78u-4(b)(1), (2)................................................................7

15 U.S.C. § 78u-4(b)(2)...................................................................7, 15

15 U.S.C. § 78u-4(b)(3)(A) ..................................................................8

15 U.S.C. § 78t(a))...........................................................................2

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3    15 U.S.C. §§ 78j(b), *et seq.* ...................................................................................................2

4    H.R. Rep. Nos. 141-13692, 141-13702 (1994).....................................................................7

5

## RULES

6    Federal Rules of Civil Procedure 9 ......................................................................................1

7    Federal Rules of Civil Procedure 11(b) .............................................................................16

8    Federal Rules of Civil Procedure 12(b)(6) ..........................................................................1

9    Federal Rule of Civil Procedure Rule 9(b)    ....................................................................7, 9

10   Securities Exchange Act Rule 10b-5    ..................................................................................2

11   Federal Rule of Civil Procedure Rule 12(b)(6)   ...............................................................8, 19

12   Securities Exchange Act section 20A    ........................................................................passim

13
GT\6568341.2

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION; RELIEF REQUESTED

PLEASE TAKE NOTICE that on August 15, 2008, at 9:00 a.m., or at such later date and time as the Court may order, in Courtroom 10 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Alexander Yaroshinsky ("Dr. Yaroshinsky") will and hereby does move to dismiss Lead Plaintiff's Second Amended Consolidated Class Action Complaint ("SAC").

Dr. Yaroshinsky seeks an order dismissing the SAC with prejudice under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "Reform Act") and Federal Rules of Civil Procedure 9 and 12(b)(6) (respectively, "Rule 9" and "Rule 12(b)(6)"). This motion is based on this Notice; the Memorandum of Points and Authorities, *infra*; the accompanying Declaration of Gerard A. Trippitelli In Support of Alexander Yaroshinsky's Motions to Dismiss and Strike Plaintiff's Second Amended Consolidated Class Action Complaint (the "Trippitelli Decl."); the Request for Judicial Notice in Support of Alexander Yaroshinsky's Motions to Dismiss and Strike Plaintiff's Second Amended Consolidated Class Action Complaint; the Proposed Order; the Court's files for this action; and any oral argument of counsel at the hearing.

## JOINDER IN CONNETICS CORPORATION'S MOTION TO DISMISS

Defendant Connetics Corporation ("Connetics") is also moving to dismiss the SAC. Its motion demonstrates that the SAC should be dismissed because Plaintiff fails to plead the requisite elements of a securities fraud claim against any defendant, specifically, Plaintiff lacks standing and fails to properly allege particular facts showing misrepresentation or scienter. To avoid unnecessary duplication of argument, Dr. Yaroshinsky formally joins in Connetics' motion to dismiss and Dr. Yaroshinsky's motion hereby incorporates Connetics' motion and the contentions made therein. Dr. Yaroshinsky's motion focuses upon only those allegations of the SAC specifically pertaining to Dr. Yaroshinsky.

/////

/////

/////

DLA PIPER US LLP

- 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff alleges that Connetics, a specialty pharmaceutical company, misled investors by making false and misleading public statements about the status of the Food and Drug Administration's ("FDA") review of a drug that Connetics was developing for the treatment of acne, known as Velac Gel, that was subject to FDA approval prior to marketing. Plaintiff further alleges that Connetics misled investors by engaging in and failing to disclose so-called "channel stuffing." However, Plaintiff does not allege that Dr. Yaroshinsky, Connetics' former Vice President of Biostatics and Clinical Operations, made any of the challenged statements. Indeed, only about 10% of the SAC (approximately 44 paragraphs out of 392) has anything to do with Dr. Yaroshinsky.

Rather, as against Dr. Yaroshinsky, the SAC focuses solely on allegations that Dr. Yaroshinsky engaged in insider trading purportedly at the same time that Plaintiff traded. Plaintiff contends that Dr. Yaroshinsky sold Connetics stock after attending an April 13, 2005 conference call with the FDA, and that he "tipped" Defendant Zak who also allegedly traded in Connetics' stock. These allegations form the basis of Plaintiff's claims that Dr. Yaroshinsky is liable under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), *et seq.*) and Rule 10b-5 (17 C.F.R. § 240.10b-5); and under Section 20A of the Exchange Act (15 U.S.C. § 78t(a)).

The SAC should be dismissed as against Dr. Yaroshinsky for three reasons. <u>First</u>, the Plaintiff lacks standing with respect to both of its claims. In order to have standing for its Section 10(b)/Rule 10b-5 claim and its Section 20A claim based on insider trading, Plaintiff must plead that it traded *contemporaneously* with the alleged insider – i.e., Dr. Yaroshinsky. To do so, Plaintiff, at a minimum, must plead the specific dates on which *it* traded and Dr. Yaroshinsky traded. Plaintiff must so plead, even if it is representing a putative class whose members might have traded contemporaneously with Dr. Yaroshinsky—general allegations that *other* class members traded contemporaneously with the insider are not sufficient to establish standing. Here, Plaintiff alleges that it traded on only two days (April 18 and 19, 2005). These trades were

1    *before* the only two dates specifically identified on which Dr. Yaroshinsky allegedly traded

2    (April 21 and 27, 2005). It is well-settled, and logical, that a plaintiff's trade cannot be

3    considered to be contemporaneous with an insider's trade for Exchange Act purposes when the

4    plaintiff's trade occurs *prior to* the insider's trade. Thus, Plaintiff does not have standing to assert

5    its claims against Dr. Yaroshinsky on the basis of any of Dr. Yaroshinsky's trades.

6        Plaintiff faces the same standing problem to the extent it attempts to impute Defendant

7    Zak's trades to Dr. Yaroshinsky under a theory of tipper/tippee liability. Even if the tipper/tippee

8    theory was sufficiently pled, which it is not, Plaintiff still lacks standing because Plaintiff and Zak

9    did not contemporaneously trade in Connetics' stock. Under the case law in this Circuit, some of

10   which requires that a plaintiff and defendant's trades occur on the *same day* to be considered to be

11   "contemporaneous," Zak's trades, allegedly made five days before Plaintiff's trades, were not

12   contemporaneous. This is especially the case given that a large volume of Connetics' stock was

13   traded on the relevant dates on the NASDAQ stock market and there was a significant difference

14   in the price of Connetics' stock on the days Plaintiff and Zak traded. Plaintiff, therefore, does not

15   have standing to assert its claims against Zak or against Dr. Yaroshinsky on the basis of Zak's

16   alleged trades.

17       Since Plaintiff does not have standing to state claims against Dr. Yaroshinsky under any

18   theory of trading, the SAC should be dismissed as against Dr. Yaroshinsky without further

19   analysis.

20       Second, the Section 10(b) claim must be dismissed for another reason: Plaintiff fails to

21   plead sufficient facts to give rise to a strong inference that Dr. Yaroshinsky acted with scienter

22   with respect to any alleged trade. Plaintiff fails to sufficiently plead that Dr. Yaroshinsky ever

23   received material non-public information or that he knew he had material non-public information

24   when he traded. Indeed, in this regard, Plaintiff merely relies on allegations lifted directly from a

25   complaint filed by the SEC against Dr. Yaroshinsky, which this Court already has ruled is not

26   sufficient. Moreover, although Plaintiff has attempted to bolster its scienter allegations with

27   allegations related to Confidential Witnesses, such allegations relative to Dr. Yaroshinsky fail to

28   even approach sufficiently pleading scienter. Plaintiff merely alleges that a Confidential Witness

"was friends with Defendant Yaroshinsky," but fails to plead any specific facts, as required, with respect to such Confidential Witness's knowledge of Dr. Yaroshinsky's trading of Connetics stock or facts supporting a strong inference of deliberate recklessness or intentional misconduct on the part of Yaroshinsky. Finally, Plaintiff's last ditch attempt to salvage its scienter pleadings, alleging that Dr. Yaroshinsky admitted to insider trading in his Answer to a complaint filed by the Securities and Exchange Commission, is unavailing. Dr. Yaroshinsky made no such admission, and a review of Dr. Yaroshinsky's Answer establishes as much. Thus, the SAC should be dismissed for Plaintiff's failure to sufficiently plead scienter under the high standards of the Reform Act.

 Third, the Section 20A claim must be dismissed for reasons independent of standing. A Section 20A claim requires an independent, underlying violation of the Exchange Act. The only Exchange Act violation Plaintiff asserts against Dr. Yaroshinsky is the Section 10(b) claim for insider trading, which Plaintiff fails to sufficiently plead. In addition, Plaintiff fails to sufficiently plead its supposed claim for tipper/tippee liability under Section 20A. Plaintiff does not assert this tipper/tippee theory of liability under its claim for violation of Section 10(b); thus it cannot be a basis for liability under Section 20A. Nor does Plaintiff meet the heightened pleading standards of the Reform Act. Rather, Plaintiff merely regurgitates the elements of a tipper/tippee claims in the most conclusory manner. Finally, Plaintiff seeks relief which is not permitted under Section 20A: he seeks compensatory damages and/or rescission, interest, and attorneys' fees and costs. As the only remedy available under Section 20A is an amount equal to the profit gained or the loss avoided, Plaintiff's claim for compensatory damages or for rescission and attorneys fees should be dismissed.

 For these reasons, Dr. Yaroshinsky respectfully requests that the Court grant this motion to dismiss with prejudice. The first complaint related to this action was filed over *17* months ago, and Plaintiff has already amended its complaint three times. No amount of re-pleading can cure the fatal defects in Plaintiff's complaint: that Plaintiff did not engage in contemporaneous trades with Dr. Yaroshinsky under any theory, Dr. Yaroshinsky did not act with the requisite scienter, and Dr. Yaroshinsky is not liable under a tipper/tippee theory of insider trading.

## II.    ISSUES TO BE DECIDED

1.    Whether Plaintiff's Section 10(b) claim should be dismissed because:

(a)    Plaintiff fails to plead particularized facts that it traded Connetics' stock contemporaneously with Dr. Yaroshinsky; and

(b)    Plaintiff fails to plead particularized facts supporting a strong inference of Dr. Yaroshinsky's scienter.

2.    Whether Plaintiff's Section 20A claim should be dismissed because:

(a)    Plaintiff fails to plead particularized facts that it traded Connetics' stock contemporaneously with Dr. Yaroshinsky;

(b)    Plaintiff does not plead an underlying violation of Section 10(b);

(c)    Plaintiff fails to plead particularized facts supporting a claim for tipper/tippee liability against Dr. Yaroshinsky.

(d) Plaintiff seeks relief not available under Section 20A;

## III.    PERTINENT ALLEGATIONS

For background purposes, Dr. Yaroshinsky incorporates by reference the "Statement of Facts" section of the Memorandum of Points and Authorities In Support of Connetics' Motion to Dismiss. This section of the present memorandum summarizes the pertinent allegations relating to Dr. Yaroshinsky.

### A.    Dr. Yaroshinsky.

Dr. Yaroshinsky is a scientist. He served as Vice President of Biostatics and Clinical Operations for Connetics. (SAC ¶ 40.) The SAC does not allege that Dr. Yaroshinsky made any statements to investors or that his responsibilities included the preparation of Connetics' public statements. The SAC does not allege that Dr. Yaroshinsky had any role in the sales of Connetics' products or the preparation of its financial statements.

### B.    April 13, 2005 FDA Conference Call.

Plaintiff alleges that on April 13, 2005, Connetics held a conference call with members of the FDA's Executive Carcinogenicity Assessment Committee ("ECAC") to discuss its comments and conclusions on the New Drug Application ("NDA") for Velac Gel. (SAC ¶ 107.)

1    Dr. Yaroshinsky allegedly participated in this call, along with members of Connectics' senior

2    management. *Id.* The ECAC allegedly indicated on the call that the "positive dermal"

3    experienced in the preclinical transgenic mouse study was a serious impediment for the approval

4    of Velac Gel for market and sale in the United States. (*Id.* ¶ 108.) The ECAC allegedly stated

5    that: (i) "[Velac] may be a tumor promoter or a carcinogen"; and (ii) "this is a serious issue for a

6    topical product for the treatment of acne." (*Id.* (*citing* SEC Compl. ¶ 20).) The SAC does *not*

7    allege that either the ECAC, or the FDA, stated that the FDA would not approve Velac Gel or

8    even that the FDA had reached any decision on the approval or approvability of the drug.

9    **C.    April 26, 2005 Press Release and Earnings Call.**

10    On April 26, 2005, Connectics issued a press release and conducted a conference call, in

11    which it disclosed the April 13 FDA Conference Call and findings of a toxicology panel

12    convened on June 28, 2004.[1] (SAC ¶¶ 116-118.) Plaintiff characterizes the disclosures as only

13    "partial" disclosures. (*Id.* ¶¶ 74,119.)

14    **D.    FDA Sends Connetics a Non-Approvable Letter Regarding Velac Gel.**

15    After the close of the market on Friday, June 10, 2005, Connetics received a non-

16    approvable letter regarding Velac Gel from the FDA. (SAC ¶ 128.) The SAC does not allege

17    that prior to this letter, the FDA informed either Connectics or Dr. Yaroshinsky that it would not

18    approve Velac Gel or that Velac Gel was not approvable. On Monday, June 13, 2005, before the

19    market opened, Connetics issued a press release and SEC Form 8-K disclosing the FDA letter.

20    (*Id.* at ¶ 129.)

21    **E.    Plaintiff Does Not Allege Facts Showing It Traded Contemporaneously with**
**Dr. Yaroshinsky.**

22

23    During the time period relevant to this motion, Plaintiff purchased Connetics stock on

24    only two occasions:  April 18 and 19, 2005. (SAC ¶ 391.)  These purchases were made *before* the

25    only two dates on which Plaintiff *specifically* alleges that Dr. Yaroshinsky sold Connectics stock:

26    April 21, 2005 and April 27, 2005. (*Id.* ¶¶ 136-137.)  Plaintiff also alleges that Dr. Yaroshinsky

27    _____

28    [1] Dr. Yaroshinsky specifically incorporates the statements made in Connetics' brief relating to
the April 26 disclosures.

1  traded Connetics' stock "sometime between May 2005 and June 10, 2005," and that Dr.

2  Yaroshinsky realized over $650,000 in profits from selling Connetics stock during the purported

3  Class Period of January 27, 2004 to July 9, 2006. (*Id.* ¶¶ 139, 141.)

4      **F.    Plaintiff Does Not Allege Facts Showing that It Traded Contemporaneously With Defendant Zak.**

5

6      Plaintiff alleges that on April 13, 2005 – five days before Plaintiff's first purchase and six

7  days before Plaintiff's second purchase – Zak sold short 7,000 shares of Connetics stock and sold

8  3,000 shares of Connetics stock. (SAC ¶ 134.) Without specifying any dates, Plaintiff also

9  alleges that "[b]etween April 14, 2005 and June 10, 2005, Zak sold short an additional 68,000

10  shares of Connetics common stock and purchased 430 'put contracts' in Connetics common

11  stock." *Id.*

12  **IV.    APPLICABLE PLEADING STANDARDS**

13      Plaintiff alleges securities fraud, based on purported insider trading in violation of the

14  Exchange Act. The strict pleading requirements of the Reform Act apply to these claims.

15  15 U.S.C. §§ 78u-4(b)(1), (2) (standards for pleading falsity and scienter apply to all private

16  actions arising under Exchange Act). Although prior to enactment of the Reform Act, Federal

17  Rule of Civil Procedure 9(b) required that many aspects of securities fraud claims be pleaded with

18  specificity, Congress found that Rule 9(b) had "not prevented abuse of the securities laws by

19  private litigants." H.R. REP. NOS. 141-13692, 141-13702 (1994) (Conf. Reps.) (report of

20  Conference Committee responsible for Reform Act as enacted). To end this abuse, Congress

21  passed the Reform Act. In this context of alleged insider trading, the heightened pleading

22  standard under the Reform Act requires that a plaintiff plead the specific dates on which the

23  plaintiff and the insider traded and, if not the same dates, specific facts as to why the trades

24  should be deemed "contemporaneous." (*See* Section V, *infra*.)

25      The Reform Act's heightened pleading standards also mandate that the plaintiff's

26  complaint, "with respect to each act or omission alleged to violate this chapter, state with

27  particularity facts giving rise to a *strong* inference that the defendant acted with the required state

28  of mind," meaning scienter. 15 U.S.C. § 78u-4(b)(2). To plead scienter, Plaintiff must allege "in

1  great detail, facts that constitute strong circumstantial evidence of deliberately reckless or

2  conscious misconduct" and a "mental state embracing intent to deceive, manipulate, or defraud."

3  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974-75 (9th Cir. 1999). These particularized

4  facts giving rise to a strong inference of scienter must be pleaded on an individualized, defendant-

5  by-defendant basis; scienter allegations cannot be attributed from one individual to another.

6  *Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1220-21 (S.D. Cal. 2005).

7      As recently interpreted by the Supreme Court, an *inference* is not "strong" for purposes of

8  satisfying the Reform Act unless it is "powerful," "cogent" and "compelling"—it is not enough

9  that the inference be "reasonable" or "permissible." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

10  127 S. Ct. 2499, 2510 (2007). If a complaint fails to plead a strong inference of scienter,

11  dismissal is mandatory. 15 U.S.C. § 78u-4(b)(3)(A). Notably, the standard of review of a motion

12  to dismiss under the Reform Act departs from the standard of review under Rule 12(b)(6) as it

13  relates to *inferences*. In the non-securities litigation context, courts construe inferences in a light

14  most favorable to the plaintiff. Under the Reform Act, this does not hold true. Rather, "[t]he

15  strength of an inference cannot be decided in a vacuum," and the court must draw ***all*** inferences

16  from the allegations of the complaint—including the fact that a complaint does *not* include

17  allegations one would expect to see if a defendant acted with scienter—and from matters of

18  judicial notice, including inferences that are unfavorable to the plaintiff. *Tellabs*, 127 S. Ct. at

19  2510; *accord Gompper v. VISX, Inc.*, 298 F.3d 893, 896-97 (9th Cir. 2002) ("the court must

20  consider *all* reasonable inferences to be drawn from the allegations, including inferences

21  unfavorable to the plaintiffs.") (emphasis in original).

22      The SAC fails to meet these elevated pleading requirements for its Section 10(b) claim

23  against Dr. Yaroshinsky, and hence must be dismissed. Likewise, as Section 20A is a derivative

24  claim, the purported insider trading claim under that statute must also be dismissed. *Johnson v.

25  Aljian*, 490 F.3d 778, 781 (9th Cir. 2007) ("Claims under Section 20A are derivative and

26  therefore require an independent violation of the Exchange Act."); *Shurkin v. Golden State

27  Vintners, Inc.*, No. C 04-3434, 2005 WL 1926620, at *15 (N.D. Cal. Aug. 10, 2005) (dismissing

28  Section 20A claim for failure to plead Section 10(b) claim).

1    **V.    PLAINTIFF FAILS TO PLEAD CONTEMPORANEOUS TRADES**

2    　　It is well-settled that in order to state an insider trading claim under Section 10(b), a

3    plaintiff must plead ***with particularity*** that the plaintiff traded contemporaneously with the

4    insider. *Neubronner v. Milken*, 6 F.3d 666, 669-70 (9th Cir. 1993); *Brody v. Transitional Hosps.*

5    *Corp.*, 280 F.3d 997, 1001 (9th Cir. 2002). The same is true with respect to Section 20A claims.

6    Section 20A provides:

7    　　　　Any person who violates any provision of this chapter or the rules
　　　　or regulations thereunder by purchasing or selling a security while

8    　　　　in possession of material, nonpublic information shall be liable in
　　　　an action in any court of competent jurisdiction to any person who,

9    　　　　*contemporaneously with the purchase or sale of securities that is*

10   　　　　*the subject of such violation,* has purchased (where such violation
　　　　is based on a sale of securities) or sold (where such violation is

11   　　　　based on a purchase of securities) securities of the same class.

12   15 U.S.C. § 78t-1(a) (emphasis added). In addition to satisfying the particularity requirements of

13   Rule 9(b) and the Reform Act, contemporaneous trades are necessary for a plaintiff to have

14   standing to bring the insider trading claims. *See Brody*, 280 F.3d at 1001. Failure to plead

15   contemporaneous trades, therefore, requires dismissal. *See id.*; *Neubronner*, 6 F.3d at 669-70.

16   　　In order to plead contemporaneous trades (and hence to plead both the particularity and

17   standing requirements), the plaintiff must, at minimum, plead the specific dates on which it

18   traded.  General assertions that other class members may have traded contemporaneously are

19   insufficient. *See Brody*, 280 F.3d at 1001; *see also O'Shea v. Littleton*, 414 U.S. 488, 493-94, 94

20   S. Ct. 669, 675 (1974). The plaintiff also must plead the specific dates on which the insider

21   traded. General allegations that the insider traded during a certain time period are insufficient.

22   *See In re Genentech, Inc. Sec. Litig.*, No. C-88-4038, 1989 WL 201577, at *6 (N.D. Cal. Dec. 11,

23   1989). These requirements make sense, for a court must have this information in order to

24   determine whether the plaintiff contemporaneously traded with the insider.

25   　　As demonstrated below, the SAC fails to meet these pleading standards. Hence,

26   Dr. Yaroshinsky's motion to dismiss may and should be granted in its entirety on this basis alone.

27   /////

28   /////

**A.    Plaintiff's April 18 and 19 Trades Were Not Contemporaneous With Dr. Yaroshinsky's April 21 or 27 Trades.**

In defining "contemporaneous" trading, courts have held that where a plaintiff trades prior to an insider's trades, the contemporaneous trading requirement is not met. The rationale behind providing an insider trading private right of action is to allow those who have actually been injured by an insider's trading on the basis of non-public information to recover from him. *See Neubronner*, 6 F.3d at 669-70. If a plaintiff trades prior to the alleged insider trading, it is impossible for it to have purchased the shares sold by the insider at a time when the insider, but not the purchasers, possessed material non-public information. Hence, courts have held there is no recovery for an insider's trades made ***after*** the plaintiff's purchases. *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992) ("No liability can attach for trades made by plaintiffs before the insider engages in trading activity"), *aff'd*, 11 F.3d 865 (9th Cir. 1993).

For example, in *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620 (E.D. Va. 2000), the plaintiff alleged that she traded on October 25, 1999, and that four of the alleged insider defendants traded *after* her trade. *Id.* at 664 n. 91. The court noted that no liability can attach if the plaintiff's trades are before the insider's trades. *Id.* (*citing Verifone*, 784 F. Supp. at 1489). As the court explained, if the plaintiff trades before the defendant, the plaintiff is not disadvantaged. The court thus held that plaintiff failed to state an insider trading claim against the defendants who traded after her. *Id.* at 664.

The same logic applies here. Plaintiff alleges that it traded on only two days: April 18 and April 19, 2005. Plaintiff identifies only two specific dates on which Dr. Yaroshinsky traded: April 21 and April 27, 2005. These trades were after Plaintiff's trades, and hence were not contemporaneous as a matter of law. Plaintiff's only other allegation with respect to Dr. Yaroshinsky's transactions is that he purchased 2,020 puts at unspecified times between May 12 and June 10, 2005. Plaintiff does not allege that it traded on any of those dates and therefore

/////

/////

/////

1   these allegations are is insufficient to plead contemporaneous trading.[2] *See Genentech*, 1989 WL

2   201577, at *6.

3       **B.      Plaintiff's Failure to Plead Contemporaneous Sales Eviscerates Its Standing;**
        **General Allegations that the Other Class Members Might Have Traded Contemporaneously**

4       **are Insufficient.**

5       In an attempt to avoid dismissal, Plaintiff also generally alleges that other parties—

6   putative class members—traded during the entire time period.  These allegations are irrelevant.

7   To have standing, the plaintiff must meet the contemporaneous requirement (*Brody*, 280 F. 3d at

8   1001), which means that the *plaintiff* itself must have traded contemporaneously with the insider.

9   *See Neubronner*, 6 F.3d at 669-70.  A plaintiff *cannot* rely on assertions that others in the class

10  may have been harmed when they allegedly traded contemporaneously.  *See Brody*, 280 F. 3d at

11  1001; *O'Shea*, 414 U.S. at 493-94.  If a plaintiff lacks standing to bring a claim against the insider

12  personally, and it is the sole claimant and class representative on the insider trading counts, the

13  claims must be dismissed.  *See In re Verifone Sec. Litig.*, 784 F. Supp. at 1489 ("Where a plaintiff

14  lacks standing to bring a claim personally, that plaintiff cannot represent the class.");  *In re*

15  *MicroStrategy, Inc. Sec. Litig.* 115 F. Supp. 2d at 664; *In re Aldus Sec. Litig.*, No. C92-885C,

16  1993 WL 121478, at *7 (W.D. Wash. March 1, 1993); *Genentech,* 1989 WL 201577 at *6

17  (dismissing insider trading claim where plaintiff lacked standing for failure to meet

18  contemporaneous trading requirement).

19      As demonstrated above, Plaintiff did not trade contemporaneously with Dr. Yaroshinsky

20  and, therefore, lacks standing to bring a claim against Dr. Yaroshinsky.  Because Plaintiff is the

21  sole claimant and class representative on the Section 10(b) and Section 20A counts, this motion to

22  dismiss must be denied in its entirety for lack of standing.

23      **C.      Defendant Zak's Sales Cannot Be Imputed to Dr. Yaroshinsky and, Even if**
        **They Could, Plaintiff did not Trade Contemporaneously with Zak.**

24

25      In its Opposition to Dr. Yaroshinsky Motion to Dismiss the First Amended Complaint,

26  Plaintiff attempted to mask its lack of contemporaneous trades with Dr. Yaroshinsky by imputing

27

28  [2]  These allegations also must fail because Plaintiff does not allege that it sold these (or any other)
    puts to Dr. Yaroshinsky.

1    Defendant Zak's alleged trades on April 13, 2005 to Dr. Yaroshinsky. (Lead Plaintiff's

2    Opposition to Defendants Yaroshinsky's and Zak's Motions to Dismiss Plaintiff's Amended

3    Consolidated Class Action Complaint at 3:19-5:3.) Plaintiff did so under a theory of tipper/tippee

4    liability. (*Id.*) In his Reply Brief in support of his Motion to Dismiss Plaintiff's earlier, first

5    Amended Complaint, Dr. Yaroshinsky established that Plaintiff had not pled a tipper/tippee

6    claim, rather that it had asserted the theory for the first time in its Opposition to that motion.

7    (Alexander Yaroshinsky's Reply in Support of His Motion to Dismiss Plaintiff's Amended

8    Consolidated Class Action Complaint at 4:19-20.)[3]

9        In the SAC, Plaintiff apparently has tried, but failed, to cure this defect by including what

10   appears to be a claim of tipper/tippee liability in its claim for violation of Section 20A. (SAC

11   ¶ 389). Plaintiff attempts to meet its high burden to plead particular facts with a single,

12   conclusory sentence at the end of the SAC which merely regurgitates some of the elements of a

13   claim for tipper/tippee liability. (SAC ¶ 389.) This conclusory allegation fails to adequately

14   plead a claim for tipper/tippee liability against Dr. Yaroshinsky as a matter of law (*see supra*

15   Section VII.C.) and precludes any attempt Plaintiff might make to assert standing as to Dr.

16   Yaroshinsky based on Zak's sales.

17       Even if Plaintiff had sufficiently pled tipper/tippee liability (which it has not, *see id.*), and

18   for argument's sake Zak's sales could be imputed to Dr. Yaroshinsky, Plaintiff did not trade

19   contemporaneously with Zak, as would be necessary for Plaintiff to establish standing under this

20   theory. Zak's alleged sales were five and six days before Plaintiff's purchases. The Ninth Circuit

21   has held that the contemporaneous trade element of Plaintiff's Sections 10(b) and 20A claims

22   must be strictly construed. *Neubronner*, 6 F.3d at 699-700. Based on the Ninth Circuit's

23   mandate and the reasoning set forth in a decision of a court in this District, *Buban v. O'Brien*, the

24   Central District held that trades are contemporaneous only if they occur on the same day. *In re*

25   *AST Research Sec. Litig.*, 887 F. Supp. 231, 233 (C.D. Cal. 1995) (citing *Buban v. O'Brien*, No.

26   
_____

27   [3] The Court did not rule on this aspect of Dr. Yaroshinsky's motion because it granted Dr.
     Yaroshinsky's motion to strike the allegations in the first amended complaint, thus mooting this
28   issue. *In re Connetics Corp. Sec. Litig.*, ---F.3d---, 2008 WL 269467 * 5-7 (N.D. Cal. Jan. 29,
     2008).

1     C 94-0331, 1994 WL 324093 (N.D. Cal. June 22, 1994) ("The Court concludes that a same-day

2     definition of "contemporaneous" is proper – i.e., the sale by an insider and subsequent purchase

3     by an aggrieved party must occur on the same day.  The same day standard is the only reasonable

4     standard given the way the stock market functions.").  Numerous other courts also have so held.

5     *See, e.g., In re Fed. Nat'l Mortgage Ass'n Sec. Deriv. and "ERISA" Litig.*, Nos. 04-1639 (RJL),

6     06-0082, 06-0139, 2007 WL 2248037, at **16-17 (D.D.C. July 31, 2007) (same day trading

7     required); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664 (E.D. Va. 2000)

8     (dismissing insider trading claim against plaintiff and one of defendants with whom it did not

9     trade on the same day, but rather three days after); *Copland v. Grumet*, 88 F. Supp. 2d 326, 337-

10    38 (D.N.J. 1999) (adopting reasoning in cases requiring same day trade); *In re Aldus Sec. Litig.*,

11    No. C92-885C, 1993 WL 121478, at *7 (W.D. Wash. March 1, 1993) (dismissing claims against

12    defendants with whom plaintiffs did not trade on the same day); *In re Stratus Computer, Inc. Sec.*

13    *Litig.*, No. 89-2075-Z, 1992 WL 73555, at *6 (D. Mass. March 27, 1992) (endorsing same day

14    definition); *Backman v. Polaroid Corp.*, 540 F. Supp. 667, 671 (D. Mass. 1982) (trades between 2

15    and 7 days apart were not contemporaneous).  Under this authority, Plaintiff and Zak did not

16    contemporaneously trade – Zak allegedly traded on April 13, 2005 and Plaintiff traded on April

17    18 and 19, 2005. [4]

18    _____

19    [4] *But see, Middlesex Retirement System v. Quest Software, Inc.*, 527 F.Supp.2d 1164, (C.D. Cal.
      2007) There, relying on an opinion of a district court in the Southern District of New York, the
20    court held that a plaintiff's stock sale is "contemporaneous" so long as it is made during the
      period that the defendants were selling that stock on the basis of insider information.  (527 F
21    Supp2d 1195-96, citing *In re Am. Bus. Computers Corp. Sec. Litig.*, 1994 WL 848690, *4
      (S.D.N.Y. February 24, 1994)).  Without explanation, the *Quest* court found that this rule was
22    more persuasive than the same day trading rule set forth in *AST Research*. *Id.*  The *Quest* court
      based its decision to follow the interpretation of the court in the Southern District of New York on
23    the grounds that, in *Neubronner*, the Ninth Circuit endorsed a holding of a case from the  Second
      Circuit, *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88 (2d Cir.1988). *Id.* at 1196
24    n.5.  However, the *Wilson* court rejected a rule similar to that adopted in *Am. Bus.* and *Quest.*
      *Wilson*, 648 F.2d at 94 ("to extend the period of liability well beyond the time of the insider's
25    trading simply because disclosure was never made could make the insider liable to all the
      world.").  Moreover, the *Quest* decision ignores the purpose of Section 20A – to provide a claim
26    only to those who might actually have traded with insiders. *Buban*, 1994 WL 324093 at *2
      (citing *Wilson*, 548 F.2d at 95).  Indeed, the language of the statute limiting damages to the
27    defendant's profit or loss avoided on his trade rather than create virtually unlimited exposure to
      numerous possible same day traders, indicates that Congress intended a narrow scope of the
28    statute. 15 U.S.C. § 78t-1(b)(2).  Thus, the same day sale rules set forth in *AST Research* and

1    Even under the authority in this District, where the Court decided the issue of

2    contemporaneous trades without reaching the issue of whether the trades need to occur on the

3    same day, Plaintiff and Zak's trades were not contemporaneous. As this District explained in

4    *Buban*, the purpose of the contemporaneous trading requirement is to protect a plaintiff who was

5    harmed by the insider and that "such harm may be found where it appears the plaintiff might, in

6    fact, have traded with the defendant." *Buban*, 1994 WL 324093, at *3. Although the *Buban*

7    court did not need to reach the issue of same day trading, the court relied on facts similar to those

8    in this case to conclude that the plaintiff's trades, which were made three days after the

9    defendant's trades, were not contemporaneous. Specifically, the *Buban* court based its ruling on

10    the facts that (a) the volume of the company's stock on the day that the defendant traded was

11    140,000 shares and (b) the difference in the price the plaintiffs paid for the stock and the price on

12    the stock that the defendant traded was $1.50. *Id.* Based on these circumstances, the *Buban* court

13    held that "it is clear that plaintiff could not have traded with defendant." *Id.* Other courts have

14    considered criteria similar to those considered by the Buban court to find that trades were not

15    contemporaneous. *See, e.g., In re MicroStrategy*, 115 F. Supp. 2d at 664 (finding trades made

16    three days apart were not contemporaneous where (1) the stock was traded on the NASDAQ;

17    (2) there was heavy trading volume; (3) the defendant purchased shares for $90 and plaintiff

18    purchased the shares for $87.125; and (4) 79.35 million combined shares of stock remained

19    outstanding).

20    The facts pled in the SAC are on all fours with *Buban*, establishing that even if this Court

21    were not to require same day sales, Plaintiff's sales still were not contemporaneous with Zak's

22    sales. First, on April 13, 2005 – the only specific day on which Plaintiff alleges Zak traded before

23    Plaintiff – the volume of trading was 542,000 shares, over 400,000 shares more than in *Buban*.

24    (Trippitelli Decl., Ex. A (historical price and volume of Connetics' stock)). Second, on April 18

25    and 19, 2005 – the only dates on which Plaintiff traded – Connetics' stock closed at $28.40 and

26    $28.00, respectively. *Id.* The difference between these prices and the closing price on April 13,

27

28    *Buban* is a better rule and more consistent with the purposes of section 20A, than the open-ended
     rule adopted in *Quest*.

- 14 -                                    YAROSHINSKY'S MOTION TO DISMISS
                                                          CASE NO. 3:07-CV-02940-SI

1    2005 of $25.67 (the date on which Zak allegedly traded) is $2.73 and $2.33, respectively.  This

2    difference is significantly greater than the $1.50 difference the *Buban* court found severely

3    discredited an allegation of contemporaneous trades.  Third, the number of days between

4    Plaintiff's trades and Zak's trades was five days, which is two days greater than the trades at issue

5    in *Buban*.  Even under a more expansive interpretation of "contemporaneous" (i.e, the trades do

6    not need to occur on the same day), Plaintiff's sales were not contemporaneous with Zak's trades.

7    Plaintiff, therefore, cannot base standing for its insider trading claim on Zak's trades.

8            For these reasons, Plaintiff has failed to establish that it has standing to assert its Section

9    10(b) and Rule 20A claims against Dr. Yaroshinsky.  Dr. Yaroshinsky's motion to dismiss,

10    therefore, may be granted with prejudice without further analysis.

11    **VI.    THE SECTION 10(b) CLAIM MUST BE DISMISSED BECAUSE THE**

12    **           COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER**

13            Even if Plaintiff has pled contemporaneous transactions (which it has not), the Section

14    10(b) claim must be dismissed for an independent reason:  The SAC fails to plead a strong

15    inference that Dr. Yaroshinsky acted with scienter with respect to his alleged transactions, as

16    required by 15 U.S.C. § 78u-4(b)(2).  To plead scienter, Plaintiff must allege "in great detail, facts

17    that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct"

18    and a "mental state embracing intent to deceive, manipulate, or defraud." *Silicon Graphics*, 183

19    F.3d at 974-75.  As noted above, in assessing whether a complaint meets this requirement, a court

20    must consider all reasonable inferences to be drawn from the complaint and the judicially

21    noticeable record, including inferences unfavorable to the plaintiffs; and dismiss unless the

22    resulting inference of scienter is cogent and at least as compelling as any opposing inference of

23    nonfraudulent intent.  *See* Section IV, *supra*.  It is not enough that the inference is merely

24    plausible or reasonable.  *Id.*  Moreover, stock sale allegations, by themselves, cannot plead a

25    cogent and compelling inference of Dr. Yaroshinsky's scienter. *See In re Splash Tech. Holdings,*

26    *Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1081 (N.D. Cal. 2001).  This is especially the case here,

27    where Plaintiff's purported claims are based solely on stock sales themselves.  Asserting that a

28    /////

1  defendant's stock sales were made with scienter because the defendant sold stock would be a

2  circular argument.[5]

3        The SAC does not satisfy these standards for any alleged transaction on the part of Dr.

4  Yaroshinsky.

5        **A.    The SAC Fails to Plead with Particularity that Dr. Yaroshinsky Received**
   **Material Non-Public Information.**

6

7        In order to sufficiently plead the scienter element of its insider trading claim against Dr.

8  Yaroshinsky, as an initial matter Plaintiff must plead with particularity that Dr. Yaroshinsky

9  received material non-public information.  The SAC, however, fails to do so.

10       Plaintiff's theory is that Dr. Yaroshinsky received material non-public information during

11 the April 13, 2005 call with the FDA.  (SAC ¶ 310.)  The SAC, however, fails to sufficiently

12 plead (a) what was discussed on the April 13, 2005 call, (b) that any such information constituted

13 material inside information or (c) that Dr. Yaroshinsky knew that such information constituted

14 material inside information.  Rather, Plaintiff impermissibly lifts allegations as to what

15 purportedly was discussed during the April 13 call from a complaint filed by the Securities and

16 Exchange Commission against Dr. Yaroshinsky, without pleading any specific corroborating

17 facts discovered in Plaintiffs' purported investigation independent of its review of the SEC

18 Complaint.  (*Id.* at ¶ 108.)  If, as this Court already has held, merely lifting allegations from the

19 SEC Complaint without corroboration from independent sources does not fulfill Plaintiffs'

20 obligations under Fed. R. Civ. P. 11(b), such pleading practice does not and cannot fulfill the

21 Reform Act's requirement that Plaintiff plead with particularity that Dr. Yaroshinsky received

22 material non-public information.  *See In re Connetics Corp. Sec. Litig.*, ---F.3d---, 2008 WL

23 269467 * 5-7 (N.D. Cal. Jan. 29, 2008).

24       Thus, not only do Plaintiff's allegations *not* give rise to an inference of scienter that is

25 "cogent and at least as compelling as [this] opposing inference of nonfraudulent intent"; they do

26 _____

27 [5] *See In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1374 (N.D. Ga. 2005) (plaintiffs'
   "principal argument seems to be that this conduct occurred and that its occurrence itself evidences

28 each defendant acted with scienter.  The logic is circular.").

1    not give rise to an inference of scienter that is even "plausible or reasonable." *Tellabs*, 127 S.Ct.

2    2504-05.  The SAC can be dismissed against Dr. Yaroshinsky on this basis alone.

3    **B.    Connetics' April 26, 2005 Disclosures**

4            Even if the SAC has sufficiently pled that Dr. Yaroshinsky received material inside

5    information at the time of the April 13, 2005 call with the FDA, the SAC admits that on April 26,

6    2005, by press release and in a conference call, Connetics disclosed information related to the

7    April 13 FDA conference call and the transgenic mouse study results for Velac Gel.  While

8    Plaintiff asserts that the April 26 disclosures were partial disclosures and false or misleading, *it*

9    *does not allege specific facts indicating that Dr. Yaroshinsky knew or would have any reason to*

10   *believe that all material facts related to the April 13 FDA call and the transgenic mouse study*

11   *were not disclosed on that date*.  To this end, the SAC does not allege that there was any material

12   variation between known facts that were disclosed by the FDA on April 13 and what Connetics

13   disclosed on April 26, 2005.

14           Given Connetics' April 26, 2005 disclosures, it is neither cogent or compelling that Dr.

15   Yaroshinsky would have known that he was in possession of material non-public information that

16   had not been disclosed.  Rather, the more cogent and compelling inference is that Dr.

17   Yaroshinsky believed, and had no reason not to believe, that all material non-public information

18   regarding the April 13 call and the transgenic mouse study had been disclosed to the market on

19   April 26, 2005 and that there was no legal impediment to trading.  Again, not only do Plaintiff's

20   allegations *not* give rise to an inference of scienter that is "cogent and at least as compelling as

21   [this] opposing inference of nonfraudulent intent"; they do not give rise to an inference of scienter

22   that is even "plausible or reasonable." *Tellabs*, 127 S.Ct. 2504-05.[6]

23   _____

24   [6] A finding by the Court that Plaintiff has sufficiently pled that the April 26 press release and
     conference call contained partial disclosures and was therefore false or misleading  (which they
25   have not sufficiently plead) would not alter this outcome.  That Plaintiff might have sufficiently
     plead that the disclosures in the press release or during the conference call were false or
26   misleading does not alter that the most cogent and compelling inference is that Dr. Yaroshinsky
     *thought* that all material non-public information had been disclosed in the press release or during
27   the conference call.  Dr. Yaroshinsky is a scientist who was not involved in drafting the press
     release or leading (or even participating in) the conference call.  Thus, it would be unreasonable
28   to expect him to differentiate between a partial and full disclosure when the alleged material, non-

1    **C.    Plaintiff's Reliance on a Confidential Witness and a Non-Existent Admission Fail to Establish Scienter.**

2

3    In an effort to plead scienter, Plaintiff alleges that its otherwise inadequate scienter

4    allegations are corroborated by a confidential witness and that Dr. Yaroshinsky admitted to

5    insider trading in his Answer to the SEC Complaint. (SAC ¶ 311.)  Both allegations fail to

6    sufficiently plead scienter – i.e., they fail to establish that an inference of scienter is the more

7    cogent and compelling inference than the inference that by April 26, Dr. Yaroshinsky believed

8    that he did not possess any material non-public information and that he could trade without

9    violating the securities laws.

10    First, Plaintiff alleges that Dr. Yaroshinsky's "actual knowledge" is corroborated by

11    "confidential witnesses, including CW4, who worked with Defendant Yaroshinsky." (SAC

12    ¶ 311.)  In order to rely on confidential witnesses (without naming the source) and meet the

13    Reform Act's heightened pleading standards, the witness must be described "with sufficient

14    particularity to support the probability that a person in the position occupied by the source would

15    possess the information alleged and the complaint contains adequate corroborating details." *In re*

16    *Daou Systems, Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005).  Plaintiff fails to meet this standard with

17    respect to "CW4" – i.e., that CW4 would be in a position to have information as to whether Dr.

18    Yaroshinsky knew or believed he was trading on the basis of inside information after the April

19    25, 2005 press release and conference call.  The SAC merely alleges that CW4 was "friends with

20    Defendant Yaroshinsky," and CW4's position as "an employee of Connetics' Strategic Market

21    Planning group" is irrelevant to this issue.  (*See* SAC ¶ 43(d).)  Moreover, Plaintiff fails to plead

22    that any of the other confidential witnesses mentioned in the SAC would be in a position to have

23    such knowledge.  Indeed, the SAC pleads that only one other Confidential Witness, CW3, had

24    any relationship with Dr. Yaroshinsky – that CW3 "knew Defendant Yaroshinsky well," which

25    also fails to establish Dr. Yaroshinsky's actual knowledge. (SAC ¶ 43(c).)

26    /////

27

28    public information at issue in this case was addressed in the press release and during the conference call.

1    Second, in an attempt to salvage its scienter allegations, Plaintiff tucks into the SAC the

2  allegation that Dr. Yaroshinsky "admitted" to insider trading in answering the SEC complaint.

3  (SAC ¶ 311(ii).) Not surprisingly, Plaintiff fails to provide any cite for such purported

4  "admission." The reason is simple – Dr. Yaroshinsky never made any such admission.

5  **VII.    THE SECTION 20A CLAIM MUST BE DISMISSED ON OTHER GROUNDS**

6    Even if Plaintiff had sufficiently pled contemporaneous sales (which it has not), its

7  Section 20A claim must be dismissed on independent grounds.

8    **A.    Plaintiff Has Failed to Sufficiently Plead an Underlying Section 10(b)**

9  **Violation.**

10    As noted above, claims under Section 20A are derivative and therefore require an

11  independent violation of the Exchange Act. *See* Section IV, *supra* (*quoting Johnson*, 490 F.3d at

12  781). As the SAC does not plead an underlying Section 10(b) violation on the part of

13  Dr. Yaroshinsky, the Section 20A claim must be dismissed as well.

14    **B.    The Relief Plaintiff Seeks is Not Available Under Section 20A**

15    The Section 20A claim should also be dismissed under Rule 12(b)(6) for failure to state a

16  claim for which the relief requested can be granted. Federal law limits contemporaneous trading

17  actions to profit gained or loss avoided. 15 U.S.C. § 78t-1(b)(1). The total amount of damages

18  imposed by Section 20A cannot exceed the profit gained or loss avoided in the transaction that is

19  the subject of the alleged violation. *Id*; *In re Aldus Sec. Litig.*, 1993 WL 121478 at *7 (the only

20  remedy available for alleged "wrongful insider trading is disgorgement of trading profits, and is

21  only available to actual or potential victims of the insider trades.") Plaintiff, in contrast, seeks

22  compensatory damages and/or rescission, interest, and attorneys' fees and costs. This relief is not

23  available under Section 20A, which is limited to disgorgement. Therefore, Plaintiff has failed to

24  state a claim for which the type of relief requested can be granted, and the Section 20A claim

25  should be dismissed.

26    **C.    Plaintiff Fails to Sufficiently Plead Tipper/Tippee Liability.**

27    As mentioned above, as a part of its Section 20A claim, Plaintiff alludes to a claim against

28  Dr. Yaroshinsky for tipper/tippee liability. By failing to assert this tipper/tippee claim as a part of

1    its Section 10(b) claim, however, Plaintiff cannot as a matter of law recover for it under Section

2    20A. (*Infra* VII.A.)

3        Even if Plaintiff could assert this claim under Section 20A only, the claim fails for several

4    reasons. As established above, Plaintiff fails to plead contemporaneous trades and scienter.

5    Plaintiff's purported tipper/tippee claim fails for an independent reason as well – the SAC comes

6    nowhere near meeting the heightened pleading standards under the Reform Act which apply to

7    Plaintiff's Section 20A claims against Dr. Yaroshinsky. Rather, in pleading Count Three of the

8    SAC for Violation of Section 20A, Plaintiff merely makes the conclusory allegation that "[i]n

9    violation of his fiduciary duty to Connetics, and for his direct or indirect personal benefit,

10   Defendant Yaroshinsky communicated material, non-public information concerning Velac Gel to

11   Defendant Zak, who could have reasonably been expected to use this information to his

12   advantage prior to the Company's June 13, 2005 announcement that the FDA had not approved

13   Velac Gel." (SAC ¶ 389.)

14       Plaintiff fails to plead, as it must, specific facts as to how Dr. Yaroshinsky directly or

15   indirectly gained a personal benefit. While Plaintiff alleges that Zak was Dr. Yaroshinsky's

16   "friend" (SAC ¶ 133), Plaintiff's conclusory allegation of a friendship without additional facts

17   supporting the allegation of a tip and scienter cannot sufficiently plead a Section 20A claim.

18   Otherwise, any Plaintiff could sufficiently plead a Section 20A claim by merely alleging that the

19   purported tipper and tippee has a personal relationship, such as friendship, with nothing more.[7]

20   To the contrary, where a plaintiff's tipper/tippee claim relies upon inferences of personal benefit

21   due to the relationships of the alleged tipper and tippee, the plaintiff must allege a special

22   relationship from which the defendant would receive a "meaningful future advantage" for

23   disclosing allegedly material inside information. *United States Sec. Exch. Comm'n v. Maxwell*,

24   341 F. Supp. 2d 941, 948-49 (S.D. Ohio 2004). Conclusory assertions of personal benefit are

25   insufficient and the court need not indulge in any unwarranted inference. *See Shurkin v. Golden*

26   

27   [7] Nor does Plaintiff's allegation that Zak was Dr. Yaroshinsky's "former neighbor" sufficiently
     plead the type of "special relationship" necessary to plead a tipper/tippee claim. (*See* SAC ¶
28   133.)

1    *State Vintners Inc.*, 471 F. Supp. 2d 998, 1025 (N.D. Cal. 2006). Plaintiff also fails to plead any

2    specific facts, as required under the Reform Act, to support its conclusory allegation that

3    "Defendant Zak could have reasonably been expected to use this information to his advantage."

4    (*See* SAC ¶ 389.)

5         For these reasons, Plaintiff's attempt to salvage its Section 20A claim based on an

6    apparent theory of tipper/tippee liability fails, and Dr. Yaroshinsky's motion to dismiss should be

7    granted with prejudice.

8    **VIII.   CONCLUSION**

9         The SAC fails to plead any insider trading claim against Dr. Yaroshinsky because it failed

10   to allege facts with particularity evincing that Plaintiff traded contemporaneously with

11   Dr. Yaroshinsky. As a result, Plaintiff lacks standing to pursue these claims. The SAC also fails

12   to plead an insider trading claim under Section 10(b) because it does not plead specific facts

13   giving rise to a strong inference of Dr. Yaroshinsky's scienter. The Section 20A claim also fails

14   because Plaintiff fails to allege an underlying Section 10(b) violation, it seeks relief that is not

15   available under Section 20A and it does not plead a tipper/tippee liability claim with particularity.

16   There is no indication that any of these defects (which go to standing and other fundamental

17   elements) may be remedied by amendment. Therefore, for these reasons, the Court should

18   dismiss Plaintiff's claims against Dr. Yaroshinsky with prejudice.

19
20   Dated: May 2, 2008

21                                        DLA PIPER US LLP

22

23                                   By   /s/ Shirli Weiss
                                          SHIRLI FABBRI WEISS
24                                        GERARD A. TRIPPITELLI
                                          ALYSSON RUSSELL SNOW
25                                        Attorneys for Defendant
                                          ALEXANDER YAROSHINSKY
26

27

28