SUSAN S. MUCK (CSB NO. 126930)
DEAN S. KRISTY (CSB NO. 157646)
CHRISTOPHER J. STESKAL (CSB NO. 212297)
CATHERINE D. KEVANE (CSB NO. 215501)
EMILY ST. JOHN COHEN (CSB NO. 239674)
CHRISTINE VOGELEI (CSB NO. 239843)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350
smuck@fenwick.com
dkristy@fenwick.com
csteskal@fenwick.com
ckevane@fenwick.com
ecohen@fenwick.com
cvogelei@fenwick.com

Attorneys for Defendants Connetics Corp.,
John L. Higgins, Lincoln Krochmal,
C. Gregory Vontz, and Thomas G. Wiggans

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CONNETICS CORP. SECURITIES LITIGATION | Case No. C 07-02940 SI<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT BY DEFENDANTS CONNETICS CORP., JOHN L. HIGGINS, LINCOLN KROCHMAL, C. GREGORY VONTZ, AND THOMAS G. WIGGANS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    August 15, 2008<br>Time:   9:00 a.m.<br>Dept:   Courtroom 10<br>Judge:  Honorable Susan Illston |

DEFS' NOTICE OF MOTION TO STRIKE AND MPA ISO THEREOF         CASE NO. C 07-02940 SI

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 15, 2008, at 9:00 a.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Susan Illston, located at the United States District Court, 450 Golden Gate Avenue, San Francisco, California, defendants Connetics Corp. ("Connetics" or the "Company"), John L. Higgins, Lincoln Krochmal, C. Gregory Vontz, and Thomas G. Wiggans (collectively, "defendants") will and hereby do move to strike the following paragraphs of Lead Plaintiff's Second Amended Consolidated Class Action Complaint ("SAC"): 92, 94, and 108 and any other paragraphs of the SAC that rely on the SEC complaint for factual support.  This motion is based on this Notice; the Memorandum of Points and Authorities in support thereof; the Declaration of Christopher J. Steskal in support thereof; the Proposed Order; Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Points of Authorities in support thereof; Defendants' Request for Judicial Notice and the Declaration of Christopher J. Steskal in Support of Defendants' Motion to Dismiss; the Court's files for this action; and any oral argument of counsel at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

As this Court has held, plaintiff cannot plead a claim by merely parroting allegations by another litigant in a different lawsuit.  Rather, plaintiff must conduct an independent investigation into the facts alleged.[1]  That rule is particularly applicable here because plaintiff purports to allege a claim under the Private Securities Litigation Reform Act of 1995.  To allege such a claim, plaintiff must "state with particularity facts giving rise to a strong inference" that each defendant acted with scienter, including the "who, what, when, where, and how of the misconduct charged" for each allegedly fraudulent misstatement, on a defendant-by-defendant basis.  15 U.S.C. § 78u-4(b)(1)(B); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Given the heightened pleading requirements of the Reform Act, the law requires plaintiff to conduct a "substantial investigation" that yields sufficient factual detail to meet the Act's requirements.  *In*

---

[1] Order Granting Defendants Motion to Dismiss and Motion to Strike, January 29, 2008, at 10 ("Order").

1

DEFS' NOTICE OF MOTION TO STRIKE AND MPA ISO THEREOF                         CASE NO. C 07-02940 SI

*re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 326 (S.D.N.Y. 2003). As this Court has already recognized, plaintiff cannot fulfill its obligations by copying the allegations of another litigant, especially a litigant such as the SEC who is not bound by the Reform Act and who has asserted no claim whatsoever against Connetics or Messrs. Higgins, Krochmal, Vontz, and Wiggans.

Nevertheless, despite this Court's directive to conduct "an independent, reasonable investigation" and to set forth particularized facts that meet the Reform Act's heightened pleading requirements, plaintiff is still unable to plead an adequate basis for many of the allegations that it lifted directly from the SEC complaint. Order at 10. Although plaintiff now includes a section entitled "Lead Plaintiff's Investigation" in its complaint, the purported "investigation" adds **no** factual detail or support for the conclusory allegations copied from the SEC's suit against others. Rather, it amounts to nothing more than a review of the pleadings in the SEC matter, a recitation of the very same investigatory allegations the Court previously found insufficient, and references to four new confidential witnesses – none of whom augment or corroborate the allegations in paragraphs 92, 94, and 108 copied from the SEC complaint. Accordingly, the Court should again reject plaintiff's attempt to boot strap its way past the heightened pleading requirements of the Reform Act by merely reiterating the SEC's conclusory allegations.

Because plaintiff has failed to cure the fatal defects in its earlier complaint, the Court should once again strike the paragraphs of the SAC that rely on the SEC complaint for factual support, including paragraphs 92, 94, and 108 (which correspond to paragraphs 56, 57, and 69 of the prior complaint). In the alternative, the Court should hold that plaintiff has not met its burden of pleading particularized facts demonstrating a strong inference of scienter under the Reform Act by parroting the conclusory allegations contained in the SEC complaint – a complaint that does not even name any moving defendant here, notwithstanding what plaintiff claims was an "extensive" investigation by the SEC. Those allegations fall far short of the Reform Act's particularity requirement, including the requirement that plaintiff allege the "who, what, when, where, and how" of the alleged misconduct **by these defendants**. As such, even if the Court does not strike the paragraphs at issue, it should nonetheless grant defendants' separate motion to

1  dismiss plaintiff's SAC for failure to state a clam because plaintiff has not met the Reform Act's pleading requirements.

## II.     STATEMENT OF THE FACTS

### A.     The Amended Complaint

On June 28, 2007, plaintiff filed an Amended Complaint ("AC") purporting to assert claims under Section 10(b), 20A, and 20(a) of the 1934 Act.  Although plaintiff purported to have conducted an "investigation," and cited to several confidential witnesses who were allegedly interviewed during that investigation, plaintiff concedes that the basis for certain "specific allegations" was a separate civil complaint filed by the SEC.  October 19, 2007 Hr'g Trans. at 29:11-12.  The SEC filed its complaint in a different venue against different defendants.[2]  The SEC has not filed any claims against Connetics and its senior officers (including Messrs. Higgins, Krochmal, Vontz, and Wiggans) or otherwise alleged that Connetics or any of its senior officers has done anything wrong or improper.  Unlike plaintiff, the SEC is not subject to the stringent pleading requirements of the Reform Act.[3]

Nevertheless, in framing its complaint against Connetics and its senior officers, plaintiff parroted certain conclusory allegations contained in the SEC complaint,[4] albeit in some cases (as shown below) misrepresenting those allegations:

---

[2] The district court in the Southern District of New York has determined that the SEC's suit is not related to this case within the meaning of that court's local rules.  *See* Declaration of Dean S. Kristy In Support of Motion to Transfer Venue, March 2, 2007, Ex. J.

[3] *See S.E.C v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) (the heightened pleading requirements under the PSLRA do not apply to actions brought by the SEC) (citing cases).

[4] A copy of the SEC Complaint is attached as Exhibit 1 to the Declaration of Christopher J. Steskal in Support of Defendants' Motion to Strike.

| **Plaintiff's Amended Complaint** | **SEC's Complaint** |
|---|---|
| ¶ 56: As alleged in the SEC complaint, in mid-June 2004, Connetics received the results of the Mouse Study and learned that 89 out of 160 of the mice (approximately 56%) treated with Velac developed cancerous skin tumors. | ¶ 17: From January 2004 through June 2004, Connetics performed the carcinogenicity study on mice. The carcinogenicity study results indicated that out of 160 mice treated with Velac Gel in varying formulations and dosages, 89 mice developed tumors. |
| ¶ 57: At that meeting, the Company's hand-picked panel of expert toxicologists informed Connetics that the panel did not know of any drug that exhibited a "positive dermal" similar to Velac that ever had been approved by the FDA. | ¶ 18: At the meeting, the panel convened by Connetics reported that it was unaware of any drug exhibiting a "positive dermal," similar to Velac Gel, that had been approved by the FDA. Yaroshinsky was present at this discussion. |
| ¶ 69: According to the SEC Complaint, the ECAC told Connetics (including Defendant Yaroshinsky and, on information and belief, Defendant Krochmal) that: (i) "[Velac] may be a tumor promoter or a carcinogen"; and (ii) "this is a serious issue for a topical product for the treatment of acne." | ¶ 20: During the call, the FDA staff told Connetics that ECAC had concluded that the Velac Gel vehicle was positive and may be a "tumor promoter or carcinogen." The FDA staff further told Connetics that "this is a serious issue for a topical product for the treatment of acne…." |

### B.    The Court's Order Striking Allegations From The Complaint

On January 29, 2008, this Court granted a motion to strike the allegations from plaintiff's complaint that were lifted from the SEC's complaint. In that order, the Court explained that "an attorney has a 'nondelegable responsibility' to 'personally… validate the truth and legal reasonableness of the papers filed' and 'to conduct a reasonable factual investigation.'" Order at 10 (citation omitted). "Given that this responsibility cannot be delegated to another member of the attorney's firm, it would make little sense that an attorney 'somehow can rely on the analysis of attorneys in *different actions* and who are presumably from different law firms.'" *Id.* (citation omitted). Applying this standard, the Court emphasized that although plaintiff had done some investigation, plaintiff "[does] not contend that it conducted independent investigation into the facts alleged in the SEC complaint . . . ." *Id.* Rather, "the SEC complaint appears to be the only basis for [those] allegations . . . ." *Id.* Accordingly, the Court struck the paragraphs where

plaintiff relied on the SEC complaint for factual support without conducting an independent investigation.[5]

### C. The Second Amended Complaint

On March 14, 2008, plaintiff filed a Second Amended Complaint. Despite the Court's clear instruction, plaintiff has once again lifted allegations virtually verbatim from the SEC complaint, including the following:

| Plaintiff's Second Amended Complaint | SEC's Complaint |
|---|---|
| ¶ 92: According to the SEC, as corroborated by Lead Counsel's investigation as set forth in Section IV, by no later than mid-June 2004, Connetics received the results of the Mouse Study and learned that 89 out of 160 of the mice (approximately 56%) treated with Velac developed cancerous skin tumors. | ¶ 17: From January 2004 through June 2004, Connetics performed the carcinogenicity study on mice. The carcinogenicity study results indicated that out of 160 mice treated with Velac Gel in varying formulations and dosages, 89 mice developed tumors. |
| ¶ 94: At the June 28, 2004 meeting, the Company's panel of expert toxicologists informed Connetics that the panel did not know of any drug that exhibited a "positive dermal" similar to Velac that ever had been approved by the FDA. | ¶ 18: At the meeting, the panel convened by Connetics reported that it was unaware of any drug exhibiting a "positive dermal," similar to Velac Gel, that had been approved by the FDA. |
| ¶ 108: According to the SEC, the ECAC told Connetics (including Defendant Yaroshinsky and, on information and belief, Defendant Krochmal) that:<br>(i) "[Velac] may be a tumor promoter or a carcinogen"; and<br>(ii) "this is a serious issue for a topical product for the treatment of acne." | ¶ 20: During the call, the FDA staff told Connetics that ECAC had concluded that the Velac Gel vehicle was positive and may be a "tumor promoter or carcinogen." The FDA staff further told Connetics that "this is a serious issue for a topical product for the treatment of acne…." |

---

[5] The Court explicitly singled out paragraphs 56 and 57, which related to the purported results of the mouse study and the supposed statements of the expert panel, "because the complaint states that the information in paragraph 56 was 'alleged in the SEC complaint' and because it appears that the information in these paragraphs was taken directly from the SEC complaint with no additional investigation." Order at 10-11.

### III. PLAINTIFF STILL CANNOT OFFER ANY SUPPORT FOR THE ALLEGATIONS LIFTED DIRECTLY FROM THE SEC COMPLAINT

#### A. Plaintiff Has Not Alleged An Adequate Basis To Support Allegations Regarding The Tg.AC Study (Paragraph 92)

Plaintiff has yet again failed to allege an appropriate basis for its conclusory allegations regarding the so-called Tg.AC study contained in paragraph 92. To the contrary, plaintiff does nothing more than repeat the exact same allegation from its previous complaint, namely, that the Tg.AC study revealed that "89 out of 160 of the mice (approximately 56%) treated with Velac developed cancerous tumors." *Compare* SAC ¶ 92 *with* AC ¶ 56. Moreover, plaintiff admits, as it must, that this allegation is copied from the SEC's complaint. *See* SAC ¶¶ 92, 96 ("According to the SEC…."). Although plaintiff generally asserts that the SEC's allegation is "corroborated by Lead Counsel's investigation as set forth in Section IV" (*id.* at ¶ 92), plaintiff still cannot point to a single document or confidential witness to support its allegation regarding the results of the Tg.AC study. ***Not one.*** To the contrary, plaintiff's "new investigation" is essentially the same as the previous investigation, which this Court expressly held was inadequate.

As with its prior complaint, plaintiff's conclusory allegations regarding the Tg.AC study also fall far short of the level of paricularity required by the Reform Act. The Ninth Circuit has routinely rejected claims based on similar conclusory allegations regarding the contents of an internal company report. For example, in *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999), the plaintiff alleged that internal company reports contradicted positive public statements made by the officers. The Ninth Circuit rejected that claim because plaintiff failed to allege adequate corroborating details from the reports, including the contents of the reports and who reviewed the report. *Id.* at 985. As the Ninth Circuit held, "[plaintiff] would have us speculate as to the basis for the allegations about the reports, the severity of the problems, and the knowledge of the officers. We decline to do so." *Id.* That holding applies here. The Court should decline plaintiff's invitation to speculate about the contents of the Tg.AC study and the significance of that study. *See also Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (dismissing claim based on internal report where plaintiff did not "plead, in any detail, the contents of . . . such report or the purported data").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Instead of alleging specific facts or conducting an independent investigation capable of meeting the particularity requirement of the Reform Act, plaintiff resorts to misquoting the SEC's conclusory allegations about the Tg.AC study. For example, the SEC complaint provides that the "mice developed tumors," *not* that they "developed cancerous tumors."[6] In fact, the "tumors" developed by the Tg.AC mice are called papillomas, which are benign skin lesions. Plaintiff has not – and cannot – cite any factual basis for its "cancer" allegations. Likewise, the SEC complaint states that the Tg.AC test was conducted "in varying formulations and dosages" (SEC Complaint ¶ 17), a qualification that plaintiff omits from its complaint. Indeed, plaintiff does not allege any of the facts necessary to support its allegation that the number of mice that allegedly tested positive ("89 out of 160") was somehow significant or relevant – such as the dosage, length of exposure, or concentration levels – much less that defendants understood that result to be significant or relevant. *See In re Vertex Pharms. Inc., Sec. Litig.*, 357 F. Supp. 2d 343, 352 (D. Mass. 2005) ("many drugs currently on the market are toxic depending on dosage levels and concentrations").

In any event, the Court directed plaintiff to perform its own independent investigation that met the requirements of the Reform Act. Instead, plaintiff has merely listed the investigative steps it believes that the SEC has taken. SAC ¶¶ 44-55. It goes without saying that plaintiff cannot meet its non-delegable burden of conducting an investigation simply by reviewing and reciting what other attorneys have done in other matters, especially where (as here) nothing in that recitation provides any factual detail relating to the allegation at issue. *See In re Merrill Lynch & Co.,Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 369 (S.D.N.Y. 2003),*aff'd*, 396 F.3d 161 (2d Cir. 2005) (stating that the pleading burden squarely belongs with plaintiff's counsel and striking paragraphs that refer to or rely on SEC and other complaints); *In re Caere Corp. Sec. Litig.*, 837 F. Supp. 1054, 1060 (N.D. Cal. 1993) (an attorney has a "responsibility to conduct a

---

[6] Plaintiff's allegation relating to the Tg.AC study is also contradicted by other allegations in the complaint. Although plaintiff alleges that the study showed that "Velac caused cancer," plaintiff alleges elsewhere that the study "revealed that the vehicle *was potentially* a tumor promoter or carcinogen" and that the FDA concluded Velac "*may be* a tumor promoter or carcinogen." SAC ¶ 93 (emphasis added).

1  reasonable inquiry into the legal and factual basis for their allegations, since it is impossible to

2  construct a viable complaint without having done so").[7]  Because plaintiff has not provided any

3  corroborating facts to support the allegation in paragraph 92, it should be stricken.

### B. Plaintiff Has Not Alleged An Adequate Basis To Support Allegations Regarding The Expert Panel (Paragraph 94)

Although plaintiff purports to have spoken with a member of the expert panel, plaintiff does not even pretend that its allegation lifted from the SEC complaint regarding the purported concerns of that panel is supported by any corroborating witness or document. SAC ¶ 94. Indeed, as before, the allegation regarding the expert panel's purported concerns is copied directly from the SEC complaint. *Compare* SEC Complaint ¶ 18 *with* SAC ¶ 94. Plaintiff's failure to identify corroborating detail is particuarly damning because, as this Court has recognized, those purported concerns are belied by the fact that other acne drugs have been approved despite a positive response in the Tg.AC model.[8] Order at 14.  In fact, plaintiff does not allege – nor could it allege – that the FDA had a policy of refusing to approve dermal product that tested positive in the Tg.AC model, or even that the FDA had ever failed to approve a dermal product merely because that product had a positive response in the Tg.AC model prior to Velac.

Moreover, as with its prior effort, plaintiff's allegations do not come close to meeting the Reform Act's particularity requirment.  There are no allegations regarding who on the expert panel made the alleged statement or who at Connetics heard the statement. *See Silicon Graphics*, 183 F.3d at 985 (holding that plaintiff must allege particularized facts demonstrating that defendants were aware of alleged problems at the time allegedly false statements were made); *Tripp v. Indymac Fin. Inc.*, 2007 WL 4591930, at *3 (C.D. Cal. Nov. 29, 2007) (same).  As shown, plaintiff cannot bootstrap its way around its pleading burden by copying conclusory allegations from the SEC complaint. *See Geinko v. Padda*, 2002 WL 276236, at *5-6 (N.D. Ill.

---

[7] *See also Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 (4th Cir. 2004) (affirming refusal to take judicial notice of SEC complaint because it contained "mere allegations"); *In re Buca Inc. Sec. Litig.*, 2006 WL 3030886, at *1 n.1 (D. Minn. Oct. 16, 2006) (refusing to take judicial notice of SEC complaints offered for truth of contents).

[8] *See* Defendants' Motion to Dismiss at 8-9; Declaration of Christopher J. Steskal in Support of Defendants' Motion to Dismiss, Exs. 30-33.

1  Feb. 27, 2002) (plaintiff cannot shirk its duties by relying on analysis of attorneys in different

2  actions, including SEC allegations); *In re McKesson HBOC Inc. Sec. Litig.*, 126 F. Supp. 2d

3  1248, 1272 (N.D. Cal. 2000) ("Conclusory allegations of wrongdoing are no more sufficient if

4  they come from a newspaper article than from plaintiff's counsel.") (citations omitted).  That is

5  particularly true here because the SEC is not required to plead fraud with particularity under the

6  Reform Act, and it did not do so in the civil complaint cited by plaintiff.  Thus, as before,

7  paragraph 94 should be stricken from plaintiff's complaint.  *See* Order at 10.

8      **C.**    **Plaintiff Has Not Alleged An Adequate Basis To Support Statements Regarding The April 13, 2005 Conference Call With ECAC (Paragraph 108)**

9

10  Plaintiff also makes no attempt to suggest that its allegation regarding the April 13, 2005

11  call with ECAC is supported by its own investigation.  SAC ¶ 108.  Instead, plaintiff once again

12  alleges "according to the SEC" and then copies the SEC's allegation verbatim.  *Compare* SAC ¶

13  108 *with* SEC Complaint ¶ 20.  In fact, plaintiff's purported investigation actually contradicts the

14  allegation that it parrots from the SEC's complaint.  According to plaintiff, CW 6 was present

15  during the April 13 call.  However, CW 6 does not confirm ECAC's alleged statement that the

16  results of the Tg.AC study were a "serious issue" (SAC ¶¶ 107-108), but rather provides that "the

17  FDA told Connetics that the Mouse Study results 'may be a problem.'"  SAC ¶ 43(f).[9]  Moreover,

18  CW 6 does not identify any of the defendants as being present during the call or as otherwise

19  privy to ECAC's alleged statements.  Thus, paragraph 108 of the SAC should once again be

20  stricken because it is based exclusively on a conclusory allegation in the SEC complaint.

21  **IV.    CONCLUSION**

22  As the Court has held, plaintiff must do more than rely on the SEC's complaint; it must

23  identify corroborating facts – from witnesses, documents, or otherwise – that meet the heightened

---

[9] As alleged in the SAC, CW 6 "***had not previously worked on Velac*** but attended the meeting [on April 13th] because the Company's usual liaison with the FDA could not make it." SAC ¶ 43(f) (emphasis added). Thus, while CW 6 might have a basis for recalling what was said during the call, it is plain from the face of the complaint that CW 6 had no basis to assess the likelihood of Velac's approval. *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1112-1113 (N.D. Cal. 2003) (holding that plaintiff must allege confidential witness has personal knowledge of facts to support statement because otherwise allegations amount to "unfounded and sometimes unintelligible speculation").

pleading requirements of the Reform Act. *See* Order at 10 (plaintiff must allege "additional bases for the specific allegations"). Plaintiff is still unable to meet that burden. Accordingly, the Court should once again strike paragraphs 92, 94, and 108 and any other paragraphs of the SAC that rely on the SEC complaint for factual support. In the alternative, the Court should hold that plaintiff has not met its burden under the Reform Act of pleading particularized facts demonstrating a strong inference of scienter by each defendant because plaintiff has merely parroted certain conclusory allegations contained in a separate civil suit that was not even filed against the moving defendants.

Dated: May 2, 2008

FENWICK & WEST LLP

By: ____/s/ Christopher J. Steskal____/
      Christopher J. Steskal

Attorneys for Defendants Connetics Corp., John L. Higgins, Lincoln Krochmal, C. Gregory Vontz, and Thomas G. Wiggans

25251/00402/SF/5227905.3