1  BERNSTEIN LITOWITZ BERGER
       & GROSSMANN LLP
2  DAVID R. STICKNEY   (Bar No. 188574)
MATTHEW P. SIBEN   (Bar No. 223279)
3  TAKEO A. KELLAR   (Bar No. 234470)
12481 High Bluff Drive, Suite 300
4  San Diego, CA 92130
Tel:    (858) 793-0070
5  Fax:   (858) 793-0323
davids@blbglaw.com
6  matthews@blbglaw.com
takeok@blbglaw.com
7        -and-
CHAD JOHNSON
8  1285 Avenue of the Americas, 38th Floor
New York, NY 10019
9  Tel:    (212) 554-1400
Fax:   (212) 554-1444
10 chad@blbglaw.com

11 Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class

12

13           UNITED STATES DISTRICT COURT

14         NORTHERN DISTRICT OF CALIFORNIA

15            SAN FRANCISCO DIVISION

| 16 | In re CONNETICS SECURITIES LITIGATION | Case No. C 07-02940 SI |
|----|----|----|
| 17 | | **CLASS ACTION** |
| 18 | | **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT** |
| 19 | | |
| 20 | | |
| 21 | | Date:      August 15, 2008 |
| 22 | | Time:     9:00 a.m. |
| 23 | | Courtroom:  10<br>Judge:    Hon. Susan Illston |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii-v

I.     INTRODUCTION ......................................................................................................... 1

II.    ARGUMENT .............................................................................................................. 2

    A.    The Complaint Complies With Fed. R. Civ. P. 11 ................................. 2

        1.    Standards Under Rule 11 ................................................... 2

        2.    Defendants Have Not Attempted To, And
             Cannot, Establish That The Complaint's
             Allegations Are "Factually Baseless" ................................ 5

             a.    Judge Mukasey Determined That The Allegations
                   Are Not Factually Baseless ............................... 5

             b.    Defendants Have Admitted Certain Of The
                   Allegations Are True .......................................... 6

             c.    Numerous Other Factors Confirm The Allegations
                   Are Not Factually Baseless ............................... 7

        3.    Lead Plaintiff's Independent Investigation
             Of The Facts Satisfies Rule 11 ........................................ 8

             a.    Lead Plaintiff Conducted A Reasonable Inquiry ............. 8

             b.    Having Conducted A Reasonable Inquiry, Lead
                   Plaintiff May Properly Rely Upon The SEC
                   Complaint As But One Of Many Sources
                   Supporting Its Allegations ................................. 9

             c.    Even Assuming Lead Plaintiff Had Not Conducted
                   An Independent Inquiry, Which It Did, Lead
                   Plaintiff May Rely Upon The SEC Complaint ............... 9

                  (1)    A Plaintiff May Plead On The Basis Of A
                         *Reliable* Source – Even A Court Filing
                         Created By Another .............................. 9

                  (2)    A Plaintiff May Rely Upon Facts (Not
                         Conclusions) Set Forth With Particularity In
                         An SEC Complaint, Even Without
                         Conducting An Independent Investigation ......... 11

        4.    Defendant Yaroshinsky Cites No Persuasive
             Authority That Would Support His Motion
             To Strike Pursuant To Rule 11 ........................................ 13

# TABLE OF CONTENTS (cont.)

B.    Paragraphs 92, 94, and 108 Are Pleaded With The Particularity Required By The Reform Act, Which Does Not Support The Connetics Defendants' Motion To Strike ...................................................15

1.    The Reform Act ...................................................15

2.    The Complaint's Allegations Are Pleaded With Particularity And Are Not "Conclusory" ...................................................16

a.    Paragraph 92 ...................................................16

b.    Paragraph 94 ...................................................17

c.    Paragraph 108 ...................................................18

III.    CONCLUSION ...................................................19

1

# TABLE OF AUTHORITIES

2    **Cases**                                                                    **Page**

3    *In re Air Disaster at Lockerbie, Scotland*,

4        144 F.R.D. 618 (E.D.N.Y. 1992) ...........................................................14

5    *Berke v. Presstek, Inc.*,
        188 F.R.D. 179 (D.N.H. 1998) ........................................................12, 13

6
     *Bourjaily v. United States*,
7        483 U.S. 171 (1987)...........................................................................7

8    *In re Buca Inc., Sec. Litig.*,
        2006 WL 3030886 (D. Minn. Oct. 16, 2006) ................................13, 14
9
     *In re Connectics Corp. Sec. Litig.*,
10       2008 U.S. Dist. LEXIS 9634 (N.D. Cal. Jan. 29, 2008) ................. passim

11   *In re DaimlerChrysler AG Sec. Litig.*,
12       197 F. Supp. 2d 42 (D. Del. 2002)......................................................3

13   *In re Daou Sys.*,
        397 F.3d 704 (9th Cir. 2005) .........................................................9, 16
14
     *De La Fuente v. DCI Telecomms., Inc.*,
15       259 F. Supp. 2d 250 (S.D.N.Y. 2003)...........................................11, 12

16   *Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
17       2006 U.S. Dist. LEXIS 96378 (S.D. Cal. Feb. 3, 2006) ........................2

18   *In re Enron Corp. Sec. Litig.*,
        2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005) .....................10
19
     *Garr v. U.S. Healthcare*,
20       22 F.3d 1274 (3d Cir. 1994)..............................................................4

21   *Geinko v. Padda*,
22       2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002) ....................14, 15

23   *Gonzalez v. Mason*,
        2007 U.S. Dist. LEXIS 95090 (N.D. Cal. Dec. 17, 2007).......................5
24
     *Greenberg v. Sala*,
25       822 F.2d 882 (9th Cir. 1987) .............................................................8

26   *Holgate v. Baldwin*,
        425 F.3d 671 (9th Cir. 2005) .............................................................2
27
     *Kamerman v. Steinberg*,
28       113 F.R.D. 511 (S.D.N.Y. 1986) .........................................................3

## TABLE OF AUTHORITIES (cont.)

*Krim v. Banctexas Group*,
  99 F.3d 775 (5th Cir. 1996) ....................................................................................3

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  513 F.3d 702 (7th Cir. 2008) ...................................................................................9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003)....................................................................17

*Morris v. Wachovia Sec., Inc.*,
  2007 U.S. Dist. LEXIS 52675 (E.D. Va. July 20, 2007) .........................................4

*Morse v. Abbott Laboratories*,
  1991 U.S. Dist. LEXIS 6278 (N.D. Ill. May 7, 1991) ............................................3

*Nolte v. Capital One Fin. Corp.*,
  390 F.3d 311 (4th Cir. 2004) .............................................................................13, 14

*Patterson v. Apple Computer, Inc.*,
  256 Fed. Appx. 165 (9th Cir. 2007).......................................................................2, 5

*Pavelic & LeFlore v. Marvel Entm't Group*,
  493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989)..............................3, 4, 15

*In re Ramada Inns Sec. Litig.*,
  550 F. Supp. 1127 (D. Del. 1982)............................................................................3

*Refac Int'l, Ltd. v. Hitachi Ltd.*,
  1991 U.S. Dist. LEXIS 20733 (C.D. Cal. Dec. 23, 1991) .......................................4

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) .................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 2499, 127 S. Ct. 2499 (2007)..................................................................10

*Unioil, Inc. v. E.F. Hutton & Co., Inc.*,
  809 F.2d 548 (9th Cir. 1986) .............................................................................4, 15

**STATUTES**

15 U.S.C. §78u-4(b)(1)(B).................................................................................15, 16

15 U.S.C. § 78u-4(b)(2) ...........................................................................................16

15 U.S.C. § 78u-4(b)(3)(B)........................................................................................7

Fed. R. Civ. P. 11 ............................................................................................ passim

1

**TABLE OF AUTHORITIES** (cont.)

2  Fed. R. Civ. P. 11(b) .......................................................................................... passim

3  Fed. R. Civ. P. 12(b)(6) ...............................................................................................1

4  Fed. R. Civ. P. 12(f) ........................................................................................1, 2, 17

5  Fed. R. Evid. 201 .........................................................................................13, 14

6  Private Securities Litigation Reform Act of 1995 .........................................................1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I.    **INTRODUCTION**

2        Lead Plaintiff Teachers' Retirement System of Oklahoma ("Lead Plaintiff") respectfully

3    submits this Memorandum of Law in opposition to Defendants' motions to strike facts alleged in

4    the Second Amended Consolidated Class Action Complaint (the "Complaint").

5        The Complaint states claims for Defendants' violations of the federal securities laws and

6    further alleges that Lead Plaintiff conducted an extensive investigation into Defendants'

7    wrongdoing.    *See*  ¶¶42-61.[1]    Nevertheless, Defendants largely ignore Lead Plaintiffs'

8    investigation and instead recycle contentions that Defendant Yaroshinsky alone made when

9    moving to strike certain allegations in the previous complaint.   They do so for a transparent

10    reason:  Accepting the well-pled facts as true, as courts must when evaluating motions to dismiss

11    under Fed. R. Civ. P. 12(b)(6), Defendants' motions to dismiss fail.

12        In their motions to strike, Defendants do not address the requirements for striking

13    pleadings pursuant to Fed. R. Civ. P. 12(f).  Rather, Defendant Yaroshinsky attempts to invoke

14    Fed. R. Civ. P. 11(b), but he does without even addressing Rule 11(b)'s first prong.  The Ninth

15    Circuit holds that Defendant Yaroshinky must demonstrate that the Complaint is "factually

16    baseless," which is a standard he cannot meet.  *See infra* §II.A.2.   Even had Yaroshinsky

17    demonstrated Lead Plaintiff's claims are "factually baseless," which he has not, Lead Plaintiff's

18    investigation exceeds the requirements of Fed. R. Civ. P. 11.  *See infra* §II.A.3.

19        Apart from Defendant Yaroshinsky, the remaining Defendants do not attempt to invoke

20    Fed. R. Civ. P. 11.  Taking a different tact, the Connetics Defendants move to strike only three

21    paragraphs of the Complaint based on their contention that such allegations are not pleaded with

22    the particularity required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"

23    or the "Reform Act").  The PSLRA, however, provides no basis for striking the allegations, and,

24    moreover, the alleged facts do not remotely resemble the type of conclusory allegations that

25    courts have disregarded in cases governed by the Reform Act.   *See infra* §II.B.

26

27    _____

28    [1] References ¶ are to the Complaint.

In short, Defendants' motions to strike are legally unprecedented and based upon an inaccurate reading of the Complaint.

## II.    ARGUMENT

Fed. R. Civ. P. 12(f) authorizes the Court, upon the requisite showing, to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Though styled as motions to strike, Defendants ignore the requirements of Fed. R. Civ. P. 12(f).  The necessary proof is not easily established:  "To succeed on a motion to strike, one must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the complaint, and that to permit the allegations to stand would result in prejudice to the movant." *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2006 U.S. Dist. LEXIS 96378 (S.D. Cal. Feb. 3, 2006).

As set forth below, neither Fed. R. Civ. P. 11 nor the PSLRA supports Defendants' motions to strike the facts alleged in the Complaint.

### A.    The Complaint Complies With Fed. R. Civ. P. 11

#### 1.    Standards Under Rule 11

Fed. R. Civ. P. 11(b) requires "an inquiry reasonable under the circumstances . . . [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." "When, as here, a 'complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.'" *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).  *See also Patterson v. Apple Computer*, *Inc.*, 256 Fed. Appx. 165, 168 (9th Cir. 2007) (same).  "As shorthand for this test, we use the word 'frivolous' 'to denote a filing that is ***both*** baseless ***and*** made without a reasonable and competent inquiry." *Holgate*, 425 F.3d at 676 (emphasis in original).  Notably, it is extremely rare for courts to strike allegations pursuant to Rule 11.  Indeed, Defendants cite no authority from within this Circuit striking allegations in a complaint pursuant to Rule 11.

In assessing the reasonableness of a plaintiff's investigation under Rule 11(b), it is appropriate to consider "the nature of a securities fraud action is such that the information necessary to support the allegations of fraud must come primarily, if not exclusively, from discovery. . . ." *Krim v. Banctexas Group*, 99 F.3d 775, 779 (5th Cir. 1996) (overturning district court's imposition of Rule 11 sanctions). Accordingly, "a party should be given some leeway in making allegations about such matters, as long as the lawyer's investigation is otherwise reasonable." *Id*. For instance, a securities fraud plaintiff may satisfy his obligation to conduct a reasonable inquiry under Rule 11 and the PSLRA by relying upon an investigation performed by another, such as an exposé published in a major newspaper. *See, e.g., In re DaimlerChrysler AG Sec. Litig.*, 197 F. Supp. 2d 42, 80-81 (D. Del. 2002) (noting "the Court has been unable to locate any cases forbidding pleadings based on newspaper and media accounts" and holding "the Court concludes that Class Plaintiffs' allegations derived from reputable media sources and clearly identified as such in the Amended Class Complaint are sufficient to meet the requirement of the PSLRA"); *Morse v. Abbott Laboratories*, 1991 U.S. Dist. LEXIS 6278, at *4-5 (N.D. Ill. May 7, 1991) (holding "the court agrees that reliance on reliable news sources can constitute a reasonable investigation, especially in a case like this one which alleges that material information was not made available to the public" and stating that "[a] further investigation consisting of consultation with an expert was unnecessary at this pre-discovery stage"); *Kamerman v. Steinberg*, 113 F.R.D. 511, 515 (S.D.N.Y. 1986) ("reliance on the newspaper articles cited is sufficient to meet the requirements of Rule 11"); *In re Ramada Inns Sec. Litig.*, 550 F. Supp. 1127, 1135 (D. Del. 1982) ("plaintiffs' attorneys, even if relying solely on information from the *Wall Street Journal* to support this category of claims, have satisfied their obligation under Rule 11").

This Court previously ruled, when evaluating a different complaint, that allegations in reliance on an SEC complaint were deficient because "an attorney has a 'nondelegable responsibility' to 'personally … validate the truth  and legal reasonableness of the papers filed." *In re Connetics Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 9634, at *22 (N.D. Cal. Jan. 29, 2008) citing *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126, 110 S. Ct. 456, 107 L. Ed.

2d 438 (1989). While an attorney has a nondelegable responsibility to investigate, it is also true that, even after *Pavelic*, "under Rule 11, an attorney may rely on other attorneys for factual assertions, if that reliance is reasonable." *Morris v. Wachovia Sec., Inc.*, 2007 U.S. Dist. LEXIS 52675 (E.D. Va. July 20, 2007). *See also Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 558 (9th Cir. 1986) (an attorney may rely on another attorney's inquiry if the signing attorney "acquire[s] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact."); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 1991 U.S. Dist. LEXIS 20733, at *3 (C.D. Cal. Dec. 23, 1991) (denying Rule 11 motion and holding that, where reasonable, "counsel should be permitted to rely upon other attorneys"). As explained by the Third Circuit:

> A signer's obligation personally to comply with the requirements of Rule 11 clearly does not preclude the signer from any reliance on information from other persons. For example, no one could argue fairly that it would be unreasonable for an attorney to rely on witnesses to an accident before bringing a personal injury action. After all, the accident hardly can be reconstructed for the benefit of a plaintiff's attorney. Similarly, an attorney is not always foreclosed from relying on information from other persons. Thus, in *CTC Imports and Exports*, we stated that a determination of whether there has been "'a reasonable inquiry may depend on . . . whether [the signer] depended on forwarding counsel or another member of the bar.'"

*Garr v. U.S. Healthcare*, 22 F.3d 1274, 1278-1280 (3d Cir. 1994) (imposing Rule 11 sanctions upon attorneys who did not read publicly available documents, but not imposing sanctions upon an attorney who relied upon, among other things, an article in *The Wall Street Journal*).

Applying the foregoing standards, the Complaint unquestionably complies with Rule 11. As set forth in the following two sections, Lead Plaintiff conducted an investigation to establish that the facts set forth in the SEC complaint are true and correct and premised upon a strong foundational basis. The facts set forth in the SEC complaint are corroborated by former Connetics employees. ¶43(a)-(l). The complaint itself is a detailed document, demonstrating that the SEC conducted an extensive investigation. ¶48. The record in the SEC action – including Defendants' answers, the court's factual findings when approving a temporary restraining order, and affidavits filed by the SEC – demonstrate the facts in the SEC complaint are accurate. ¶¶44-47, 52-55. And, Defendants in this action have admitted to the accuracy of many of the facts set forth in the SEC Complaint. ¶¶50, 53, 56-61. As set forth below, Lead

Plaintiff more than sufficiently satisfies the requirements of Rule 11.

### 2. Defendants Have Not Attempted To, And Cannot, Establish That The Complaint's Allegations Are "Factually Baseless"

Defendants cannot successfully move pursuant to Rule 11(b) to strike facts alleged in the Complaint because Defendants cannot establish the first predicate requirement for such a motion: Defendants cannot show, as the Ninth Circuit requires, that Lead Plaintiff's claims are "factually baseless from an objective perspective. . . ." *Patterson*, 256 Fed. Appx. at 168. Indeed, no Defendant has even attempted to address this requirement.

### a. Judge Mukasey Determined That The Allegations Are Not Factually Baseless

Far from being "factually baseless from an objective perspective," the allegations that Defendants now move to strike have been found well-based and sufficiently credible by the former Chief Judge of the Southern District of New York, the Honorable Michael B. Mukasey, to warrant a temporary restraining order freezing the assets of Defendant Yaroshinsky. ¶52. In moving for the temporary restraining order, the SEC demonstrated through both factual evidence and its investigation that the SEC complaint has a demonstrable factual basis. ¶¶46-47, 51. As this Court has recognized, a temporary restraining order may issue only upon a showing of a "likelihood of success on the merits." *Gonzalez v. Mason*, 2007 U.S. Dist. LEXIS 95090, at *2-3 (N.D. Cal. Dec. 17, 2007) (denying temporary restraining order upon "weak evidentiary showing"). Therefore, in granting the SEC's temporary restraining order, Judge Mukasey found the SEC had established a likelihood of success on the merits in proving Defendant Yaroshinsky traded illegally based on the facts alleged in the SEC complaint. Indeed, rather than asserting the allegations were factually baseless before Judge Mukasey, Defendant Yaroshinsky stipulated to the imposition of a preliminary injunction freezing the proceeds of his insider sales. ¶52. Inconsistently, Defendant Yaroshinsky now asks this Court to assume that the SEC complaint utterly lacks any basis.

As court documents, including sworn declarations, demonstrate that the allegations in the SEC complaint have ample factual basis, and Judge Mukasey has ruled that the claims are likely

to succeed on the merits, Defendants cannot now have the Court strike facts alleged in the Complaint as "factually baseless" pursuant to Rule 11(b).

### b.  Defendants Have Admitted Certain Of The Allegations Are True

Despite the seeming absurdity of it, Defendant Yaroshinsky now moves to strike as "factually baseless" allegations that he and additional defendants have admitted are true.  For instance, as set forth in the Complaint, Defendant Yaroshinsky has answered the SEC Complaint and admitted to certain facts alleged therein.  ¶53.  Yaroshinsky admits to participating in both the June 28, 2004 meeting with Connetics panel of experts and the April 13, 2005 conference call with the FDA concerning the ECAC's preliminary findings.  *Id.*  Yaroshinsky admits to calling Defendant Victor Zak after the conference call with the FDA and that the Company imposed trading bans upon persons on the call.  *Id.*  He further admits to selling Connetics common stock and purchasing Connetics puts in the time period and amounts set forth in the SEC's complaint, including trades on April 21, 2005, April 26, 2005, and April 27, 2005.  *Id.* Defendant Yaroshinsky further admits to opening a brokerage account in the name of his mother-in-law and that he controlled the account and funded the account.  *Id.*

Similarly, Defendant Zak initially answered the First Amended Complaint in this action and admitted to certain of the facts alleged therein (such as the dates he traded in Connetics stock and puts).  ¶60.  Moreover, Defendant Zak has settled with the SEC for an amount (including prejudgment interest) exceeding his total gains from his illegal selling activities.  ¶¶55, 332. Notably, after moving to dismiss the Complaint here, Defendant Yaroshinsky entered into a consent decree with the SEC, in which he agreed to disgorge $354,927, plus prejudgment interest of $84,275, and a civil penalty of $283,798.  Yaroshinsky is disgorging $138,569 on his own trades and $216,358 in disgorgement that defendant Zak was unable to pay.

Connetics has likewise admitted that many of the facts set forth in the SEC complaint are correct.  The Company's General Counsel admitted in a 2006 interview that the SEC's initial complaint did not contain any information the Company did not already know.  ¶53.  The Company has admitted the FDA did not approve Velac exclusively because of the results of the

Tg.AC Mouse Study. ¶57. Indeed, Defendant Wiggans, speaking on behalf of the Company during an analyst conference call, admitted that the Velac vehicle had a "positive" result in a transgenic mouse study and that before submitting its application to the FDA, the Company convened a panel of experts and "carefully analyzed the results" of that study with the panel. ¶58.

Despite Defendants admitting these and other facts, Defendant Yaroshinsky moves to strike these same facts from Lead Plaintiff's Complaint pursuant to Rule 11. There is absolutely no basis in the law for doing so. Nor does Defendant Yaroshinsky provide this Court with any explanation for why these admitted facts are "factually baseless" as the Ninth Circuit requires.

Though Connetics does not address its General Counsel's admission that the facts set forth in the SEC's initial complaint were already known to the Company (*see* ¶50), Defendant Yaroshinsky does. Yaroshinsky asserts that Connetics' admission "provides no basis for an admission by Dr. Yaroshinsky. . . ." Yaroshinsky MTS at 5. This argument misses the point. Lead Plaintiff need not establish that Yaroshinsky has admitted to a specific fact before pleading that fact. Rather, Connetics' admission establishes that Connetics – who has access to all of the relevant facts that Lead Plaintiff cannot obtain through discovery because of the mandatory stay imposed by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B) – corroborates the alleged facts.

### c.    Numerous Other Factors Confirm The Allegations Are Not Factually Baseless

The SEC's allegations are consistent with, and corroborated by, numerous former employees of the Company that Lead Counsel interviewed as part of its investigation. ¶43(a)-(f). *See, e.g. Bourjaily v. United States*, 483 U.S. 171, 179-80 (1987) (corroborating sources strengthen reliability of evidence). For instance, according to a former employee in Connetics' Strategic Market Planning Group who was a friend of Yaroshinsky, in late 2003 or 2004, Dr. Xinfan Huang (Director of Pharmacology and Toxicology and led-pre-clinical scientist for the Mouse Study) gave a presentation concerning the Mouse Study and it was clear that there were high incidences of tumors in the mice in the study. ¶43(d). Moreover, according to a former National Account Director at Connetics, Yaroshinsky was in charge of overseeing the pre-

clinical testing for Velac – including oversight of the Mouse Study. ¶43(c). And, according to a former Connetics Senior Manager of Regulatory Affairs, whose job it was to handle dealings with the FDA and who attended the Company's meeting with the FDA on April 13, 2005, the FDA made it clear that it did not look good for obtaining approval of Velac. ¶43(f). These facts, and others provided by former Connetics employees, independently verify and corroborate the facts set forth in the SEC complaint.

### 3.    Lead Plaintiff's Independent Investigation Of The Facts Satisfies Rule 11

#### a.    Lead Plaintiff Conducted A Reasonable Inquiry

As set forth in §II.A.2.c., Lead Plaintiff has independently investigated the facts set forth in the SEC complaint through alternative sources such as former Connetics employees with first hand knowledge of the events at issue. *See* ¶43. Further, Lead Plaintiff has consulted with an expert, reviewed extensive literature concerning Tg.AC mouse testing, reviewed evidence and other filings in the action styled *United States Securities and Exchange Commission v. Alexander J. Yaroshinsky*, and taken other steps to investigate and ensure the accuracy of Lead Plaintiff's claims. *See generally* ¶42.

Rule 11 requires a "reasonable" investigation under the circumstances. Here, in assessing the reasonableness of Lead Plaintiff's investigation, the Court should consider that Lead Plaintiff has been prevented from obtaining certain information.[2] Lead Plaintiff has not been afforded any discovery, and information is unavailable through informal means. On January 5, 2007, Lead Plaintiff filed with the Food and Drug Administration a request for information concerning Velac's non-approval from the Food and Drug Administration. ¶42. Likewise, counsel for Lead

---

[2] "Generally, if pertinent facts are lodged in the possession of opponents or uncooperative third parties, or are otherwise not readily available, to the presenter, the courts will recognize that as a practical limitation on what a reasonable inquiry may include. If data are not accessible, a presenter cannot be faulted for failing to obtain or review them." Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse, Third Ed. at §8(A)(4) (1994). *See also Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) ("we are reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, if the litigant has conducted a reasonable inquiry into the facts").

Plaintiff contacted the SEC, which is unwilling to cooperate at this time, and also contacted the members of the panel of experts convened by the Company on June 28, 2004, all of whom signed confidentiality agreements that they believe preclude them from providing Lead Plaintiff with certain information. *Id.* While Lead Plaintiff has a more than sufficient basis for each allegation in the Complaint, Lead Plaintiff believes further evidence will support Lead Plaintiff's allegations.

**b.      Having Conducted A Reasonable
Inquiry, Lead Plaintiff May Properly Rely
Upon The SEC Complaint As But One
Of Many Sources Supporting Its Allegations**

As set forth above, Lead Plaintiff does ***not*** rely entirely upon the SEC Complaint as the sole basis for its allegations. Lead Plaintiff has independently verified and investigated the facts set forth in the Complaint. As the Court explained in its January 29, 2008 Order, this is acceptable under Rule 11: "When drafting a complaint, an attorney may rely in part on other sources, such as a newspaper article [ ], as part of his or her investigation into the facts . . . ." *Connetics Corp.*, 2008 U.S. Dist. LEXIS 9634, at *19-20. Accordingly, to the extent that Defendants move to strike certain allegations in the Complaint on the basis that these allegations are consistent with the language of the SEC complaint (*see, e.g.* Connetics MTS at 5), the Motions are without basis. The mere fact that Lead Plaintiff has based them upon the SEC complaint ***in part*** (and stated as much) is not improper.

**c.      Even Assuming Lead Plaintiff Had
Not Conducted An Independent
Inquiry, Which It Did, Lead Plaintiff
May Rely Upon The SEC Complaint**

**(1)      A Plaintiff May Plead On The
Basis Of A *Reliable* Source – Even
A Court Filing Created By Another**

In pleading a securities fraud, defrauded investors may rely upon any reliable source of information. The question is whether the plaintiff is relying upon a source in a position likely to have had access to the information attributed to that source. *See, e.g., In re Daou Sys.*, 397 F.3d 704, 711 (9th Cir. 2005) ("sources of information relied upon in a complaint should be 'described in the complaint with sufficient particularity to support the probability that a person in

the position occupied by the source would possess the information alleged"); *accord Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 711-12 (7th Cir. 2008) (Posner, J.), *on remand from Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 2499, 127 S. Ct. 2499 (2007).    Here, there can be no doubt that the SEC – having conducted an extensive, well-documented investigation – was in a position to know the facts that it publicly set forth in the SEC complaint and which Lead Plaintiff obtained from it for the purposes of its Complaint.

In *In re Enron Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005), the Honorable Melinda Harmon of the Southern District of Texas rejected arguments similar to those made by Defendants in the action before this Court.  In *Enron*, defendant Royal Bank of Canada argued that plaintiffs' complaint improperly relied upon factual findings made by the Enron bankruptcy examiner, which were insufficient to state a claim under the PSLRA or to satisfy plaintiffs' Rule 11 obligations.  Defendant argued:

> These bankruptcy examinations were not conducted to determine if there was securities fraud involving Enron and thus they lack the requisite particularity to state securities law violations.  Moreover, charge RBC Defendants, ***the complaint is not based on Plaintiff's independent, personal investigation of the facts that form the basis of the suit, but "piggybacks on contested hearsay allegations by a third party," circumventing Rule 11***.

*Id.* at *22, fn. 11.  Even though the *Enron* plaintiffs did not perform any independent investigation, Judge Harmon concluded the plaintiffs could rely entirely upon the Enron bankruptcy examiner's report to state a claim.  In particular, Judge Harmon (i) detailed the examiner's duties under the bankruptcy code (*id.* at *35-40); (ii) noted the bankruptcy examiner's report was "a central part of the complaint" (*id.* at *35); (iii) concluded the bankruptcy report was documentary evidence satisfying the PSLRA's particularity requirements as articulated by the Fifth and Second Circuits (*id.* at *23 n.11); and, (iv) Judge Harmon denied the motion for dismissal (*id.* at *74).

In this action, the SEC complaint, like the examiner's report in *Enron*, is a court document evidencing a thorough investigation into the Defendants' wrongdoing, and it is a reliable source of information upon which Lead Plaintiff may rely to plead a claim.  Lead Plaintiff's own investigation provides numerous indicia of the reliability of the SEC complaint,

1    including, among others: (i) the SEC performed an extensive investigation in connection with

2    this case, as it documented in a sworn declaration (¶47); (ii) the SEC investigation uncovered a

3    great deal of specific evidence of wrongdoing, which is well-documented in great detail in the

4    SEC complaint including the quotation from internal Connetics documents (¶48); (iii) the

5    Company admitted to assisting the SEC in its investigation of Yaroshinsky's trading (¶49); (iv)

6    the Company admitted the initial SEC complaint did not include "any information the company

7    didn't previously know" (¶50); (v) the SEC deposed Connetics employees as part of its

8    investigation, including witnesses interviewed during Lead Plaintiff's investigation (¶51); (vi) in

9    granting the temporary restraining order, Judge Mukasey found the SEC was likely to succeed on

10   the merits of its allegations in the SEC complaint (¶52); (vii) Defendant Yaroshinsky conceded

11   the allegations are not baseless in stipulating to having his assets frozen (¶52); and (viii)

12   Defendants Zak and Yaroshinsky settled with the SEC in an amount indicating they believed

13   they could not justify their actions (¶55).  Moreover, as the foremost federal governmental entity

14   obligated to investigate violations of the federal securities laws, the SEC's division of

15   enforcement is empowered to and required to conduct a thorough investigation and obtain

16   approval from the Commission before filing a complaint.  ¶45.

17          These indicia of reliability further confirm that the Complaint's allegations are not mere

18   speculation, innuendo, or the unsupported "hearsay" of another attorney.

19                          **(2)    A Plaintiff May Rely Upon Facts (Not
                                    Conclusions) Set Forth With Particularity
20                                  In An SEC Complaint, Even Without
                                    <u>Conducting An Independent Investigation</u>**
21
22          As set forth herein and in the Complaint at ¶¶42-61, Lead Plaintiff has conducted a

23   thorough investigation of the facts.  Such an investigation exceeded the requirements of Rule 11.

24   As explained below, the rule does not require an independent investigation because the SEC

     Complaint provides ample evidentiary support to form the basis of Lead Plaintiff's allegations.

25          In *De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003), the

26   Honorable Colleen McMahon of the Southern District of New York rejected the very same

27   arguments that Defendants make here.  In *De La Fuente*, defendants asserted plaintiffs violated

28

Rule 11 and the PSLRA because their complaint "simply copies the SEC complaint" and is "based only on the word of the SEC." *Id.* at 259.  In response, the *De La Fuente* plaintiffs proffered two separate and independent lines of defense: (i) it is proper under Rule 11 and the PSLRA to rely upon an SEC complaint, and (ii) the plaintiffs had performed an independent investigation.  *Id.* at 260.  The *De La Fuente* court agreed with the *De La Fuente* plaintiffs, finding that the first prong of the *De La Fuente* plaintiffs' argument was sufficient in-and-of itself to satisfy Rule 11; namely, a plaintiff may rely upon the allegations made in an SEC complaint without conducting any independent verification:

> I agree with plaintiff that ***there is nothing improper about utilizing information from the SEC as evidence to support private claims***.  Indeed, as plaintiff notes "it would have been irresponsible for plaintiff to have ignored the SEC's highly relevant allegations and findings." (Plaintiff's Opp., p. 4.).  The striking similarity between the SEC's allegations and plaintiff's allegations does not demonstrate that plaintiff lacked evidentiary support. ***Rather, the SEC allegations provided plaintiff with evidentiary support.***  The PSLRA does not require that a plaintiff re-invent the wheel before filing a complaint; and one could argue that a complaint predicated on the results of an SEC investigation has far more "evidentiary support" than one based on rumor and innuendo gleaned from "Heard on the Street."

> Having made this observation, ***it is unnecessary for me to go on and make findings on the adequacy of the independent verification efforts chronicled in counsel's affidavits. . . .***[3]

Here, Lead Plaintiff has conducted a thorough, independent investigation.  However, even assuming, *arguendo*, Lead Plaintiff had not, *De La Fuente* established that a plaintiff may rely upon an SEC complaint to satisfy both Rule 11 and the PSLRA.

In *Berke v. Presstek, Inc.*, 188 F.R.D. 179 (D.N.H. 1998), the court denied defendants' motion to strike plaintiffs' allegations based upon a consent decree entered into between defendants and the SEC.  While the court found the matters taken from the consent decree were inadmissible at trial for the purposes of proving liability, the court concluded defendants' motion to strike was without basis because the consent decree set forth relevant facts:

---

[3] *De La Fuente*, 259 F. Supp. 2d at 260.  In its January 29, 2008 Order, the Court states that the plaintiff in *De La Fuente* had stated "that every allegation in the complaint was verified by plaintiff's counsel through independent investigation."  *Connectics Corp.*, 2008 U.S. Dist. LEXIS 9634, at *21.  That observation in *De La Fuente* was not the basis for the decision.  As quoted above, plaintiffs' reliance on the SEC complaint satisfied Rule 11(b).

> It would not be appropriate to make evidentiary determinations at this preliminary pleading stage in the context of a motion to strike. Instead, the question properly posed is whether references in the complaint to the SEC's consent decrees have any bearing on issues in this suit – not whether the allegations and exhibits attached to the complaint are, or might be, competent evidence if offered at trial. Since the consent decrees operate to settle disputes about the same or similar conduct by some parties to this action, the SEC proceedings and consent decrees are, generally, sufficiently related to plaintiffs' claims to survive defendants' motion to strike. In addition, defendants have not shown any possible prejudice.

*Id.* at 180-181.

### 4.   Defendant Yaroshinsky Cites No Persuasive Authority That Would Support His Motion To Strike Pursuant To Rule 11

Defendant Yaroshinsky cites merely three opinions in his entire brief – none from within this Circuit. Not one of these authorities is on point.

In *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311 (4th Cir. 2004), cited at page 3 of the Yaroshinsky MTS, "the SEC commenced a civil action" during the pendency of the plaintiffs' appeal and the plaintiffs "asked the Court to take judicial notice of the complaint and the facts alleged therein." *Id.* at 317. The Fourth Circuit refused to take judicial notice of the facts set forth in the SEC's complaint, holding: "Only indisputable facts are susceptible to judicial notice. . . . . Although the filing of an SEC complaint against Willey is indisputable, the facts alleged therein are not. A court cannot take notice of (and so assume the truth of) mere allegations . . . ." *Id.* In this action, the issue before the Court is entirely different. Lead Plaintiff has not requested the Court take judicial notice of the SEC Complaint; nor has Lead Plaintiff sought the introduction of new evidence on appeal. *Nolte v. Capital One* does not once mention Rule 11, nor does it address any of the operative issues posed by Yaroshinsky's motion to strike, including the issue of whether a plaintiff may properly rely upon the findings of an SEC investigation in drafting a pleading. Accordingly, *Nolte v. Capital One* is inapposite.

In *In re Buca Inc., Sec. Litig.*, 2006 WL 3030886 (D. Minn. Oct. 16, 2006), cited at page 3 of the Yaroshinsky MTS, as in *Nolte*, the plaintiffs "request[ed] that the Court take judicial notice of 11 documents . . . include[ing] two civil complaints filed by the SEC. . . ." *Id.* at *1 n1. Recognizing that "Rule 201 of the Federal Rules of Evidence permits the Court to take judicial notice of a fact that is not subject to reasonable dispute[,]" the court ruled that it could not take

judicial notice of the documents because they were "being offered to prove the truth of the matters asserted in them and are disputed by Defendants." *Id.* Like *Nolte*, *Buca* does not once mention Rule 11 or address the operative issues here and is therefore inapposite.

Apparently unaware of the inconsistency in his dual positions, Yaroshinsky has moved the Court to take judicial notice of the SEC Complaint (attached as Exhibit A to the Declaration of Gerard A. Trippitelli) while at the same time Yaroshinsky cites *Buca* and *Nolte* – which stand for the proposition that a court may not take judicial notice of an SEC complaint if the facts set forth in the complaint are subject to dispute.

The final opinion relied upon by Yaroshinsky is *Geinko v. Padda*, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002). Yaroshinsky cites *Geinko* for the proposition that "allegations from complaints in other cases, including case[s] filed by SEC, are *hearsay*." Yaroshinsky MTS at 3. The *Geinko* court relied upon the rules of evidence in refusing to consider allegations based on complaints filed in other actions. 2002 U.S. Dist. LEXIS 3316, at *22 ("the *hearsay* allegations that Plaintiffs offer in their Amended Complaint are improper, and therefore superfluous, and they will not be considered"). *See also id.* at *23 ("In this case, while Plaintiffs do not take facts from newspapers but from other complaints in which arguably Rule 11 applied, it is still *hearsay* . . . ."). Here, however, this Court correctly ruled that evidentiary objections do not apply to pleadings: "[P]leadings need not contain admissible evidence. The Court therefore agrees with plaintiffs that there is no basis to strike on evidentiary grounds." *Connetics Corp.*, 2008 U.S. Dist. LEXIS 9634, at *19.

Moreover, the holding of *Geinko* cannot be reconciled with the rules governing pleadings under the Federal Rules of Civil Procedure. *See, e.g., In re Air Disaster at Lockerbie, Scotland*, 144 F.R.D. 618, 621 (E.D.N.Y. 1992) (denying motion for Rule 11 sanctions, stating "parties and their attorneys may base their complaints and their requests for discovery on . . . hearsay reports and statements of others until such time, if ever, as they are satisfied that the statements and other evidence are not competent or are otherwise untrustworthy."). Were other courts to adopt the holding of *Geinko*, defrauded investors would be limited to pleading information personally known to them through first hand observations, which is not the law.

In its earlier ruling in this case, the Court cited *Geinko* and *Pavelic*, 493 U.S. at 125-127, to find that "it would make little sense that an attorney 'somehow can rely on the analysis of attorneys in different actions and who are presumably from different law firms.'" *Connetics Corp.*, 2008 U.S. Dist. LEXIS 9634. However, *Geinko's* reading of *Pavelic* is distinguishable from the facts here. As set forth above, under Rule 11, an attorney may rely on another attorney's inquiry so long as the signing attorney "acquire[s] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact." *Unioil, Inc.,* 809 F.2d at 558. Here, Lead Counsel has acquired such knowledge through an extensive analysis and determined that the SEC complaint is well-grounded in fact. In *Pavelic*, not only had the attorney improperly relied upon another counsel's investigation but the court found that the allegations had no basis. *Pavelic*, 493 U.S. at 122 ("the forgery claim had no basis in fact"). As there can be no reasonable assertion that the claims here have no basis in fact, both *Geinko* and *Pavelic* are inapposite and cannot be the basis for a motion to strike.

**B.     Paragraphs 92, 94, and 108 Are Pleaded
With The Particularity Required By The
Reform Act, Which Does Not Support
The Connetics Defendants' Motion To Strike**

The Connetics Defendants move to strike paragraphs 92, 94 and 108 of the Complaint, contending that such allegations fail to plead with the particularity required by 15 U.S.C. §78u-4(b)(1)(B). Connetics MTS at 1. The Connetics Defendants fail to cite any authority in which any court has stricken allegations pursuant to the Reform Act generally or 15 U.S.C. §78u-4(b)(1)(B) in particular. The Connetics Defendants set forth no basis for striking Lead Plaintiff's allegations. To the contrary, the Connetics Defendants employ their Motion to Strike for the ulterior purpose of arguing (again) that Lead Plaintiff's "allegations fall far short of the Reform Act's particularity requirement. . . ." Connetics MTS at 2. As set herein, and as set forth in Lead Plaintiff's Opposition to the Motions to Dismiss, the Complaint amply satisfies the Reform Act's particularity requirements.

**1.     The Reform Act**

The PSLRA requires that a plaintiff's "complaint shall specify each statement alleged to

have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Further, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "'Particularity' refers to 'the quality or state of being particular,' i.e., 'dealing with or giving details; detailed; minute; circumstantial.' Thus, . . . the statutory command that a plaintiff plead all the 'facts' with 'particularity' [ ] mean[s] that a plaintiff must provide a list of all relevant circumstances in great detail." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999).

In assessing the sufficiency of Lead Plaintiff's allegations, the Court must consider whether Lead Plaintiff's source of the information is reasonably likely to possess the information attributed to it. *See, e.g. Daou*, 397 F.3d at 711. Here, Defendants have not demonstrated any basis upon which to conclude that either the SEC (or Lead Plaintiff's other sources) were not in a position to obtain the information attributed to them in the Complaint.

### 2. The Complaint's Allegations Are Pleaded With Particularity And Are Not "Conclusory"

#### a. Paragraph 92

In ¶92, Lead Plaintiff pleads that, according to the SEC, the Company learned the results of the Mouse Study by no later than mid-June 2004, that 89 out of 160 mice in the study developed tumors, and, according to CW4, Higgins and Wiggans knew about the results. The positive Mouse Study results are corroborated by a former employee (¶43(d)), and the Company has admitted to having a "positive carcinogenicity signal" in a mouse test (¶57). Lead Plaintiff's allegations are detailed and particularized, including the exact number of mice that developed tumors, the date the results were known, and the source of Lead Plaintiff's information.

The Connetics Defendants erroneously assert: "As with its prior complaint, plaintiff's conclusory allegations regarding the Tg.AC study also fall far short of the level of particularity required by the Reform Act." Connetics MTS at 6. (Defendants Yaroshinsky and Zak do not

1    challenge this allegation.)   The allegations set forth in ¶92 are particularized, and hardly

2    "conclusory."   Conclusory allegations, unlike those here, "express[] a factual inference without

3    stating the underlying facts on which the inference is based."   Blacks Law Dictionary, 8th Ed.

4    Here, Lead Plaintiff did not infer that 89 of 160 mice developed tumors; this fact is known

5    through an independent source.   As such, ¶92 does not contain conclusory allegations and the

6    Connetics Defendants' argument should be rejected.[4]

### b.    Paragraph 94

8          In ¶94, Lead Plaintiff pleads that the Company convened a panel of toxicology experts on

9    June 28, 2004 concerning the results of the Mouse Study, the members of the panel were

10   required to sign confidentiality agreements, and that the panel collectively told the Company that

11   it did not know of any drug that exhibited a positive dermal similar to Velac that ever had been

12   approved by the FDA.

13         The Connetics Defendants argue Lead Plaintiff provides no corroborating witness or

14   document and that Lead Plaintiff's allegations are "belied by the fact that other acne drugs have

15   been approved despite a positive response in the Tg.AC model."   Connetics MTS at 8.

16   Defendants are incorrect and miss the point.   Merely because some other medication tested

17   positive and was approved (after unspecified further testing) by the FDA does not mean that that

18   medication had a test result *similar* to Velac or that Velac would not require at least further time-

19

---

20   [4]  With regard to ¶92, the Connetics Defendants rely upon *In re Merrill Lynch & Co. Research
21   Reports Sec. Litig.*, 273 F. Supp. 2d 351, 369 (S.D.N.Y. 2003) for the proposition that the Court
     may strike "paragraphs that refer to or rely on SEC and other complaints[.]"   Connetics MTS at
22   7.  Defendants mischaracterize the holding of *In re Merrill Lynch*.  **First**, in *In re Merrill Lynch*,
     defendants moved to strike allegations as "*immaterial* under Rule 12(f)" because plaintiffs
23   included numerous *generalized* references to news reports concerning defendants' purported
     conflicts of interests that did not necessarily pertain to the case before the court.  273 F. Supp. 2d
24   at 369.  Here, the Connetics Defendants do not move pursuant to Rule 12(f).  Moreover, the
     Connetics Defendants cannot possibly claim that the allegation 89 of 160 mice developed tumors
25   is a generalized or immaterial allegation to the case here.  None of the Defendants asserts ¶92
     contains "redundant, immaterial, impertinent, or scandalous matter" as set forth in Rule 12(f); *in
26   re Merrill Lynch* is inapposite.  **Second**, Defendants fail to note that the court in *In re Merrill
     Lynch* did not strike any paragraphs in the plaintiffs' complaints.  To the contrary, while the
27   court considered doing so, it ultimately denied defendants' request.  273 F. Supp. 2d at 369.
     Because defendants in *In re Merrill Lynch* moved on completely different grounds and because
28   the court refused to strike any allegations in the case, *In re Merrill Lynch* hardly supports
     Defendants' motions to strike.

consuming tests.  *See* Lead Plaintiff's Opposition to Defendants' Motions to Dismiss at 10-11, 13-14; Lead Plaintiff's Opposition to Defendants' Request for Judicial Notice at 10-12.  The novel vehicle in Velac caused tumors in 56% of mice treated.  ¶92.  Velac's level of tumor development was far more than the 20% level considered significant by experts in the field, including on Connetics' own panel.  ¶96.  Defendants have put forth no evidence that any other drug was ever approved by the FDA that exhibited this level of tumor promotion.

Lead Plaintiff's allegations are corroborated by an expert in the field and a former Connetics employee.  According to an expert toxicologist who was a member of the Connetic's expert panel, the FDA would ***not*** approve a drug that had positive results in the Tg.AC study without further testing (¶97), which Connetics had not performed.  *See also* ¶98 (former employee stating, once Company learned the results of the Tg.AC Mouse Study it could not get approval without doing a two year CARC study).  Defendants have proffered no evidence indicating that any of the other acne medications that tested positive in a Tg.AC test were later approved by the FDA without conducting further testing proving the drug was not a carcinogen – which Connetics had not performed.[5]

### c.     Paragraph 108

In ¶108, Lead Plaintiff pleads that the Company held a conference call with the FDA on April 13, 2005 and that, according to the SEC and the Company's former Senior Manager of Regulatory Affairs (CW6), the FDA told Connetics that the positive dermal in the Mouse Study was a serious impediment to the approval of Velac.  The Connetics Defendants argue that CW6's account of what the FDA told Connetics "actually contradicts" the SEC's findings.  Connetics MTS at 9.  That simply is not true.  CW6 personally attended the April 13, 2005 call, during which the FDA made it clear that it did not look good that Velac would be approved.  ¶¶43(f), 108.  CW6's account substantially corroborates the SEC's finding that the FDA specifically told Connetics the Mouse Study results are a "serious issue for a topical product for the treatment of

---

[5] Connetics asserts that Duac and BenzaClin tested positive and were approved subject to post-approval Phase IV carcinogenicity testing. Connetics MTD at 9.  This assertion is fundamentally flawed.  *See* Lead Plaintiff's Opposition to Defendants' Motions to Dismiss at 13-14.

1  acne." ¶108.  CW6's credibility as a corroborating witness is in no way undermined by the fact

2  that CW6 did not remember the exact words that the FDA used to inform Defendants of its

3  impending non-approval decision.  Paragraph 108 is hardly a conclusory or non-particularized

4  allegation.

## III.  CONCLUSION

6        For the reasons set forth herein, Lead Plaintiff respectfully requests that this Court deny

7  Defendants' motions to strike.

8  Dated: June 20, 2008                    Respectfully submitted,

9                                          BERNSTEIN LITOWITZ BERGER
                                              & GROSSMANN LLP

11

12                                          */s/ David R. Stickney*
                                            DAVID R. STICKNEY
13                                          DAVID R. STICKNEY
                                            MATTHEW P. SIBEN
14                                          TAKEO A. KELLAR
                                            12481 High Bluff Drive, Suite 300
15                                          San Diego, CA 92130
                                            Tel:    (858) 793-0070
16                                          Fax:    (858) 793-0323
                                                    -and-
17                                          CHAD JOHNSON
                                            1285 Avenue of the Americas, 38th Floor
18                                          New York, NY 10019
                                            Tel:    (212) 554-1400
19                                          Fax:    (212) 554-1444

20                                          Attorneys for Lead Plaintiff Teachers' Retirement
                                            System of Oklahoma and Lead Counsel to the Class

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Kristina L. Sousek, do hereby certify that on this 20th day of June, 2008, a true and correct copy of the foregoing

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

was filed electronically.  Those attorneys who are registered with the Electronic Case Filing ("ECF") System may access this filing through the Court's system, and notice of this filing will be sent to the parties by operation of the Court's ECF System.  Attorneys not registered with the Court's ECF system will be duly and properly served via Federal Express or U.S. Mail (as indicated on the attached Service List), in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules.

I further declare that, pursuant to Civil L.R. 23-2, on this date I served copies of the above documents on the Securities Class Action Clearinghouse by electronic mail through the following electronic mail address provided by the Securities Class Action Clearinghouse:

**jcarlos@law.stanford.edu**

*/s/Kristina L. Sousek*
Kristina L. Sousek

**Service List**

In re CONNETICS SECURITIES LITIGATION
Case No.: 07-02940

| COUNSEL FOR CONSOLIDATED PLAINTIFF FISHBURY LIMITED | |
|---|---|
| Jean-Marc Zimmerman<br>Eduard Korsinsky<br>Pamela Lynam Mahon<br>**ZIMMERMAN, LEVI<br>& KORSINSKY LLP**<br>39 Broadway, Suite 1601<br>New York, NY 10006<br>Tel: 212-363-7500<br>Fax: 212-363-7171<br>ek@zlk.com<br>jmzimmerman@zlk.com<br>pmahon@zlk.com<br><br>*Via ECF* | |
| **COUNSEL FOR CONSOLIDATED PLAINTIFF BRUCE GALLANT** | |
| Evan J. Smith<br>**BRODSKY & SMITH LLC**<br>240 Mineola Blvd.<br>Mineola, NY 11501<br>Tel: 516-741-4977<br><br>*Via U.S. Mail* | |
| **COUNSEL FOR CONSOLIDATED PLAINTIFF MARCUS A. SEIGLE** | |
| Catherine A. Torell<br>**COHEN MILSTEIN HAUSFELD &<br>TOLL P.L.L.C**<br>150 East 52nd Street<br>New York, NY 10022<br>Tel: 212-838-7797<br>Fax: 212-383-7745<br><br>*Via U.S. Mail* | |

| COUNSEL FOR DEFENDANTS CONNETICS CORPORATION, THOMAS G. WIGGANS, C. GREGORY VONTZ, JOHN HIGGINS, LINCOLN KROCHMAL, EUGENE A. BAUER, R. ANDREW ECKERT, CARL B. FELDBAUM, DENISE M. GILBERT, JOHN C. KANE, THOMAS D. KILEY, LEON E. PANETTA AND G. KIRK RAAB ||
|---|---|
| Susan S. Muck<br>Dean S. Kristy<br>Christopher J. Steskal<br>Kalama M. Lui-Kwan<br>Emily St. John Cohen<br>**FENWICK & WEST**<br>275 Battery Street, Suite 1600<br>San Francisco, CA 94111<br>Tel: 415-875-2300<br>Fax: 415-281-1350<br>smuck@fenwick.com<br>dkristy@fenwick.com<br>csteskal@fenwick.com<br>klui-kwan@fenwick.com<br>ecohen@fenwick.com<br><br>*Via ECF* | Gregory A. Markel<br>**CADWALADER, WICKERSHAM & TAFT LLP**<br>1 World Financial Center<br>New York, NY 10281<br>Tel: 212-504-6112<br>Fax: 212-504-6666<br>gregory.markel@cwt.com<br><br><br><br><br><br><br><br><br>*Via ECF* |
| **COUNSEL FOR DEFENDANT ALEXANDER J. YAROSHINSKY** ||
| James P. Duffy IV<br>**DLA PIPER US LLP**<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel: 212-335-4500<br>Fax: 212-504-6666<br>James.duffy@dlapiper.com<br><br>Alysson Russell Snow<br>**DLA PIPER US LLP**<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>Tel: 619-699-2858<br>Fax: 619-699-2701<br>Alysson.snow@dlapiper.com<br><br>*Via ECF* |  |

| **Defendant Victor E. Zak** | |
|---|---|
| Victor E. Zak (*pro se*)<br>24 Oakmont Road<br>Newton, MA 02459<br>Tel: 617-610-2538<br>zakvic@yahoo.com<br><br>**Via FedEx** | |

#26161/v5