SHIRLI FABBRI WEISS (Bar No. 079225)
shirli.weiss@dlapiper.com
GERARD A. TRIPPITELLI (Bar No. 235788)
jerry.trippitelli@dlapiper.com
JULIE L. SCHWARTZ (Bar No. 216392)
julie.schwartz@dlapiper.com
ALYSSON RUSSELL SNOW (Bar No. 225185)
alysson.snow@dlapiper.com
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.3650
Fax:  619.699.2701

Attorneys for Defendant
ALEXANDER YAROSHINSKY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONNETICS CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | CASE NO.  3:07-cv-02940-SI<br><br>CLASS ACTION<br><br>**ALEXANDER YAROSHINSKY'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: August 15, 2008<br>Courtroom: 10<br>Time: 9:00 a.m.<br>Judge: Honorable Susan Illston |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   PLAINTIFF DOES NOT HAVE STANDING TO ASSERT CLAIMS AGAINST DR. YAROSHINSKY ........................................................................................................ 3

    A.   Plaintiff Did Not Trade Contemporaneously With Dr. Yaroshinsky...................... 4

    B.   Plaintiff's Purported Contemporaneous Trades with Other Defendants Cannot Cure Plaintiff's Failure to Trade Contemporaneously with Dr. Yaroshinsky. ............................................................................................................ 4

    C.   Other Class Members' Purported Trades Cannot Cure Plaintiff's Lack of Standing Arising From Its Failure to Trade Contemporaneously with Dr. Yaroshinsky. ............................................................................................................ 5

    D.   Defendant Zak's Sales Cannot Be Imputed to Dr. Yaroshinsky and, Even if They Could, Plaintiff did not Trade Contemporaneously with Zak........................ 7

        1.   Plaintiff's April 18 and 19 Trades Were Not Contemporaneous with Zak's April 13 Trades. ............................................................................. 7

        2.   Zak's Unspecified Trades Between April 24 and June 10 Were Not Contemporaneous with Plaintiff's April 18 and 19 Trades. ..................... 10

III.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ................................................................................................................... 12

IV.   PLAINTIFF DID NOT STATE A CLAIM FOR TIPPER/TIPPEE LIABILITY ............ 14

V.   THE SECTION 20A CLAIM MUST BE DISMISSED ON OTHER GROUNDS.......... 15

VI.   CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002).................................................................................... 3, 5, 6, 7

*Buban v. O'Brien*,
   1994 WL 324093 (N.D. Cal. June 22, 1994) ............................................................ 7, 8, 10

*In re AST Research Sec. Litig.*,
   887 F. Supp. 231 (C.D. Cal. 1995).................................................................................... 9

*In re Cendant Corp. Litig.*,
   60 F. Supp. 2d 354 (D.N.J. 1999) ..................................................................................... 7

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) .............................................................................. 5

*In re Countrywide Fin. Corp. Deriv. Litig.*,
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) .......................................................................... 11

*In re Countrywide Financial Corp. Deriv. Litig.*,
   2008 U.S. Dist. LEXIS 40754 (C.D. Cal. May 14, 2008) ............................................ 9, 11

*In re Eng'g Animation Sec. Litig.*,
   110 F. Supp. 2d 1183 (S.D. Iowa 2000) ......................................................................... 10

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) ............................................................................ 10

*In re Genentech, Inc. Sec. Litig.*,
   1989 WL 201577 (N.D. Cal. Dec. 11, 1989) ............................................................... 5, 11

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000)................................................................................ 5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   187 F.R.D. 133 (S.D.N.Y. 1999) .................................................................................. 9, 10

*In re Qwest Communs. Int'l Sec. Litig.*,
   396 F. Supp. 2d 1178 (D. Colo. 2004) ............................................................................ 11

*In re Verifone Sec. Litig.*,
   784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) .................. 4, 5, 10

*In re Waldus Sec. Litig.*,
   993 WL 121478 (W.D. Wash. Mar. 1, 1993) .................................................................... 5

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) .......................................................................... 11

**TABLE OF CONTENTS**
**(continued)**

**Page**

*Middlesex Ret. Sys. v. Quest Software*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ............................................................. 6, 7, 8, 9, 10

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    No. CV 06-6863 (C.D. Cal. July 10, 2008) ........................................................... 6, 9

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993)................................................................................... passim

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)................................................................................................. 5

*Openwave Systems Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007)...................................................................... 6

*Shurkin v. Golden State Vintners Inc.*,
    471 F. Supp. 2d 998 (N.D. Cal. 2006) ............................................................... 11, 15

*Wilson v. Comtech Telecommunications Corp.*,
    648 F.2d 88 (2d Cir. 1988)............................................................................... 7, 8, 9

**STATUTES**

15 U.S.C. §§ 78j(b), *et seq*.................................................................................................. 3

15 U.S.C. § 78t-1(a) ............................................................................................................ 3

15 U.S.C. § 78t-1(b)(2) ....................................................................................................... 8

15 U.S.C. § 78u-4(a)(1) .................................................................................................... 14

15 U.S.C. § 78u-4(b)(3)(A) .............................................................................................. 13

15 U.S.C. § 78u-4(b)(3)(B) .............................................................................................. 11

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

As established in Dr. Yaroshinsky's Opening Brief in support of his Motion to Dismiss, Plaintiff, for the *third time*, fails to state a claim against him for violation of Section 10(b) and Section 20A of the Securities Exchange Act of 1934 for two independent reasons: (1) Plaintiff does not have standing because it failed to plead that Plaintiff and Dr. Yaroshinsky contemporaneously traded in Connetics' stock; and (2) Plaintiff failed to sufficiently plead that Dr. Yaroshinsky acted with the requisite scienter, an essential element of Plaintiff's Section 10(b) claim, in pleading its narrow insider trading claim against Dr. Yaroshinsky. The Opening Brief also established that Plaintiff failed to sufficiently plead its Section 20A claims against Dr. Yaroshinsky for two additional reasons: (1) the predicate violation to Plaintiff's Section 20A claim is a properly pled Section 10(b) claim and Plaintiff failed to sufficiently plead its Section 10(b) claim against Dr. Yaroshinsky; and (2) Section 20A expressly precludes Plaintiff's requested relief. In its Opposition Brief, Plaintiff fails to respond to these showings and, instead (1) misapplies this Court's January 29, 2008 Order as to Dr. Yaroshinsky; (2) completely ignores authority in this District, the Central District and other Districts cited by Dr. Yaroshinsky in his Opening Brief; and (3) asserts conclusory arguments without citing any authority.

More specifically, Dr. Yaroshinsky's motion to dismiss should be granted for each of the following reasons.

<u>First</u>, Plaintiff fails to overcome Dr. Yaroshinsky's showing in his Opening Brief that Plaintiff lacks standing to assert its claims against Dr. Yaroshinsky. Plaintiff does not and cannot address Dr. Yaroshinsky's showing, based on well-settled Ninth Circuit law, that Plaintiff cannot have standing as to Dr. Yaroshinsky because Plaintiff traded *before* Dr. Yaroshinsky. Plaintiff also ignores Dr. Yaroshinsky's showing that, even if it had adequately pled the other elements of its theory of tipper/tippee liability based on alleged communications between Dr. Yaroshinsky and Zak (which it has not), Plaintiff cannot establish standing by imputing Zak's trades to Dr. Yaroshinsky because Plaintiff's trades were not contemporaneous with Zak's trades. As explained below, Plaintiff's argument that the Court should adopt a blanket rule that all trades made before the disclosure of alleged material non-public information are contemporaneous for

-1-

purposes of its insider trading claim, is contrary to the law in the Northern District as well as the law in other districts, is inconsistent with the Ninth Circuit's mandate that the contemporaneous trading requirement be narrowly construed and is inconsistent with the Second Circuit law that the Ninth Circuit followed in adopting the contemporaneous trading standard. Thus, the better rule, and that followed by numerous courts and cited by Dr. Yaroshinsky, is that trades must occur on the same day to be contemporaneous or, in the alternative, that the Court consider the volume of trading on the day that the defendant traded and the difference in the stock price on the day the defendant and plaintiff traded to determine if the sales were contemporaneous. Under either of these rules, Plaintiff did not contemporaneously trade with Zak and thus Zak's trades cannot give rise to standing to assert insider trading claims against Dr. Yaroshinsky. In a last ditch bid to establish standing, Plaintiff makes a failed attempt to argue that this Court's earlier ruling that Plaintiff has Article III standing with respect to its non-insider trading claims against the other defendants also establishes that it has standing with respect to its insider trading claims against Dr. Yaroshinsky. Not only was the Court's earlier ruling limited to the other defendants and the non-insider trading claims, but the Ninth Circuit has stated that the contemporaneous trading standing requirement is derived from judicially imposed limitations, *not* derived from Article III.

Second, Plaintiff fails to refute Dr. Yaroshinsky's showing in the Opening Brief that Plaintiff has not sufficiently a pled a strong inference of scienter. Plaintiff cannot overcome the fact that the most compelling inference arising from Connetics' April 26, 2005 press release and earnings call is that by April 26, 2005 Dr. Yaroshinsky believed that he did not possess any material non-public information and could trade without violating the securities laws – i.e., that he did not act with scienter. As explained below, Plaintiff's argument that the Court has indicated in its earlier ruling that the April 26, 2005 disclosure might not have been complete does not undermine the compelling inference that Dr. Yaroshinsky thought all material non-public information had been disclosed. Nor does Plaintiff's list of purported scienter allegations scattered throughout the Second Amended Complaint (the "Complaint") plead a strong inference of scienter, and Plaintiff cites no authority to the contrary.

/////

Third, Plaintiff does not sufficiently respond to Dr. Yaroshinsky's showing that, even if Plaintiff pled that Plaintiff traded contemporaneously with Zak and Plaintiff had sufficiently pled scienter (which it cannot), Plaintiff has failed to sufficiently plead facts showing tipper/tippee liability, which it asserts as a part of its Section 20A claim. Plaintiff's allegations that Dr. Yaroshinsky benefited from the alleged tip, which is a requisite element of any Section 20A claim, is purely conclusory and based solely on its unsupported allegation that Zak was Dr. Yaroshinsky's "friend." Contrary to Plaintiff's contention, this conclusory allegation does not satisfy the Private Securities Litigation Reform Act's (the "Reform Act") requirement that Plaintiff plead all elements of its claims against Dr. Yaroshinsky with specificity. Not surprisingly, all of the cases Plaintiff cites were filed by the SEC, which, in alleging claims, is not required to comport with the Reform Act's heightened pleading standard.

Finally, Plaintiff fails to adequately address Dr. Yaroshinsky's showing that Plaintiff's Section 20A claim must be dismissed because it has failed to sufficiently plead its Section 10(b) claims against Dr. Yaroshinsky, which is the requisite predicate violation on which Plaintiff's Section 20A claim is based. Plaintiff's argument is that it has sufficiently pled its Section 10(b) claim because Plaintiff says it has. Clearly, this is not enough. Moreover, Plaintiff cannot refute that its relief for its alleged Section 20A violation must be limited to disgorgement. Plaintiff's Section 20A claim should be dismissed for this independent reason as well.

For these reasons, Dr. Yaroshinsky respectfully requests that the Court grant his motion to dismiss with prejudice.

## II.    PLAINTIFF DOES NOT HAVE STANDING TO ASSERT CLAIMS AGAINST DR. YAROSHINSKY

It is well-settled that in order to have standing to bring its Section 10(b) and Section 20A claims against Dr. Yaroshinsky based on insider trading claims, Plaintiff must plead specific facts that it traded contemporaneously with Dr. Yaroshinsky. 15 U.S.C. §§ 78j(b), *et seq.* (2000) (Section 10(b)); 15 U.S.C. § 78t-1(a) (2000) (Section 20A); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1001 (9th Cir. 2002); *Neubronner v. Milken*, 6 F.3d 666, 669-70 (9th Cir. 1993). As Dr. Yaroshinsky established in his Opening Brief, Plaintiff has failed to plead any such

-3-

contemporaneous trades. In the Opposition Brief, Plaintiff fails to refute this showing.

### A. Plaintiff Did Not Trade Contemporaneously With Dr. Yaroshinsky.

Where a plaintiff's trades are before the alleged insider's trades, the trades cannot be "contemporaneous." *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992) ("No liability can attach for trades made by plaintiffs before the insider engages in trading activity"), *aff'd*, 11 F.3d 865 (9th Cir. 1993). As Dr. Yaroshinsky established in his Opening Brief, Plaintiff cannot, as a matter of law, plead the requisite contemporaneous trading because Plaintiff's alleged trades occurred *before* Dr. Yaroshinsky's alleged trades – Plaintiff traded only on April 18 and 19, 2005 and Dr. Yaroshinsky did not make his first trade until April 21, 2005. Opening Br. at 10:1-11:2. Plaintiff concedes as much, and in its Opposition does not even attempt to respond to this fatal defect in the Complaint. *See* Opposition Br. at 46:16-47:9.

### B. Plaintiff's Purported Contemporaneous Trades with Other Defendants Cannot Cure Plaintiff's Failure to Trade Contemporaneously with Dr. Yaroshinsky.

In an attempt to mask its lack of contemporaneous trades, and recognizing that it cannot base its standing on Dr. Yaroshinsky's trades, Plaintiff argues that so long as it traded contemporaneously with another Defendant, here Higgins, "Lead Plaintiff has standing to represent the remainder of the plaintiff class in bringing § 20A claims against all of the § 20A Defendants," including Dr. Yaroshinsky, even if it did not trade contemporaneously with Dr. Yaroshinsky. (Opposition Br. at 45:16-46:13.)[1] Plaintiff's argument is based on a misinterpretation of this Court's earlier ruling on the other defendants' motion to dismiss which does not apply to Plaintiff's standing for its claims against Dr. Yaroshinsky for violation of Section 10(b) and Section 20A claims for alleged insider trading.

First, the Ninth Circuit has held that the standing requirements for insider trading claims under Section 10(b) are judicial standing limitations which "are not, of course of the constitutional variety, grounded in Article III of the Constitution, but simply delineate the scope

---

[1] Plaintiff argues that the defendants have conceded that Plaintiff contemporaneously traded with defendant Higgins. Neither Dr. Yaroshinsky nor any of the other defendants have made any such concession. Moreover, Plaintiff's argument in this regard is independent of any attempt to impute Zak's alleged contemporaneous sales to Dr. Yaroshinsky, which, as explained below, also fails.

-4-

of the implied cause of action." *Brody*, 280 F.3d at 1000 n.3.

Second, the portion of the Court's January 29, 2008 ruling on the other defendants' motion to dismiss is inapplicable to Dr. Yaroshinsky's standing arguments. *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1002-04 (N.D. Cal. 2008). In the January 29, 2008 Order, the Court considered the other defendants' argument that Plaintiff lacked standing on the injury prong of Article III because Plaintiff did not own stock in Connetics on a day when defendants disclosed negative information. *Id.* The Court ruled that because Plaintiff owned Connetics stock at the time of some of Connetics disclosures and drops in the stock price, it has Article III standing to assert other related injuries suffered by members of the class not shared by Plaintiff. *Id.* The defendants' argument in this regard, however, was based on claims and alleged injury arising from false or misleading disclosures, not on claims and alleged injury based on alleged insider trading. *See id.* Indeed, neither the Defendants argument nor the Court's ruling addressed this argument based on Article III standing with respect to Plaintiff's insider trading claims. Nor, under *Brody*, could it.

### C. Other Class Members' Purported Trades Cannot Cure Plaintiff's Lack of Standing Arising From Its Failure to Trade Contemporaneously with Dr. Yaroshinsky.

The well-settled law is clear that a lead plaintiff, not another class member, must have traded contemporaneously with each alleged insider to have standing to assert a claim against the insider on behalf of the class. It is not sufficient, contrary to what Plaintiff maintains, that another class member traded contemporaneously with the insider and incurred alleged injury based on those claims. Dr. Yaroshinsky established as much in his Opening Brief based on well-settled law that Plaintiff cannot refute. (Opening Br. at 11:3-22 (citing *Brody*, 280 F.3d at 1001; *Neubronner*, 6 F.3d at 669-70; *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974); *Verifone*, 784 F. Supp. at 1489; *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664 (E.D. Va. 2000); *In re Waldus Sec. Litig.*, No. C92-885C, 1993 WL 121478, at *7 (W.D. Wash. Mar. 1, 1993); *In re Genentech, Inc. Sec. Litig.*, No. C-88-4038, 1989 WL 201577, at *6 (N.D. Cal. Dec. 11, 1989).

Plaintiff does not and cannot overcome this well-settled law requiring that Plaintiff, not other class members, have traded contemporaneously with Dr. Yaroshinsky in order to have

standing to assert insider trading claims against Dr. Yaroshinsky. First, the cases Plaintiff cites from other circuits do not overcome the Ninth Circuit's ruling in *Brody* requiring that the named plaintiff, not other putative class members, contemporaneously traded with the alleged insider. *Brody*, 280 F.3d at 997; *see* Opposition Br. at 46:3-13. In *Brody*, which is controlling here, the Ninth Circuit affirmed the district court's dismissal of a class action because the two named plaintiffs could not plead with the requisite particularity that they (not other class members) traded contemporaneously with the alleged insider defendants. *Brody*, 280 F.3d at 1001-02. Indeed, "the district court held that Brody and Crawford (the named plaintiffs) are not proper parties to assert any insider trading claims, as Brody and Crawford did not trade contemporaneously with THC." *Id.* at 1000. Thus, the Southern District of New York's ruling in *Openwave Systems Sec. Litig.*, which Plaintiff cites in support of its argument that its standing can derive from other class members' purported contemporaneous trades, contradicts the Ninth Circuit's holding in *Brody* and thus cannot be binding or controlling. *See Openwave*, 528 F. Supp. 2d 236, 255-56 (S.D.N.Y. 2007).

Moreover, Plaintiff's argument based on *Middlesex Ret. Sys. v. Quest Software*, 527 F. Supp. 2d 1164, 1196 (C.D. Cal. 2007) (referred to as "*Quest*") not only is misplaced but should be ignored. In a more recent ruling by the *Quest* Court on the defendants' motion to dismiss the plaintiff's Section 20A claims in a more recent amended complaint, the Court held "the class representative must allege with specificity that it traded contemporaneously with defendants. It is insufficient that some class members traded contemporaneously as the lead plaintiff may not represent class members on claims it does not share." Order (1) Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Complaint; (2) Ordering Discovery at 16, *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863 (C.D. Cal. July 10, 2008) (citations omitted); attached to RJN as Ex. A. Moreover, the *Quest* Court also held that, as explained in the preceding paragraph, *Openwave* is in conflict with *Brody* and, thus, *Openwave* cannot be followed. *Id.* at 16 n.5.[2] To the extent that the District of New Jersey reached a different ruling

---

[2] Even the *Quest* decision that Plaintiff cites (527 F. Supp. 2d at 1196), however, does not support the proposition that Plaintiff's standing can be based on the contemporaneous trades of other class members.

-6-

in *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 378-79 (D.N.J. 1999), which Plaintiff also cites, it would conflict with *Brody* as well and could not be followed.[3]

Thus Plaintiff's argument that contemporaneous trading by other class members is sufficient to establish standing fails as a matter of law.

### D. Defendant Zak's Sales Cannot Be Imputed to Dr. Yaroshinsky and, Even if They Could, Plaintiff did not Trade Contemporaneously with Zak.

As established in Dr. Yaroshinsky's Opening Brief, Plaintiff's attempt to establish standing as to Dr. Yaroshinsky by imputing Zak's trades to Dr. Yaroshinsky fails for two reasons. First, Plaintiff fails to sufficiently plead facts establishing its tipper/tippee claim and, thus, it cannot be a basis for standing as to Dr. Yaroshinsky. *See infra* Section IV. Second, even if Plaintiff had sufficiently pled its tipper/tippee claim, Plaintiff's trades – made on April 18 and 19 – were not contemporaneous with Zak's trades.

#### 1. Plaintiff's April 18 and 19 Trades Were Not Contemporaneous with Zak's April 13 Trades.

As a court in this District has held, the purpose of the contemporaneous trading requirement is to protect a plaintiff who was harmed by the insider and that "such harm may be found where it appears the plaintiff might, *in fact*, have traded with the defendant." *Buban v. O'Brien*, No. C 94-0331, 1994 WL 324093 (N.D. Cal. June 22, 1994) (emphasis added). This stated purpose and limitation is consistent with (1) the Second Circuit's holding in *Wilson v. Comtech Telecommunications Corp.*, which the Ninth Circuit followed in *Neubronner* in adopting the contemporaneous trading standard – "to extend the period of liability well beyond the time of the insider's trading simply because disclosure was never made could make the insider

---

As the Court made clear in its ruling, the *Lead Plaintiff* attached an exhibit to an earlier filing with the Court in which "[Lead] *Plaintiff* specified the precise days when it purchased and sold Quest stock." *Id.* (emphasis added); *see* Request for Judicial Notice ("RJN"), Ex. B (Excerpts from Second Amended Complaint in *Quest*).

[3] The *Cendant* court did not reach a different ruling. In *Cendant*, the Court held that the *plaintiffs* sufficiently pled contemporaneous trades because the "Plaintiffs have attached detailed Schedules to the complaint which list the dates on which the plaintiffs purchased CUC and Cendant common stock and those on which McLeod and other defendants sold their CUC and Cendant common stock." *Cendant*, 60 F. Supp. 2d at 379; *see* RJN Ex. B (Excerpts from Amended and Consolidated Complaint in *Cendant* matter).

-7-

liable to all the world" (*Wilson*, 648 F.2d 88, 94 (2d Cir. 1988)); (2) the *Neubronner* court's mandate that the contemporaneous trade element be strictly construed (*Neubronner*, 6 F.3d. at 669-70); and (3) the statute itself, which limits damages to the defendant's profit or loss avoided on his trade rather than create virtually unlimited exposure to numerous possible same day (or multiple day) traders. 15 U.S.C. § 78t-1(b)(2). This limitation on damages indicates that Congress intended a narrow scope of the statute. *See id.*

Consistent with this purpose and these mandates, and as set forth in the Opening Brief, numerous courts have unequivocally held that in order for trades to be contemporaneous, the plaintiff's trade must be made on the *same* day as the insider's trade. (Opening Br. at 12:17-13:17.) Indeed, Dr. Yaroshinsky cites seven such cases in his Opening Brief. *Id.* While the *Buban* court (the Northern District court which set forth the purpose of the contemporaneous trading requirement set forth below) did not reach the issue of whether same day trades were necessary, it set forth two factors to consider in determining whether trades not made on the same day are contemporaneous – (1) the overall volume of the trades on the date the defendant sold and (2) the difference in the price at which the plaintiff purchased the stock and the price on the date that the defendant sold. *Buban*, 1994 WL 324093, at *3. In *Buban* the volume was 150,000 shares, the price difference was $1.50 and the plaintiff's and the defendant's trades were three days apart. *Id.* Under those circumstances, the Court held that "it [was] clear that plaintiff could not have traded with defendant," and thus "there [was] no reason for the Court to apply a more liberal standard to determine contemporaneousness." *Id.* As Dr. Yaroshinsky established in the Opening Brief, a finding of lack of contemporaneous sales is even more compelling here given that Plaintiff's trades were *five days* apart from Zak's trades, the volume on the date of Zak's trades was *542,000 shares* and the price difference *was almost $3.00.* (Opening Br. 14:20-15:7.)

Plaintiff ignores this extensive authority in its Opposition, including the *Buban* analysis. Instead, Plaintiff encourages the Court to follow the broad rule apparently adopted the Central District in *Quest* that a class action may be maintained on behalf of all persons who purchased stock on an exchange during the period that defendants were selling that stock on the basis of

/////

insider information. 527 F. Supp. 2d at 1196; Opposition Br. at 8:8-14.[4] Plaintiff, however, fails to respond to the bases on which Dr. Yaroshinsky already distinguished the *Quest* case in his Opening Brief. (Opening Br. at 13 n.4.)

Contrary to Plaintiff's apparent contention, the rule adopted by the *Quest* court is not the "better rule." Even the *Quest* court seems to have backed down from this rule. In its more recent decision, the *Quest* court merely mentioned that "at least one case, purportedly following *Wilson*, held that trading is 'contemporaneous' until disclosure of the non-public information." *Quest*, July 10, 2008 Order at 17. The *Quest* court then did *not* apply this rule, instead finding that at least two trades made by plaintiffs prior to disclosure were not contemporaneous. *Id.*[5] Moreover, the rule Plaintiff encourages the Court to adopt flatly contradicts the Second Circuit's holding in *Wilson* (adopted by the Ninth Circuit in *Neubronner*) that the period of liability should *not* be extended to the time of disclosure. It also contradicts the *Neubronner* court's mandate that the contemporaneous trade requirement be strictly construed – there could be no broader construction than a rule that all trades through disclosure are contemporaneous. This rule also would contradict the purpose of the contemporaneous trading requirement as set forth by the Northern District in *Burban*. Finally, the rule contradicts the statutory intent which is demonstrated by the limitation on disgorgement to the defendant's profit or loss avoided (15 U.S.C. § 78t-1(b)(2)) as well as another Central District holding requiring same day trades. *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 233 (C.D. Cal. 1995).

Plaintiff's cites to cases holding that a plaintiff's trades made three days after the defendant's trades can be considered contemporaneous are equally unpersuasive and easily distinguished. (Opposition Br. 46 n.19.) The holding in the first case, *In re Oxford Health Plans,*

---

[4] Plaintiff also cites *In re Countrywide Financial Corp. Deriv. Litig.*, No. CV-07-06923, 2008 U.S. Dist. LEXIS 40754 (C.D. Cal. May 14, 2008) for the proposition that courts have interpreted the contemporaneous trading requirement in different ways. The *Countrywide* court, however, did not reach a holding on what constitutes contemporaneous trading because it was a derivative action in which all stock sold by the insiders was purchased by *Countrywide* as a part of Countrywide's stock repurchase program. *Id.* Thus, as the *Countrywide* court stated, "the actual days on which Countrywide traded is not significant." *Id.*

[5] While the *Quest* court found that other trades made one day and five days after a defendant's trade were contemporaneous, as set forth below in discussing *Enron*, the Court should reject any such absolute rule.

-9-

*Inc. Sec. Litig.*, is based in part on the theory that liability should extend through the date of disclosure. 187 F.R.D. 133, 138 (S.D.N.Y. 1999) ("Five trading days is a reasonable period between the insider's sale and the plaintiff's purchase to be considered contemporaneous, considering the last insider trades were in August 1997 and the information remained undisclosed until October 27, 1999) (citing *In re Am. Bus. Computers Corp. Sec. Litig.*, 1994 WL. 848690, *4 ("[T]he term 'contemporaneously' may embrace the entire period while relevant material non-public information remained undisclosed.")). Plaintiff also cites *In re Eng'g Animation Sec. Litig.*, 110 F. Supp. 2d 1183, 1196 (S.D. Iowa 2000), in which the Southern District of Iowa held that three days constitute contemporaneous sales, citing only *Oxford*. Thus, *Eng'g Animation* should be rejected by this Court for the same reason as *Oxford*. Finally, Plaintiff also cites *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, in which the Southern District of Texas held that "two or three days, certainly less than a week, constitute a reasonable period to measure contemporaneity of a defendant's trades." 258 F. Supp. 2d 576, 600 (S.D. Tex. 2003). To the extent this Court is inclined not to require same day trades, the Court should reject this type of absolute rule adopted by the *Enron* court, which does not take into account the circumstances of each case. Rather, the Court should adopt the approach taken by the Northern District in *Buban*, which takes into account factors (i.e., the trading volume and differential in stock prices) which actually are determinative of whether the sales could have been contemporaneous.

### 2. Zak's Unspecified Trades Between April 24 and June 10 Were Not Contemporaneous with Plaintiff's April 18 and 19 Trades.

Plaintiff's argument that it has satisfied the contemporaneous trading standard by pleading that Zak sold 68,000 Connetics shares on unspecified dates between April 24, 2005 and June 10, 2005 also fails. (Opposition Br. at 47:1-9.) First, Plaintiff pleads that it traded in Connetics' stock only on April 18 and April 19. Thus, Plaintiff's trades were made *before* Zak's alleged trades between April 24, 2005 and June 10, 2005. For this reason alone, as a matter of law, these trades cannot be contemporaneous and, even if they could be imputed to Dr. Yaroshinsky (which they cannot) would not fulfill the contemporaneous trading requirement for standing. *Verifone*, 784 F. Supp. at 1489.

-10-

Second, Plaintiff's argument that it did not need to plead the specific dates on which Zak traded because it has not had access to discovery fails. (Opposition Br. at 47:6-9.) Rule 9(b) and the Private Securities Litigation Reform Act's stringent pleading standards necessarily require that Plaintiff plead the specific dates of Zak's trades – merely alleging that he traded on unspecified dates over a two month period is insufficient. *See, e.g.*, *Middlesex*, July 10, 2008 Order at 16 n.5 (applying Rule 9(b)'s particularity requirements to contemporaneous trading requirement of Section 20A claim); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (applying the Reform Act's heightened pleading standards to claims of insider trading under Section 10(b) and Section 20A); *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1024, 1026 (N.D. Cal. 2006) (same); *see also* Opening Br. at 9:20-24 (citing *Genentech,* 1989 WL 201577, at *6). Under the Reform Act, discovery is automatically stayed until a motion to dismiss is denied. 15 U.S.C. § 78u-4(b)(3)(B); *In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (holding that the Reform Act's discovery stay applies to Section 10(b) and Section 20A claims). Plaintiff does not and cannot cite any authority that the discovery stay excuses the Reform Act's requirement that it plead its Section 10(b) and Section 20A claims with particularity, including the specific dates on which Zak allegedly traded. The reverse is true. Indeed, the only case Plaintiff cites in support of its position regarding discovery is *Neubronner*, which was decided *prior* to enactment of the Reform Act.[6] For this reason as well, Zak's sales between April 24, 2005 and June 10, 2005 cannot be imputed to Dr. Yaroshinsky for purposes of meeting the contemporaneous trading requirement. Moreover, given that Plaintiff's alleged trades were *before* Zak's alleged trades between April 25, 2005 and June 10, 2005, the Court need not reach this issue.

---

[6] Plaintiff also cites *Countrywide* and *In re Qwest Communs. Int'l Sec. Litig.*, 396 F. Supp. 2d 1178, 1201 (D. Colo. 2004) in support of their argument that they do not have to plead the specific dates of Zak's trades. In *Countrywide*, however, the issue was whether the Plaintiff needed to plead with particularity the dates that the Plaintiff (Countrywide) traded, not the dates on which the defendants traded. *Countrywide*, 2008 U.S. Dist. LEXIS 40754, at *82. Moreover, for the reasons cited in footnote 4 above, the *Countrywide* Court held that, unlike this case, "the actual days on which Countrywide traded its stock is not significant." *Id.* Plaintiff's reliance on *Qwest* also is misplaced. In *Qwest*, the "plaintiffs ha[d] alleged that the individual defendants traded Qwest securities on a variety of *specified* dates during the class period." *Qwest*, 396 F. Supp. 2d at 1201 (emphasis added).

-11-

For these reasons, Plaintiff has failed to establish that it has standing to assert its Section 10(b) and Rule 20A claims against Dr. Yaroshinsky. Dr. Yaroshinsky's motion to dismiss, therefore, should be granted *with prejudice* without further analysis.

### III.     THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

Even if Plaintiff had established it has standing, which it has not, Dr. Yaroshinsky's Opening Brief establishes that the Complaint must be dismissed for another reason – the Complaint fails to plead specific facts supporting a strong inference of scienter. Opening Br. at 9:15-12:13. As set forth in the Opening Brief, the U.S. Supreme Court recently held that in order to plead a strong inference of scienter, the inference from a plaintiff's allegations must be "powerful," "cogent," and "compelling" – it is not enough that the inference be "reasonable" or "permissible." *Id.* at 5:28-6:3 (citing *Tellabs v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007)). Moreover, the inference of scienter "must be more than merely 'reasonable' or 'permissible' – it must be cogent . . . and at least as compelling as any plausible inference one could draw from the facts alleged." *Id.* at 5:14-17.

Plaintiff does not attempt to show how the pleadings in the Complaint satisfy the *Tellabs* standard and fails to even mention *Tellabs* with respect to Dr. Yaroshinsky. *See* Opposition Br. at 6:5-8:16. First, Plaintiff does not respond to Dr. Yaroshinsky's showing that Plaintiff failed to plead any inference of scienter, let alone a strong inference, because the Complaint does not plead with particularity that Dr. Yaroshinsky received any material non-public information. (Opening Br. 16:7-17:2.) This motion to dismiss may be granted on this ground alone.

Second, Plaintiff does not adequately respond to Dr. Yaroshinsky's showing in the Opening Brief that, given Connetics' April 26, 2005 press release and earnings call (Opening Br. at 10:14-11:8), the most cogent and compelling inference is that by April 26, 2005 Dr. Yaroshinsky believed that he did not possess any material non-public information and that he could trade without violating the securities laws – i.e., he did not act with scienter. Plaintiff's only response on point is to argue that this cannot be the most compelling inference because the Court noted in its earlier ruling on the other defendants' motion to dismiss that it is inclined to agree with Plaintiff that additional information should have been disclosed in the April 25, 2005

-12-

disclosures. (Opposition Br. at 49:1-6.) Anticipating Plaintiff's position, Dr. Yaroshinsky addressed this issue in his Opening Brief, explaining that the issue is not whether the April 26, 2005 disclosures were complete under the complex securities laws. (Opening Br. at 17 n.6.) Rather, the issue is whether Dr. Yaroshinsky, who is a scientist who was not involved in drafting the press release and did not participate in the conference call, *thought* all material non-public information had been disclosed in the April 26, 2005 press release and conference call. *Id.* Plaintiff does not and cannot allege facts showing that Dr. Yaroshinsky had or believed he had material non-public information in light of those disclosures. It would be unreasonable to expect Dr. Yaroshinsky to differentiate between a full and partial disclosure where the Company has gone out of its way to make disclosures about the FDA contact and it is common knowledge that such disclosures by public companies are thoroughly vetted with legal counsel. Thus, Plaintiff does not and cannot establish that an equally or more compelling inference is that Dr. Yaroshinsky, who is a scientist, not a securities lawyer, knew that the April 26, 2005 disclosures may not have been complete and that he had any material non-public information. *See id.*[7]

The remainder of Plaintiff's response to Dr. Yaroshinsky's showing that Plaintiff has failed to sufficiently plead scienter is nothing more than a laundry list of allegations scattered through the Complaint, coupled with the conclusory statement that they sufficiently plead a strong inference of scienter. Opposition Br. at 48:9-27. Plaintiff cites no authority for its conclusory statements and, under *Tellabs*, fails to establish that these conclusory statements sufficiently plead a strong inference of scienter.[8]

Because the Complaint fails to plead a strong inference of scienter, dismissal is mandatory

---

[7] None of Plaintiff's other purported bases for attempting to refute the compelling inference that Dr. Yaroshinsky thought all material non-public information had been disclosed relate to this inference. First, Connectics' trading ban was imposed on April 13, two weeks before the April 26, 2005 disclosures, and thus is unrelated to what Dr. Yaroshinsky believed following the April 26, 2005 disclosures. Second, Dr. Yaroshinsky's trades on April 27, 2005 – after the April 26, 2005 disclosures – is consistent with the compelling inference that Dr. Yaroshinsky believed all material non-public information had been disclosed. Finally, the purported accounts registered in his mother-in-laws name were created before the April 26, 2005 disclosures, rendering them meaningless to the compelling inference that Dr. Yaroshinsky believed all material non-public information was disclosed on April 26, 2005.

[8] Plaintiff also fails to respond to Dr. Yaroshinsky's showing that the confidential witnesses set forth in the Complaint and statements made in Dr. Yaroshinsky's answer to the SEC Complaint do not plead a strong inference of scienter. (Opening Br. at 18:1-19:4.)

1    for this independent reason as well.  15 U.S.C. § 78u-4(b)(3)(A).

2    **IV.    PLAINTIFF DID NOT STATE A CLAIM FOR TIPPER/TIPPEE LIABILITY**

3    In addition to Plaintiff's failure to plead contemporaneous trades and scienter, as established in the Opening Brief, Plaintiff's purported tipper/tippee claim fails for several additional reasons almost all of which Plaintiff fails to address in its Opposition.  First, Plaintiff fails to address Dr. Yaroshinsky's showing that the tipper/tippee theory of liability fails because it is asserted only in Plaintiff's Section 20A cause of action and not in Plaintiff's predicate Section 10(b) cause of action.  (Opening Br. at 19:27-20:2.)  Plaintiff also ignores Dr. Yaroshinsky's showing that Plaintiff fails to meet the Reform Act's heightened pleading standards with respect to its tipper/tippee theory of liability, instead pleading it in only the most conclusory manner at the end of the Complaint.  (Opening Br. at 20:3-13.)  Plaintiff's claims against Dr. Yaroshinsky for tipper/tippee liability may be dismissed on these grounds alone.

Moreover, Plaintiff fails to adequately respond to Dr. Yaroshinsky's showing that the mere pleading in the Complaint that Zak was Dr. Yaroshinsky's "friend" and "former neighbor" does not constitute the requisite particularized facts to plead that Dr. Yaroshinsky directly or indirectly gained a personal benefit.  (Opening Br. at 20:14-21:4.)  Instead, Plaintiff cites cases setting forth what a plaintiff must *prove* to establish a direct or indirect personal benefit, which can be *proof* that the defendant intended to benefit the alleged tippee or *proof* of a gift to a trading relative or friend.  (Opposition Br. at 47:16-21.)  However, a showing of an intent to benefit or a special relationship based on evidence is separate and distinct from what facts a plaintiff must *plead* in its complaint to sufficiently state a claim of a direct or indirect benefit.  Moreover, Plaintiff does not and cannot cite any authority that merely making the conclusory allegation that a purported tipper and tippee are friends or that the purported tipper intended to benefit the tippee is sufficient, especially under the heightened pleading standards of the Reform Act which requires that each element be plead with particularity.  Indeed, every case which Plaintiff cites involves a case filed by the SEC, which, unlike the Plaintiff in this case, is *not* subject to the stringent pleading standards of the Reform Act.  *See* 15 U.S.C. § 78u-4(a)(1).  Thus, Plaintiff's authority cited in its Opposition fails to refute Dr. Yaroshinsky's showing that Plaintiff failed to sufficiently

-14-

plead its claim based on tipper/tippee liability.

Contrary to Plaintiff's position, the law in the Northern District is that conclusory allegations of personal benefit, such as Plaintiff's, are insufficient and the court need not indulge in any unwarranted inference. (Opening Br. at 20:14-21:4 (citing *Shurkin*, 471 F. Supp. 2d at 1025).) Plaintiff does not and cannot respond. For these reasons, Plaintiff's attempt to salvage its case based on a purported theory of tipper/tippee liability fails.

## V. THE SECTION 20A CLAIM MUST BE DISMISSED ON OTHER GROUNDS

In the Opposition Brief, Plaintiff also fails to refute the additional bases on which its Section 20A claim should be dismissed. First, Plaintiff fails to adequately respond to Dr. Yaroshinsky's showing that the Section 20A claim must be dismissed because Plaintiff has failed to sufficiently plead its Section 10(b) claim, which is the predicate violation for the Section 20A claim. Rather, Plaintiff merely states that it has sufficiently pled its Section 10(b) claim without establishing as much. (Opposition Br. at 49:16-22.) This response is wholly inadequate. The same is true with respect to Dr. Yaroshinsky's showing that the Complaint must be dismissed because Plaintiff does not seek relief available under Section 20A, which is limited to disgorgement. (Opening Br. at 19:14-25.) Plaintiff's only response is to state that it is seeking disgorgement. (Opposition Br. at 49:23-26.) Since this request is not pled in the Complaint, Plaintiff fails to provide a cite in support of its position. Moreover, Plaintiff's litany of damages, which include compensatory damages and/or rescission, interest, and attorneys' fees and costs, are impermissible forms of relief under Section 20A and should be stricken.

## VI. CONCLUSION

Plaintiff fails to state a claim against Dr. Yaroshinsky and the Second Amended Complaint should be dismissed with prejudice as to Dr. Yaroshinsky.

Dated: July 18, 2008

Respectfully Submitted,

DLA PIPER US LLP

By  /s/ Gerard A. Trippitelli
GERARD A. TRIPPITELLI
Attorneys for Defendant
ALEXANDER YAROSHINSKY