BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP
DAVID R. STICKNEY   (Bar No. 188574)
NIKI L. MENDOZA   (Bar No. 214646)
TAKEO A. KELLAR   (Bar No. 234470)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
davids@blbglaw.com
nikim@blbglaw.com
takeok@blbglaw.com
          -and-
CHAD JOHNSON
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444
chad@blbglaw.com

Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CONNETICS SECURITIES LITIGATION.<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. C 07-02940 SI<br><br>NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:          October 9, 2009<br>TIME:          9:00 a.m.<br>COURTROOM:   10<br>JUDGE:         Hon. Susan Illston |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii-v

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     PROCEDURAL HISTORY ................................................................................ 2

        A.      Background ............................................................................................ 3

        B.      The Commencement And Consolidation Of The
                Class Actions And The Appointment Of Lead
                Plaintiff ................................................................................................. 4

        C.      Active Involvement Of Oklahoma Teachers ........................................ 4

        D.      Preparation And Filing Of The Consolidated
                Complaints And Overcoming The Motions To
                Dismiss .................................................................................................. 5

        E.      Case Management Conferences ............................................................ 7

        F.      Discovery .............................................................................................. 8

        G.      Experts And Consultants ...................................................................... 9

        H.      Class Certification ................................................................................ 9

        I.      The Settlement ...................................................................................... 10

III.    ARGUMENT ...................................................................................................... 11

        A.      The Standards For Judicial Approval Of Class
                Action Settlements ............................................................................... 11

        B.      The Settlement Meets The Ninth Circuit Standard
                For Approval ......................................................................................... 13

                1.      The Risk, Expense, Complexity, And Likely
                        Duration Of Further Litigation ................................................. 13

                2.      Lead Plaintiff's Case Was Strong, But
                        Entailed Risks .......................................................................... 14

                3.      The Amount Obtained In Settlement ........................................ 15

                4.      The Extent Of Discovery Completed, And
                        The Stage Of The Proceedings ................................................. 17

                5.      The Experience And Views Of Lead
                        Counsel And Lead Plaintiff ...................................................... 17

                6.      Reaction Of The Class Members To The
                        Proposed Settlement ................................................................. 19

C.    The Settlement Provided Adequate Notice To The
Class ...................................................................................................................20

D.    The Plan Of Allocation Is Fair And Reasonable And
Should Be Approved .......................................................................................21

IV.    CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Apollo Group, Inc. Sec. Litig.*,
    2008 WL 3072731 (D. Ariz. Aug 4, 2008)..................................................................14

*In re Apple Computer Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................14

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................21

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980)................................................................................12

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..........................................................17

*Granada Invest., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ................................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................12

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal., June 10, 2005) ......................................................17

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................................21

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ......................................................14

*Lundell v. Dell, Inc.*,
    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006)........................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ......................................................................12, 14, 22

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................16, 19

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)....................................................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ......................................................................11, 12, 13

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................. passim

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ...................................................................................11, 17

*Petrovic v. AMOCO Oil Co.,*
   200 F.3d 1140 (8th Cir. 1999) ........................................................................................22

*In re Portal Software, Inc. Sec. Litig.,*
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...............................................................20

*In re Rambus Inc. Deriv. Litig.,*
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ..........................................12, 14, 17, 19

*Republic Nat'l Life Ins. Co. v. Beasley,*
   73 F.R.D. 658 (S.D.N.Y. 1977) ......................................................................................16

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ..........................................................................................21

*South Carolina Nat'l Bank v. Stone,*
   749 F. Supp. 1419 (D.S.C. 1990) ....................................................................................22

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) .....................................................................................11, 12

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
   718 F. Supp. 1099 (S.D.N.Y. 1989).................................................................................16

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ...........................................................................................11

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   720 F. Supp. 1379 (D. Ariz. 1989) ..................................................................................12

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ..............................................................................................13

*Williams v. First Nat'l Bank,*
   216 U.S. 582 (1910)..........................................................................................................11

*Woo v. Home Loan Group, L.P.,*
   2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) ..........................................................11, 12

*In re WorldCom, Inc. Sec. Litig.,*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)...............................................................................22

**STATUTES, RULES & REGULATIONS**

4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008) .................11

Federal Rule of Civil Procedure

Rule 9(b) ...........................................................................................................5
Rule 11 ..............................................................................................................7
Rule 23 ...................................................................................................... passim
Rule 26(f) ...........................................................................................................7
Rule 30(b)(6)......................................................................................................9

Federal Rules of Evidence

Rule 408 .............................................................................................................1

H.R. Conf. Rep. 104-369 (1995) .........................................................................19

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 23(e) and the Court's Order Preliminarily Approving Settlement And Providing For Notice ("Preliminary Approval Order," Dkt. No. 194), on October 9, 2009, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Susan Illston, located at the United States District Court, 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiff Teachers' Retirement System of Oklahoma ("Lead Plaintiff" or "Oklahoma Teachers") will and hereby does move for final approval of the proposed settlement of this class action for $12.75 million and proposed Plan of Allocation for distribution of the net settlement proceeds.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Following over two years of litigation and extensive arm's-length settlement negotiations overseen by the mediator, the Hon. Daniel Weinstein (Ret.), Lead Plaintiff has succeeded in reaching a proposed settlement for $12.75 million in cash, plus accrued interest for the benefit of the Class (the "Settlement"). The $12.75 million was deposited into an escrow account on or about July 30, 2009, and has been earning interest for the benefit of Class Members.

Lead Plaintiff submits this motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence. If approved, the Settlement will resolve all claims against Connetics Corporation ("Connetics" or the "Company"), and additional Defendants.[2]   Lead Plaintiff and Lead Counsel – based upon their evaluation of the facts,

---

[1]  This motion is based upon the accompanying Declaration Of David R. Stickney In Support Of Motion For Final Approval Of Settlement and Plan of Allocation, And Motion for Approval Of Attorneys' Fees And Expenses (the "Stickney Decl."), submitted herewith; the Stipulation and Agreement of Settlement dated July 10, 2009 ("Stipulation," Dkt. No. 190); all other pleadings and matters of record; and such additional evidence or argument as may be presented at the hearing.

[2]  Connetics has been acquired twice since the case began, first by Stiefel Laboratories, Inc. in December 2006, and later by GlaxoSmithKline in April 2009. The additional Defendants are the "Individual Defendants" and the "Dismissed Defendants." "Individual Defendants" includes Thomas G. Wiggans ("Wiggans"), Gregory Vontz ("Vontz"), John Higgins ("Higgins") and Lincoln Krochmal ("Krochmal"). The Individual Defendants and Connetics are collectively referred to herein as "Defendants." "Dismissed Defendants" includes Alexander J. Yaroshinsky

---

applicable law, and the decisions in this case, submit that the proposed Settlement is in the best interests of the Class and provides a meaningful recovery for the Class now.

The $12.75 million Settlement is an excellent result for the Class. In reaching the Settlement, Lead Counsel and Lead Plaintiff considered the numerous risks in continued litigation against Defendants. The Court's ruling on Defendants' motion to dismiss the Second Amended Complaint ("Complaint," Dkt. No. 126) sustained certain claims but also narrowed the case that could be pursued and the recoverable damages. In addition, litigating this complex securities fraud class action to completion would result in significant expense and delay. Even though Lead Counsel and Lead Plaintiff believe that the action has substantial merit, it involved complex legal and factual issues that raised risks for summary judgment and at trial. Lead Plaintiff and its counsel believe that the monetary benefits the Settlement provides to the Class outweigh the risks of continued litigation.

Following a hearing, on July 20, 2009, the Court issued the Preliminary Approval Order, preliminarily approving of the Settlement. Pursuant to the Preliminary Approval Order, beginning on July 31, 2009, Lead Counsel caused the Notice to be sent to potential Class Members. *See* Affidavit of Michelle M. La Count, Esq. ("La Count Aff.") ¶¶5-11, attached as Exhibit ("Ex.") 1 to the Stickney Decl. In addition, a summary notice was published in *The Investor's Business Daily* on August 7, 2009. *Id.* ¶16. Pursuant to the Preliminary Approval Order, the deadline for Class Members to file objections to the Settlement, Plan of Allocation or the fee and expense application will expire on September 30, 2009. As of September 15, 2009, at least 47,376 Notices have been sent to potential Class Members. *Id.* ¶10. No Class Member has objected to date. *Id.* ¶18. In addition, the claims administrator has received only two exclusion requests. *Id.* ¶17.

## II.   PROCEDURAL HISTORY

A detailed description of the procedural history of the litigation, the claims asserted, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the

---

("Yaroshinsky") and Victor E. Zak ("Zak"). The claims against Yaroshinsky and Zak were dismissed pursuant to this Court's Order dated February 21, 2009 (Dkt. No. 150).

substantial risks and uncertainties of the litigation is contained in the accompanying Stickney Declaration.  A summary description is provided below.

### A.    Background

This is a securities fraud class action against Defendants for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), arising from Defendants' alleged false and misleading statements regarding the development of Velac Gel, the Company's highly-publicized new acne medication, without disclosing material information about an important carcinogenicity test required by the Food and Drug Administration ("FDA"), and Defendants' alleged false accounting for reserves and channel stuffing.

Connetics was a pharmaceutical company that developed and marketed dermatological products to treat various skin conditions, including acne.  As set forth in the Complaint, before the start of the Class Period, the Company acquired the rights to Velac Gel, a purportedly "safe and effective" acne treatment that had yet to undergo the required testing for, or to obtain approval from, the FDA.  During Connetics' testing of Velac, the drug failed an important FDA-required test, a laboratory study on mice known as a Tg.AC mouse dermal carcinogenicity study (the "Mouse Study").  The Complaint alleges that Defendants misled investors about the safety of Velac and the prospects for FDA approval while knowing that Velac had failed the Mouse Study for nearly a year.

In addition, the Complaint alleges that Defendants also issued false financial statements throughout the Class Period that misstated the Company's earnings.  The Complaint alleges that Connetics intentionally "sold" excess inventory to its three main distributors – a practice called "channel stuffing" – and also understated Connetics' reserves in violation of Generally Accepted Accounting Principles.   Defendants also allegedly made false and misleading statements specifically assuring investors that distributors' inventory levels were not inflated.  Ultimately, Connetics announced that the Company would restate its prior financial statements and that its then-current financial results were far below expectations because the Company had to reduce inventory levels at its distributors.

---

As set forth in the Complaint, the alleged false and misleading statements inflated the price of Connetics' securities and when the truth was revealed in a series of disclosures, investors who purchased the securities during the Class Period suffered damages.   Throughout the litigation, Defendants denied the Complaint's allegations, contending that their statements were not false or misleading and that Lead Plaintiff lacked evidence of scienter and loss causation. Stickney Decl. ¶14.

**B.    The Commencement And Consolidation Of The Class Actions And The Appointment Of Lead Plaintiff**

Beginning on or about October 31, 2006, various investors filed class actions against Connetics, Wiggans, Vontz and Yaroshinsky in the Southern District of New York, Dkt. numbers 06-11496 and 06-12875.  *Id.* ¶15.

By Order dated December 14, 2006, the Southern District of New York consolidated the two actions and appointed the Oklahoma Teachers as the Lead Plaintiff, and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel") as Lead Counsel.   The Court found that "in light of the large financial interest Oklahoma Teachers possesses in the present litigation, there is sufficient guarantee that Oklahoma Teachers will vigorously prosecute the class's claims."   December 14, 2006 Order [Dkt. No. 32].

**C.    Active Involvement Of Oklahoma Teachers**

Lead Plaintiff Oklahoma Teachers is a government-sponsored retirement plan that provides retirement, disability and survivor benefits to thousands of employees of Oklahoma public schools and other state-supported educational institutions.   Throughout the course of the litigation, Oklahoma Teachers has actively represented the interests of the class.   Oklahoma Teachers has supervised and monitored the progress of this litigation and actively participated in the case, including reviewing pleadings submitted in this matter; receiving regular status reports from Lead Counsel; participating in document and written discovery in this case; and participating in and supervising settlement negotiations, including in-person participation by Oklahoma Assistant Attorney General, David Kinney, in the March 2, 2009 mediation session in

San Francisco.  Stickney Decl. ¶18.

**D.    Preparation And Filing Of The
Consolidated Complaints And
Overcoming The Motions To Dismiss**

Lead Counsel engaged in an intensive investigation to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Lead Counsel thoroughly reviewed and analyzed all publicly available information regarding Connetics, including, but not limited to, its SEC filings and financial statements, press releases, reports about the Company in the media and analyst reports; interviewed former employees and other witnesses; and consulted with accountants and other experts to analyze the accounting, the FDA drug testing and approval process and other issues involved in the case.  *Id.* ¶19.

On February 14, 2007, Lead Plaintiff filed a consolidated class action complaint against the Company, Higgans, Wiggans, Vontz, Krochmal, Yaroshinsky, Victor Zak, certain Company directors, certain underwriters, and Ernst & Young LLP in the Southern District of New York. The consolidated complaint asserted claims under §§ 10(b), 20(a) and 20A of the Exchange Act, and §§ 11 and 15 of the Securities Act of 1933 ("Securities Act").  On March 5, 2007, Defendants moved to transfer the case to the Northern District of California.  On March 30, 2007, Lead Plaintiff filed its opposition to the motion to transfer.  By order dated May 23, 2007, the consolidated case was transferred to this Court where it was Dkt.ed as case number 07-02940.  *Id.* ¶¶20-21.

On June 28, 2007, Lead Plaintiff filed an amended consolidated complaint against the Company, Wiggans, Higgins, Vontz, Krochmal, Yaroshinsky and Zak [Dkt. No. 12].  The amended consolidated complaint asserted claims under §§ 10(b), 20(a) and 20A of the Exchange Act.  *Id.* ¶22.

On August 13, 2007, Zak filed an Answer to the amended consolidated complaint [Dkt. No. 20].  The remaining Defendants filed motions to dismiss, motions to strike, and motions for judicial notice [Dkt. Nos. 22, 24, 27, 29, 31, 38, 41].  Among other arguments, Defendants' motions to dismiss contended that the Lead Plaintiff lacked standing to assert claims related to

Velac because of the timing of its transactions in Connetics' securities.  Defendants Yaroshinsky and Zak also moved to strike certain portions of the amended consolidated complaint [Dkt. No. 27].  Following a hearing on October 19, 2007, the Court granted Defendants' motion to strike certain portions of the complaint, and as a result, granted Defendants' motions to dismiss.  The Court afforded Lead Plaintiff leave to amend the complaint [Dkt. No. 83].  *Id.* ¶23.

Lead Plaintiff undertook further investigation following dismissal of the amended consolidated complaint.   Lead Counsel's investigation included, among other things: (i) interviews of former employees of Connetics and other percipient witnesses; (ii) a review of filings by Connetics with the SEC, Company press releases and statements, and Company conference call transcripts; (iii) a review of court filings in the action styled *United States Securities and Exchange Commission v. Alexander J. Yaroshinsky, et al.*, 06-CV-2401-CM, including sworn statements therein; (iv) media and analyst research reports; (v) consultation with experts; (vi) consultation with the Company that conducted much of the early validation work that led to the FDA's acceptance of the Tg.AC mouse model, BioReliance Corporation; and (vii) review of literature concerning the Tg.AC mouse study.   The investigation also included contacting attorneys for the SEC concerning the investigation into the Company, a request of records from the Food and Drug Administration pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and contacting members of the Company's panel of experts convened on June 28, 2004.  *Id.* ¶25.

On March 14, 2008, Lead Plaintiff filed the Second Amended Complaint, alleging claims against the Defendants named therein under §§ 10(b), 20(a), and 20A of the Exchange Act.  By Order dated August 14, 2008 [Dkt. No. 126], the Court granted in part and denied in part Defendants' motions to dismiss and denied Defendants' motions to strike.  In ruling on the motions, the Court sustained Lead Plaintiff's §10(b) claims against Connetics, Wiggans, Higgins, Vontz and Krochmal.   In pertinent part, the Court sustained claims based on defendants' statements about the safety of Velac that were made after June 2004 and also found that the facts strongly infer scienter with regard to Defendants' false and misleading statements about Velac.  The Court also sustained claims based on Defendants' statements about Velac

made after April 13, 2005, including those made during the Annual Analyst and Investor Day on April 14 and those made in an April 26, 2005 press release that only partially disclosed the truth about Velac. The Court also sustained claims based on Defendants' violations of GAAP and channel stuffing, and rejected Defendants' argument that the Second Amended Complaint failed to set forth facts to establish loss causation. In addition to sustaining §10(b) claims, the Court sustained §20(a) claims against Wiggans, Higgins and Vontz for control-person liability. The Court also denied the motions to strike, finding that Lead Plaintiff and Lead Counsel had undertaken an appropriate investigation into the allegations set forth in the Second Amended Complaint pursuant to the PSLRA and Fed. R. Civ. P. 11. *Id.* ¶¶26-27.

The Court dismissed certain claims, narrowing the case. In particular, the Court dismissed claims based on Defendants' statements that were made before April 13, 2005, the date of a conference call between Company representatives and the FDA concerning FDA approval of Velac. In addition, the Court dismissed the § 20A claims against Wiggans, Vontz and Higgans, and dismissed the claims against Yaroshinsky and Zak with leave to amend. *Id.* ¶28.

Lead Plaintiff thereafter provided notice that it would, without amending its complaint, proceed under the Second Amended Complaint in accordance with the Court's August 14, 2008 Order [Dkt. No. 129]. The Court's Order lifted the automatic stay of discovery that applied during the pendency of defendants' motions to dismiss. Defendants filed an Answer to the Complaint on October 6, 2008 [Dkt. No. 132].

### E.   Case Management Conferences

Following the Court's August 14, 2008 Order, the parties conducted a conference pursuant to Federal Rule of Civil Procedure 26(f). Lead Counsel and counsel for Defendants conferred extensively to draft a joint statement addressing a wide range of case management issues, including competing views of a pretrial schedule, the early disclosure of damages calculations, appropriate limits on discovery and the production of electronically-stored information. *See* Stickney Decl. ¶30.

On November 14, 2008, and April 27, 2009, the Court case management conference [Dkt. No. 141] and thereafter issued a Pretrial Preparation Order setting forth certain discovery deadlines, including a discovery cut-off of October 30, 2009; certain deadlines for pretrial disclosures and pretrial motions; a deadline for amending the pleadings; a deadline for briefing and a hearing date for Lead Plaintiff's motion for class certification; and setting a final pretrial conference for June 2010 [Dkt. No. 185]. *Id.* ¶¶31-32.

## F.    **Discovery**

Lead Counsel pursued extensive discovery from Defendants and key non-parties. Such discovery included, for example, (a) preparing and serving document requests to Defendants; (b) preparing and serving subpoenas to non-party witnesses to obtain documents; (c) meeting and conferring with recipients of document requests; (d) negotiating a protective order to govern the treatment of confidential information and (e) obtaining, organizing and analyzing a substantial volume of documents produced by Defendants and third parties. *See* Stickney Decl. ¶¶33-35.

Lead Plaintiff issued subpoenas to and obtained documents from key non-parties, including Connetics' auditor Ernst & Young LLP; the Company's product distributors McKesson Corporation and Amerisource Bergen Corporation; the FDA; members of the Company's expert panel; and numerous financial analysts firms that covered Connetics securities during the Class Period. Lead Counsel engaged in numerous conferences with most of the subpoenaed third parties to discuss those third parties' objections to the subpoenas, to negotiate the scope of the subpoenas and to arrange for the production of responsive documents. *Id.* ¶¶36-37.

Ultimately, Lead Counsel obtained a substantial volume of documents as a result of the document requests and subpoenas directed to Defendants and numerous third parties. Lead Counsel, together with counsel working at the direction of Lead Counsel, undertook a diligent and extensive process of reviewing and analyzing such documents in order to prepare the case for trial in accordance with the schedule in the case. The documents were coded into various categories pertinent to the action, including witness and issue files, to prepare for depositions. Lead Counsel summarized the documents on its computer database and implemented a

1    sophisticated system to search for and locate relevant documents. *Id.* ¶38.

2        In addition, prior to reaching the agreement to settle this action, the parties negotiated the

3    schedule and scope of the depositions of representatives of the Company pursuant the Fed. R.

4    Civ. P. 30(b)(6), including scheduling the depositions of Defendants Wiggans and Krochmal, as

5    well as the former general counsel for Connetics. *Id.* ¶39.

6        **G.**     **Experts And Consultants**

7        Lead Counsel worked extensively with experts and consultants at different stages of the

8    case to prepare the Complaint, analyze documents, prepare for depositions and trial, and

9    negotiate the Settlement. *Id.* ¶40. As described further below, Lead Counsel utilized expert

10   consultants in conjunction with Lead Plaintiff's motion for class certification, and with preparing

11   materials and analyses presented at the mediations regarding damages. Lead Counsel also

12   utilized forensic accounting consultants regarding the alleged financial and accounting

13   misrepresentations. In addition, the regulatory and scientific medical context in which the

14   litigation occurred required Lead Counsel to seek the assistance of consultants experienced with

15   the FDA regulatory approval process as well as those knowledgeable in the area of specialized

16   medical and dermatological science, including, for example: (i) medications used in the

17   treatment of acne and combination drug treatments; (ii) drug product inserts and issues about

18   product safety; (iii) pre-clinical dermatological testing; and (iv) the FDA's drug application

19   process and advisory panel practice. *Id*.

20        **H.**     **Class Certification**

21        On March 16, 2009, Lead Plaintiff filed a motion to certify this action as a class action

22   and to appoint Oklahoma Teachers as class representative [Dkt. No. 155]. Lead Plaintiff's

23   motion included an expert declaration from Chad Coffman, CFA and documents and excerpts of

24   deposition testimony further supporting class certification. *Id.* ¶41.

25        On May 11, 2009, the Court heard oral argument on Lead Plaintiff's motion for class

26   certification and entered an order granting class certification and appointing Lead Plaintiff as

27   class representative on May 12, 2009 [Dkt. No. 183]. The Court's order certified a Class of all

28   persons and entities who purchased or otherwise acquired the publicly traded securities of

Connetics from January 27, 2004, through July 9, 2006, and who suffered damages as a result.[3]

### I.   **The Settlement**

The entire Settlement Fund of $12.75 million (after deduction of Court-approved expenses and attorneys' fees), plus interest, will be distributed to Class Members who timely submit valid proofs of claim.  There will not be any reversion to Defendants of any portion of the Settlement Fund.  *See* Stickney Decl. ¶48.

In December 2008, the parties agreed to mediate before the Honorable Daniel Weinstein (Ret.), but continued to litigate the action and conduct discovery.  On March 2, 2009, Lead Counsel and Oklahoma Assistant Attorney General, David Kinney, along with counsel for Defendants, participated in person at the mediation with Judge Weinstein in San Francisco.  *Id.* ¶49.

At the March 2, 2009 mediation session, the parties presented their respective views regarding the merits of the action as well as their views concerning available defenses, potential sources of recovery, the evidence and damage analyses.  The parties ultimately reached an impasse.  The mediation was suspended and litigation continued.  *Id.* ¶¶48-52.

Following the March 2, 2009 mediation, Judge Weinstein remained in communication with the parties about the case and prospects for a potential settlement.  Throughout the course of the settlement process, the negotiations were undertaken at arm's-length, between and among experienced counsel, the well-informed Lead Plaintiff and Defendants.  Ultimately, after extensive negotiations, on May 29, 2009, the parties agreed to a settlement of this action.  The settlement amount is consistent with the Mediator's recommendation based on his familiarity with the facts, claims, defenses and issues.  *Id.* ¶53.

---

[3]  Excluded from the Class are:  (i) the Defendants and Dismissed Defendants; (ii) members of the family of each Individual Defendant or Dismissed Defendant; (iii) any person who was an officer or director of Connetics during the Class Period; (iv) any person who is or was named as a defendant in any U.S. Government or state criminal or civil proceeding relating to Connetics; (v) any firm, trust, corporation, officer, or other entity in which any Defendant or Dismissed Defendant has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice to the Class.

On July 17, 2009, the Court held a hearing on the parties' motion for preliminary approval of the Settlement, and on July 20, 2009, the Court filed an Order granting preliminary approval and authorizing the Notice to be sent to Class Members [Dkt. No. 194].

As described in more detail in the La Count Affidavit, Lead Plaintiff provided notice of the Settlement to the Class through publication in *The Investor's Business Daily*, postings on Internet websites, and the mailing of at least 46,177 Notices.  *See* La Count Aff.  ¶¶5-16.

## III.  ARGUMENT

### A.  The Standards For Judicial
### Approval Of Class Action Settlements

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class action lawsuits.[4]  Indeed, class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[5]  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate.  *See also Woo v. Home Loan Group, L.P.*, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008).  On a motion for approval of a class action settlement, the Court must determine whether the interests of the class will be better served by resolution of

---

[4]  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

[5]  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  The law always favors the compromise of disputed claims, including those asserted in stockholder class actions.  *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

---

the litigation than by continuation of it.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

A court's role in settlement approval is essentially twofold, determining whether the settlement: (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate.  *Officers for Justice*, 688 F.2d at 625.  In exercising its discretion to approve the settlement of a class action, a district court should consider the following factors:  (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining a class action throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed and the stage of the proceedings"; (6) "the experience and views of counsel"; and (7) "the reaction of the class members to the proposed settlement."  *In re Rambus Inc. Deriv. Litig.,* 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000)); *see also Omnivision,* 559 F. Supp. 2d at 1041; *Home Loan Group,* 2008 WL 3925854, at *3 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.

In exercising its sound discretion, district courts should not adjudicate the merits of the case.[6]  As the Ninth Circuit has noted:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

---

[6]  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi,* 8 F.3d at 1375; *see also Omnivision,* 559 F. Supp. 2d at 1041 (citing *Officers for Justice,* 688 F.2d at 625).

1   *Officers for Justice,* 688 F.2d at 625 (emphasis added); *see also Weinberger v. Kendrick*, 698

2   F.2d 61, 74 (2d Cir. 1982) ("in order to avoid a trial, the judge must [not] in effect conduct one").

3       The presumption of reasonableness in this action is fully warranted because the

4   Settlement is the product of arm's-length negotiations presided over by an experienced mediator.

5   It is the considered judgment of Lead Counsel that this Settlement is a fair, reasonable, and

6   adequate resolution of the litigation and warrants this Court's approval. *See* Stickney Decl. ¶57.

7       **B.      The Settlement Meets The**
            **Ninth Circuit Standard For Approval**

8

9           **1.      The Risk, Expense, Complexity, And**
                  **Likely Duration Of Further Litigation**

10      If the litigation had continued, Lead Plaintiff faced substantial risks, including

11  establishing Defendants' liability and the Class' full amount of damages at summary judgment or

12  trial.  Lead Plaintiff and Lead Counsel took into account the Court's decision dismissing Lead

13  Plaintiff's claims in part.  They further considered that certain contested issues would have been

14  decided by a jury in the event of a trial, including whether Defendants acted with an intent to

15  mislead investors, whether the alleged misrepresentations or omissions were false and material to

16  investors, whether all of Class Members' losses were caused by the alleged misrepresentations or

17  omissions, and the amount of damages.  Defendants argued throughout the litigation that Lead

18  Plaintiff would be unable to prove that Defendants' statements were false, or that they were

19  made with scienter.  Specifically, Defendants argued that (a) the Company was advised by

20  experts that the positive findings of testing were a "false positive"; (b) Defendants were aware of

21  other drugs with similar test results that had been approved by the FDA; (c) Velac had already

22  been approved in Europe and had already been tested on 2,200 humans in clinical trials; and (d)

23  Defendants were allegedly led to believe that the test results would not prevent FDA approval.

24  Defendants also argued that the accounting corrections Connetics made when it issued its

25  restatement were only minor.  And finally, Defendants argued that the fact that the SEC

26  instituted no enforcement action supports Defendants' denial of any wrongdoing.  Defendants

27  undoubtedly would have continued to argue that their statements were not false and they lacked

28  scienter.  While Lead Plaintiff believes that its case is meritorious and that it has strong evidence,

if the Court or trier of fact agreed with Defendants, any recovery would have been substantially reduced or eliminated altogether.

Even if Lead Plaintiff prevailed through summary judgment, risks to the Class remain. Even a meritorious case can be lost at trial. See *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was dismissed and Plaintiffs were ordered to pay defendants the costs of defending the action). Even success at trial does not eliminate the risk.[7]

If this Settlement is not approved, the action is likely to continue for years and the ultimate result of further litigation cannot be foreseen. Given the stakes involved in this litigation, an appeal is virtually assured regardless of the result of trial. Instead of the lengthy, costly, and uncertain course of further litigation with Defendants, the Settlement provides an immediate and certain recovery for the Class. The Settlement clearly outweighs the substantial risks associated with lengthy continued litigation.

## 2.  Lead Plaintiff's Case Was Strong, But Entailed Risks

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin.*, 213 F.3d at 459; *Rambus*, 2009 WL 166689, at *2. Lead Counsel believes that the settlement terms compare favorably to the risks associated with continued litigation. As described in the Stickney Declaration, Lead Counsel conducted an extensive investigation and analysis of the claims. Its efforts included, but were not limited to: (1) an exhaustive factual investigation into the events and circumstances underlying the claims, including contacting and interviewing confidential

---

[7] For example, following a verdict in favor of plaintiffs in *In re Apollo Group, Inc. Sec. Litig.*, the court overturned the verdict and granted defendants motion for judgment as a matter of law. 2008 WL 3072731 (D. Ariz. Aug 4, 2008). In *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. The court, however, overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant.

witnesses and reviewing and analyzing all relevant publicly available media, analyst reports, and SEC filings and public statements; (2) drafting of a detailed amended consolidated complaint and the Second Amended Complaint; (3) extensive briefing on Defendants' motions to dismiss; (4) obtaining evidence through discovery, including review and analysis of the documents produced by Defendants and key third-parties; (5) depositions; (6) consultations with experts; (7) review and analyses of potential sources of recovery; and (8) drafting of a mediation statement and preparing for and participating in mediation.  Stickney Decl. ¶¶19-52.

Lead Counsel also analyzed the evidence adduced during its investigation and researched the applicable law with respect to the claims of Lead Plaintiff and the Class against the Defendants and the potential defenses thereto.  Lead Counsel also retained and conferred with experts, including an experienced damages consultant regarding the potential scope of class-wide damages and other experts in specialized areas.  As a result, Lead Counsel gained a comprehensive understanding of the strengths and weaknesses of the case and possible recoverable damages.  *Id.*

The proposed Settlement provides Class Members with an immediate cash payment.  In sum, Lead Plaintiff and Lead counsel have concluded that the Settlement is in the best interests of Lead Plaintiff and the Class and the Settlement is fair, reasonable, and adequate.  This conclusion is based on, among other things, the risk, time and expense in continuing to prosecute the case; the significant uncertainties in predicting the outcome of this complex litigation; and the substantial risk that the Class would recover less than the amount provided by the Settlement, or nothing at all.

### 3. The Amount Obtained In Settlement

As set forth above, the Settlement provides for the recovery of $12.75 million in cash plus interest allocated among Class Members after deduction for Court-approved fees and expenses.  As noted above, the settlement amount is consistent with the Mediator's recommendation based on his familiarity with the facts, claims, defenses and issues.  *See* Stickney Decl. ¶53.  The $12.75 million was deposited into an escrow account on or about July 30, 2009, and has been earning interest for the benefit of the Class.  *Id.* ¶6.

If the litigation had continued, Lead Plaintiff faced substantial risks and limitations. As discussed above, there were substantial risks with respect to establishing proof of the claims and the Class' full amount of damages. In addition, litigating this complex securities fraud class action to completion would result in significant expense and delay. This recovery, obtained in the face of the risk of no recovery at all, is particularly supportive of approval of the Settlement.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In fact, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Linney*, 151 F.3d at 1242 (citations omitted)). Here the substantial amount of the Settlement clearly falls within the "range of reasonableness" and provides a tremendous benefit to the Class considering, *inter alia*, the limitations on the Class' claims and other litigation risks.

While contested issues over damages might have yielded less recovery after trial or none at all, even the possibility that the Class "might have received more if the case had been fully litigated is no reason not to approve the settlement."[8] Indeed, "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination . . . Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted).

Here, the Settlement confers an immediate and valuable cash benefit to Class Members. Given the complexities of the litigation and the continued risks if the parties were to proceed

---

[8] *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion.").

throughout dispositive motions and trial, the Settlement presents a reasonable resolution of this action and eliminates the risk that the Class might not otherwise recover.

### 4. The Extent Of Discovery Completed, And The Stage Of The Proceedings

The stage of proceedings and discovery are additional factors supporting the Settlement. Here, Lead Counsel advanced the case through, among other things, the investigation supporting the consolidated complaints and the operative Complaint, opposing Defendants' motions to dismiss and related motions, consulting with experts, certifying the Class, and preparing for and participating in mediation overseen by Judge Weinstein.  In addition, Lead Counsel conducted a thorough investigation of the facts and claims of this case, including review and analysis of the Company's SEC filings, annual reports, and other public statements; interviews with confidential witnesses; and review and analysis of a substantial volume of documents produced by Defendants and third-parties.  *See* Stickney Decl. ¶¶19-52.  This Settlement is based upon adequate information and a sufficient investigation for an in-depth analysis of the Class' claims.

### 5. The Experience And Views Of Lead Counsel And Lead Plaintiff

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).  This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation."[9]  This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378.  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 WL 1594403, at *9 (internal citation omitted).

---

[9] *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted); *Rambus,* 2009 WL 166689, at *3; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007).

This action has been litigated by experienced and competent counsel on both sides. Lead Counsel has many years of experience in litigating securities fraud actions throughout the country, and in assessing the relevant merits of each side's case.[10] The parties have been actively litigating this case for over two years. Lead Counsel conducted a sophisticated and extensive investigation into the claims as asserted in the complaints, including but not limited to multiple interviews with confidential witnesses, review of the extensive document production, and consultation with experts. Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of plaintiffs' claims, both factually and legally, and was able to engage in a rigorous negotiation process with Defendants.

Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by experienced counsel from a prominent law firm, Fenwick & West LLP, a firm with substantial experience in this type of litigation. The representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class.

As a result, the parties' settlement negotiations were extensive and included an in-person and telephonic mediation sessions before Judge Weinstein, a well-regarded mediator with substantial experience in the mediation of complex actions. Therefore, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining between the parties, and this factor supports a finding that the Settlement is fair, adequate and reasonable for purposes of final approval. The arm's-length negotiations support approval of the Settlement. *See Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

It is Lead Counsel's informed opinion that, given the uncertainty and further substantial expense of pursuing this action through dispositive motions, trial and possible appeals, the proposed Settlement is fair, reasonable and adequate and is in the best interests of the Class. *See* Stickney Decl. ¶57.

---

[10]  *See* Firm Resume of BLB&G, attached as Ex. 3 to Stickney Decl.

Moreover, under the regime put in place with the enactment of the PSLRA, the Lead Plaintiff's approval of a settlement should be accorded "special weight because [the Lead Plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV,* 221 F.R.D. at 528 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.44). Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. CONF. REP. 104-369, at *32 (1995).

Here, Lead Plaintiff's approval of the Settlement is compelling evidence that the Settlement is fair, reasonable and adequate.  *See* Stickney Decl. ¶55.

### 6.    Reaction Of The Class Members To The Proposed Settlement

As courts have noted, the reaction of the class to the proffered settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *Rambus,* 2009 WL 166689, at *3 (citation omitted).  Indeed, courts have explained that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision,* 559 F. Supp. 2d at 1043 (citation omitted).

Pursuant to this Court's Preliminary Approval Order filed July 20, 2009, the deadline for Class Members to file their requests to exclude themselves from the Settlement or to object to any aspect of the Settlement, the proposed Plan of Allocation or Lead Counsel's fee and expense request will expire on September 30, 2009.  In response to at least 47,376 Notice packets mailed, as of the date of this filing, there are no objections to any aspect of the Settlement, and there are

only two exclusion requests.[11]  The favorable reaction of the Class further supports approval of the Settlement.

### C.    The Settlement Provided Adequate Notice To The Class

As required by the Court's Preliminary Approval Order, Lead Plaintiff (through the Claims Administrator) notified potential Class Members of the Settlement by mailing a copy of the Notice to all persons (as stated in Connetics' transfer agent's records) who purchased or acquired Connetics securities during the Class Period.  La Count Aff. ¶¶5-11.  In addition, a Publication Notice or "Summary Notice" was published in the *Investor's Business Daily* on August 7, 2009.  *Id.* ¶16.  The Notice and the Summary Notice also referenced the Internet websites for Lead Counsel and the Claims Administrator where investors could view and download the Notice and Proof of Claim form.  *Id.* ¶14; Stickney Decl. ¶62.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

The Notice advised Class Members of the essential terms of the Settlement, sets forth the procedure for objecting to the Settlement, and provided specifics on the date, time and place of the final approval hearing.  The Notice also contains information regarding Lead Counsel's fee application and the proposed plan of allocating the settlement proceeds among Class Members. Thus, the Notice provided the necessary information for Class Members to make an informed decision regarding the proposed Settlement.

The Notice fairly apprises Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, and due process.  *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007)

---

[11]  *See* La Count Aff. ¶¶17-18.  The requests for exclusion are attached as Ex. E to the La Count Aff.  Those seeking exclusion will also be listed in Ex. 1 to the Proposed Judgment which will be submitted to the Court following expiration of the deadline for seeking exclusion.

1   (approving similar notice regimen); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

2   1170 (S.D. Cal. 2007); *see also Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009)

3   ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to

4   alert those with adverse viewpoints to investigate and to come forward and be heard") (citations

5   omitted).

6       **D.    The Plan Of Allocation Is Fair And**
        **Reasonable And Should Be Approved**

7

8           Lead Plaintiff has proposed a plan to allocate the proceeds of the Settlement among Class

9   Members who submit valid Proof of Claims.  The objective of the proposed Plan of Allocation is

10  to equitably distribute the Settlement proceeds to those Class Members who suffered economic

11  losses as a result of the alleged false and misleading statements and omissions set forth in the

12  Complaint.  While all Class Members' claims arise from the same false or misleading statements,

13  the amount of such potential damages varied.  Differences of this nature among class members

14  are common in securities litigation and are commonly addressed by a plan of allocation.

15          Lead Plaintiff considered different approaches for allocating the recovery to claimants.

16  For the purpose of allocation, Lead Plaintiff engaged Winnemac Consulting to consult in drafting

17  the plan to allocate the settlement proceeds among claimants, and to provide an opinion on

18  whether the Plan of Allocation is fair and reasonable.  Stickney Decl. ¶¶65-68.  The Declaration

19  of Chad Coffman ("Coffman Decl."), attached to the Stickney Declaration as Ex. 2, explains the

20  methods used to determine the Recognized Losses and the basis for the analysis.  A "Recognized

21  Loss" will be calculated for each purchase or acquisition of Connetics securities during the Class

22  Period as reflected on the Claim Forms timely submitted by Class Members.  The calculation of

23  the Recognized Loss will depend upon several factors, including what type of security was

24  purchased, how many shares of the security were purchased, when and at what price the security

25  was purchased or otherwise acquired, and when and at what price the security was sold.

26          Assessment of the adequacy of a plan of allocation in a class action is governed by the

27  same standards of review applicable to the settlement as a whole – the plan must be fair,

28  reasonable and adequate.  *Omnivision,* 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*, 955

---

F.2d 1268, 1284 (9th Cir. 1992). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted). A plan of allocation that allocates settlement funds to class members based on the extent of their injuries or the strength of their claims is reasonable. *Omnivision,* 559 F. Supp. 2d at 1045.

The goal of an equitable plan of allocation is fairness to the class as a whole, taking into consideration the strengths of claims based upon available facts and evidence, as well as the size of the fund to be distributed. Moreover, there is no requirement that a settlement must benefit all class members equally. *See Mego Fin*., 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery). The proposed Plan of Allocation in this case is based on such principles and therefore falls within the mainstream of allocation plans routinely approved by courts. It was prepared in consultation with Lead Plaintiff's damages consultant, tracks the theory of damages asserted by Lead Plaintiff, and is necessarily fair, reasonable and adequate to the Class as a whole. *See* Coffman Decl. ¶19. In addition, the proposed Plan of Allocation was adequately explained in the Notice sent to Class Members. Notably, in response to over 47,000 Notices, as of the date of this filing, there have been no objections to the proposed Plan of Allocation and only two requests for exclusion. La Count Aff. ¶¶17-18.

## IV.   **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully request that the Court grant final approval of the Settlement and Plan of Allocation, and enter the proposed Final Judgment And Order Of Dismissal With Prejudice and proposed Order Approving Plan Of Allocation submitted herewith.

/ / /

/ / /

/ / /

Dated: September 18, 2009

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP


            */s/ David R. Stickney*
            DAVID R. STICKNEY

DAVID R. STICKNEY
NIKI L. MENDOZA
TAKEO A. KELLAR
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class