BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
DAVID R. STICKNEY   (Bar No. 188574)
NIKI L. MENDOZA   (Bar No. 214646)
TAKEO A. KELLAR   (Bar No. 234470)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
davids@blbglaw.com
nikim@blbglaw.com
takeok@blbglaw.com
            -and-
CHAD JOHNSON
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:     (212) 554-1400
Fax:     (212) 554-1444
chad@blbglaw.com

Attorneys for Lead Plaintiff Teachers' Retirement
System of Oklahoma and Lead Counsel to the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CONNETICS SECURITIES LITIGATION.<br><br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Case No. C 07-02940 SI<br><br>NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:             October 9, 2009<br>TIME:             9:00 a.m.<br>COURTROOM:   10<br>JUDGE:           Hon. Susan Illston |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii-iv

I.      PRELIMINARY STATEMENT ........................................................................1

II.     HISTORY OF THE LITIGATION ...................................................................3

III.    THE REQUESTED ATTORNEYS' FEES ARE FAIR
        AND REASONABLE ........................................................................................3

        A.     A Reasonable Percentage Of The Fund Recovered
               Is An  Appropriate Approach To Awarding
               Attorneys' Fees In Common Fund Cases ............................................3

        B.     A Fee Of 25% Is Reasonable ...............................................................4

        C.     Consideration Of The Relevant  Factors Used By
               Courts In The Ninth  Circuit Justifies A Fee Award
               Of 25% ...................................................................................................5

               1.      The Results Achieved ...............................................................5

               2.      Risks Of Litigation...................................................................6

               3.      The Skill Required And Quality Of The
                       Work Performed........................................................................7

               4.      The Contingent Nature Of The Fee And
                       The Financial Burden Carried By Counsel ...............................8

               5.      Awards Made In Similar Cases..................................................9

               6.      Reaction Of The Class Supports The Fees
                       And Expenses Sought ...............................................................11

               7.      The Lodestar Crosscheck Confirms The
                       Reasonableness Of The Requested Fee ...................................12

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE
        AND WERE NECESSARILY INCURRED TO ACHIEVE
        THE BENEFIT OBTAINED FOR THE CLASS ..........................................13

V.      CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...............................................................4, 10

*In re Apollo Group, Inc. Sec. Litig.*,
   2008 WL 3072731 (D. Ariz. Aug 4, 2008)...................................................9

*Blum v. Stenson*,
   465 U.S. 886 (1984).......................................................................................10

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...........................................................................14

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ...................................................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ...................................................9

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................8

*Gerstein v. Micron Tech. Inc.*,
   1993 U.S. Dist. LEXIS 21215 (D. Idaho Sept. 10, 1993).................................4

*Glass v. UBS Finan. Servs., Inc.*,
   2009 WL 306120 (9th Cir. Feb. 9, 2009) ...............................................3, 4, 5

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ..........................................................................14

*Gottlieb v. Wiles*,
   150 F.R.D. 174 (D. Colo. 1993) .......................................................................14

*Gustafson v. Valley Ins. Co.*,
   2004 WL 2260605 (D. Or. Oct. 6, 2004)............................................................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................4

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...............................................................................13

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................................6, 7

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ................................................................6, 10

*In re Immunex Sec. Litig.*,
   864 F. Supp. 142 (W.D. Wash. 1994) ...............................................................12

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................9

*Keith v. Volpe*,
   501 F. Supp. 403 (C.D. Cal. 1980) ...................................................................12

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ........................................................................4, 10

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .......................................10, 11, 15

*Kurzweil v. Philip Morris Cos., Inc.*,
   1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) .................................................12

*In re Lucent Tech., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ..................................................................12

*In re M.D.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...................................................10

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................. passim

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ........................................................................2, 3

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
   1984 WL 21981 (N.D. Ill. Sept. 14, 1984) .....................................................11

*In re Pub. Service Co. of New Mexico*,
   1992 WL 278452 (S.D. Cal. July 28, 1992) ....................................................10

*Rabin v. Concord Assets Group, Inc.*,
   1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ...................................................12

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...............................................................12

*In re RJR Nabisco, Inc. Sec. Litig.*,
   1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...................................................10

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ...................................................................3

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ..................................................................10

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ..................................................................10

*Thornberry v. Delta Air Lines, Inc.*,
676 F.2d 1240 (9th Cir. 1982) ................................................................15

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .....................................................................3

*In re United States Bioscience Sec. Litig.*,
155 F.R.D. 116 (E.D. Pa. 1994)..............................................................10

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .........................................................12

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................ passim

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .........................................................6, 9, 12

*In re WorldCom, Inc. Sec. Litig.*,
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004).........................................12

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 77z-1(a)(6)............................................................................3

Ronald I. Miller, et al., *Recent Trends in Shareholder Class Action Litigation: Beyond
the Mega-Settlements, is Stabilization Ahead?* (NERA Apr. 2006) .........................6

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that pursuant to the Court's Order Preliminarily Approving Settlement And Providing For Notice, filed July 20, 2009 ("Preliminary Approval Order," Dkt. No. 194), on October 9, 2009, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Susan Illston, located at the United States District Court, 450 Golden Gate Avenue, San Francisco, California, Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel") will and hereby does move for entry of an order awarding attorneys' fees and expenses relating to its prosecution of the claims by Lead Plaintiff Teachers' Retirement System of Oklahoma ("Lead Plaintiff" or "Oklahoma Teachers"), acting on behalf of itself and all Class Members in the above-titled action (the "Action"), against defendants Connetics Corporation ("Connetics" or the "Company"), and Thomas G. Wiggans, Gregory Vontz, John Higgins and Lincoln Krochmal (the "Individual Defendants" collectively with Connetics, the "Defendants").[1]

## I.      PRELIMINARY STATEMENT

Lead Plaintiff and Lead Counsel have succeeded in reaching a proposed Settlement with Defendants for $12.75 million in cash, plus accrued interest for the benefit of the Class. The funds were deposited into an escrow account on or about July 30, 2009, and have been accruing interest for the benefit of the Class.

As detailed in the accompanying Stickney Declaration, the Settlement was achieved only after the parties actively litigated the case for over two years. Lead Counsel's efforts included conducting an extensive pre-filing investigation; locating and interviewing numerous former Connetics employees and additional witnesses; completing an extensive review and analysis of Connetics' SEC filings and other documents related to the alleged false and misleading

---

[1] This Motion is based on the accompanying Declaration of David R. Stickney in Support of Final Approval of Settlement and Plan of Allocation, and Approval of Award of Attorneys' Fees and Expenses ("Stickney Decl."); the Stipulation of Settlement dated July 10, 2009 [Dkt. No. 190] (the "Stipulation"); all other pleadings filed in this case; and such additional evidence or argument as may be presented at the hearing. Unless otherwise defined herein, all capitalized terms herein shall have the meaning stated in the Stipulation.

statements as alleged in the Complaint, including relevant SEC filings, analyst reports, and press releases; filing the detailed amended consolidated complaint and the Second Amended Complaint; opposing Defendants' successive motions to dismiss; retaining and consulting with a damages expert and additional experts in specialized areas; reviewing and analyzing a substantial volume of documents produced by Defendants and third parties; obtaining class certification; and preparing for and participating in in-person and telephonic mediation sessions before an experienced mediator.

Lead Counsel undertook the prosecution of this action on an entirely contingent basis. As compensation for the efforts expended to achieve the recovery for the Class, Lead Counsel is applying for fees constituting 25% of the Settlement Fund, or $3,187,500, and for reimbursement of $398,689.23 in out-of-pocket expenses.[2]   The percentage fee requested was agreed to and approved by Lead Plaintiff, a sophisticated institutional investor with experience in prosecuting securities class actions under the Private Securities Litigation Reform Act of 1995 (the "PSLRA").   *See* Stickney Decl. ¶69.   That fee percentage is in line with the benchmark established by the Ninth Circuit.   *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989)).   In addition, a lodestar cross-check affirms the reasonableness of the requested fee award. Plaintiffs' Counsel devoted substantial resources to prosecuting this action for years, spending over 7,464 hours for a total lodestar of $3,321,741.25.   Stickney Decl. Exs. 4 and 6.   Thus, the total lodestar is higher than the amount of the attorneys' fee requested (*i.e.*, a negative multiplier), and supports the reasonableness of the fee request.

As of September 15, 2009, Notice of Lead Counsel's proposed fee application was sent to 47,376 potential Class Members.   *See* Affidavit of Michelle M. La Count, Esq. ("La Count Aff."), attached as Ex. 1 to Stickney Decl., ¶10.   The deadline for Class Members to object to the Settlement and/or Lead Counsel's fee application, or to seek exclusion from the Class, expires on

---

[2] The expenses for which reimbursement is sought include those expenses of Lead Counsel BLB&G, as well as the law firm of Barrack Rodos & Bacine which performed work in this case under the direction and supervision of Lead Counsel.   *See* Stickney Decl. ¶76.   BLB&G and Barrack Rodos & Bacine are collectively referred to herein as "Plaintiffs' Counsel."

September 30, 2009.  As of the filing of this Motion, not a single Class Member has objected, and only two requests for exclusion have been received.  *Id.* ¶¶17-18.

**II.    HISTORY OF THE LITIGATION**

Lead Counsel respectfully refers the Court to the accompanying Stickney Declaration for a description of the procedural history of the litigation, the claims asserted, the investigation and discovery undertaken, the negotiations and description of the Settlement, and the substantial risks and uncertainties of the litigation.

**III.    THE REQUESTED ATTORNEYS'**
**FEES ARE FAIR AND REASONABLE**

      **A.    A Reasonable Percentage**
              **Of The Fund Recovered Is An**
              **Appropriate Approach To Awarding**
              **Attorneys' Fees In Common Fund Cases**

Lead Counsel seeks a reasonable percentage of the common fund recovered for the benefit of the Class.  The PSLRA requires that "total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 77z-1(a)(6) (emphasis added).  The Ninth Circuit has expressly approved the percentage-of-recovery approach and this approach has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit.  *See Glass v. UBS Finan. Servs., Inc.,* 2009 WL 306120, at *2-*3 (9th Cir. Feb. 9, 2009) (affirming 25% fee award, overruling objection based on use of percentage-of-the-fund approach); *see also Paul, Johnson*, 886 F.2d at 268; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Vizcaino*, 290 F.3d 1043; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citations omitted).

The percentage method is desirable because it most fairly correlates the compensation of counsel with the benefit conferred upon the class.  *See Omnivision,* 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of using the percentage method).  First, it closely aligns the lawyers' interest in being paid a fair fee with the interest of

the class in achieving the maximum possible recovery in the shortest amount of time.[3]  Second, the percentage method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See Gerstein v. Micron Tech. Inc.*, 1993 U.S. Dist. LEXIS 21215, at *14 (D. Idaho Sept. 10, 1993) ("This court favors the percentage approach [in common fund cases] because it conserves scarce judicial resources by saving the court from having to make a series of largely judgmental decisions with respect to the actual fees claimed."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989).  It is also consistent with the practice in the private marketplace where contingent-fee attorneys are customarily compensated by a percentage of the recovery.

**B.    A Fee Of 25% Is Reasonable**

After the decision is made to apply the percentage method of fee determination, courts must determine what percentage to apply.  The Ninth Circuit has repeatedly held that 25% of the settlement amount is the appropriate benchmark for attorneys' fees awarded under the percentage method.  *See, e.g., UBS Finan.,* 2009 WL 306120, at *2 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25% in attorneys' fees as a "benchmark award")).

Here, in view of, among other circumstances, the litigation risks faced; the result achieved; the skill required and the quality of the representation; the endorsement of the fee by the institutional Lead Plaintiff; and the support of the Class, an award of 25% of the Settlement Fund is eminently justified.

---

[3]  The court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), identified the aligning of lawyers' and clients' interest as among the merits of the percentage approach:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants...

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

C.  **Consideration Of The Relevant Factors Used By Courts In The Ninth Circuit Justifies A Fee Award Of 25%**

The ultimate task for this Court in awarding attorneys' fees is to ensure that Lead Counsel is fairly compensated for the work they performed and the results they achieved.  Courts in this Circuit consider the following factors:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class to the proposed fee and expense request; and (7) the amount of a lodestar cross-check.  *See Vizcaino,* 290 F.3d at 1048-50; *see also UBS Finan.,* 2009 WL 306120, at *2; *Omnivision,* 559 F. Supp. 2d at 1046-48.  As discussed below, application of these factors here confirms that the 25% fee is justified.

### 1.  The Results Achieved

Lead Counsel has succeeded in obtaining a $12.75 million cash Settlement for the Class.  This achievement was the result of Lead Counsel's vigorous prosecution and settlement negotiations.   As a result of this Settlement, Class Members will receive immediate compensation for their losses as a result of federal securities laws violations by Defendants.  The immediate Settlement will avoid the substantial risks of lesser or no recovery due to the defenses to liability and limitations on the recoverable damages.

Courts have consistently recognized that the settlement achieved is a major and perhaps the most important factor to be considered in determining an appropriate fee award.  *See Omnivision,* 559 F. Supp. 2d at 1046 (citation omitted); *see also UBS Finan.,* 2009 WL 306120, at *2 (noting district court's findings of "exceptional results" supported fee request).

As detailed in the Stickney Declaration and discussed below, Lead Plaintiff faced numerous obstacles in this litigation.   The expense and length of continued proceedings necessary to prosecute the action through dispositive motions, further discovery, trial and appeals would be substantial.  Lead Plaintiff, aided by Lead Counsel, carefully considered the likelihood of success against Defendants, the potential total damages that could be recovered against Defendants, as well as the uncertain outcome and risk of any litigation, especially in complex

1    actions such as this, and the difficulties and delays inherent in such litigation.   Particularly in

2    light of these circumstances, the amount obtained is a substantial achievement on behalf of the

3    Class, and weighs in favor of granting the requested 25% fee.

4                    **2.    Risks Of Litigation**

5            Risk that further litigation might result in plaintiffs not recovering at all is an important

6    factor in determining a fair fee award.  *See, e.g., Omnivion,* 559 F. Supp. 2d at 1047; *In re*

7    *Washington Pub. Power Supply Sys. Sec. Litig., ("WPPSS"),* 19 F.3d 1291, 1299-1301 (9th Cir.

8    1994); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005)

9    ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of

10   expenses, is a factor in determining counsel's proper fee award.").

11           While courts have always recognized that securities class actions carry significant risks,

12   post-PSLRA rulings make it clear that the risk of no recovery has increased exponentially.

13   Courts have noted that "securities actions have become more difficult from a plaintiff's

14   perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D.

15   166, 194 (E.D. Pa. 2000).   According to an April 2006 NERA study, dismissal rates have

16   doubled since the PSLRA, accounting for 40.3% of dispositions.  *See* Ronald I. Miller, et al.,

17   *Recent Trends in Shareholder Class Action Litigation:   Beyond the Mega-Settlements, is*

18   *Stabilization Ahead?*, at 4 (NERA Apr. 2006).

19           In this action, Lead Counsel, like the Class Members, faced the substantial risk of lesser

20   or no recovery.   The Court granted in part Defendants' motions to dismiss, narrowing the claims

21   and recoverable damages that the Class could pursue going forward.   Myriad additional risks

22   remained in this case.   For example, Defendants argued throughout the litigation that Lead

23   Plaintiff would be unable to prove that Defendants' statements were false, or that they were

24   made with scienter.   Specifically, Defendants argued that (a) the Company was advised by

25   experts that the positive findings of testing were a "false positive"; (b) Defendants were aware of

26   other drugs with similar test results that had been approved by the FDA; (c) Velac had already

27   been approved in Europe and had already been tested on 2,200 humans in clinical trials; and (d)

28   Defendants were allegedly led to believe that the test results would not prevent FDA approval.

Defendants also argued that the accounting corrections Connetics made when it issued its restatement were only minor.  And finally, Defendants argued that the fact that the SEC instituted no enforcement action supports Defendants' denial of any wrongdoing.  Defendants undoubtedly would have continued to argue that their statements were not false and they lacked scienter.  While Lead Plaintiff believes that its case is meritorious and that it has strong evidence, if the Court or trier of fact agreed with Defendants, any recovery would have been substantially reduced or eliminated altogether.

In the face of these risks, Lead Counsel achieved a $12.75 million recovery for the Class. Under these circumstances, the requested fee is fully justified.

### 3. The Skill Required And Quality Of The Work Performed

The third factor to consider in determining what fee to award is the skill required and quality of work performed.  *Gustafson v. Valley Ins. Co.,* 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004).  "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' [citation omitted].  This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision,* 559 F. Supp. 2d at 1047; *see also Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award.").

Here, the attorneys at BLB&G are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record in such cases.[4]  From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class.  Lead Counsel demonstrated that they would work to try to develop sufficient evidence to support a convincing case.  Through Lead Counsel's persistent and skillful work, Lead Plaintiff was able to plead detailed allegations based on its investigation, and largely defeat Defendants' motions to dismiss.

---

[4]  *See* Firm Resume of BLB&G, attached as Ex. 3 to the Stickney Decl.

As detailed in the Stickney Declaration, Lead Counsel also successfully obtained documents from Defendants and third parties during discovery. Lead Counsel's skill and experience was also key in communicating with the experts it necessarily retained in this complicated securities class action, including experts regarding damages, accounting and FDA-approval issues. Stickney Decl. ¶¶33-40. In addition, Lead Counsel successfully obtained certification of the Class, following full briefing and argument. *See* Stickney Decl. ¶¶41-46.

The fact that Lead Counsel has demonstrated a willingness and ability to prosecute complex cases such as this throughout trial and appeals was undoubtedly a factor that encouraged Defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Class.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Lead Counsel. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Here, Defendants were represented by Fenwick & West LLP, a firm with substantial experience in this type of litigation. Thus, the fact that Lead Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work.

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent

representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.[5]

Here, Plaintiffs' Counsel received no compensation during the course of this action and invested $3,321,741.25 in time, and incurred expenses (totaling $398,689.23) in obtaining the Settlement for the benefit of the Class.  *See* Stickney Decl. ¶¶76, 77, 87-90.  Additional work in connection with the Settlement and claims administration will also be required.  In addition to the advancement of costs, lawyers working on the case have forgone the business opportunity to devote time to other cases.  *See Vizcaino*, 290 F.3d at 1050.  Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

Indeed, the risk of no recovery in complex cases is very real.  Lead Counsel knows from personal experience that, despite the most vigorous and competent efforts, their success in contingent litigation such as this is never guaranteed.  The commencement of a class action is no guarantee of success.  These cases are not always settled, nor are plaintiffs' lawyers always successful.[6]  Hard, diligent work by skilled counsel is required to develop facts and theories to prosecute a case or persuade defendants to settle on terms favorable to the Class.

### 5.   **Awards Made In Similar Cases**

Lead Counsel seeks a fee equal to the Ninth Circuit's 25% benchmark for common fund cases.  "However, in most common fund cases, the award exceeds that benchmark."  *Omnivision,*

---

[5]  *WPPSS*, 19 F.3d at 1299; *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007) ("Plaintiffs' counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation."); *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.") (citations omitted).

[6]  Indeed, the accompanying Motion For Final Approval Of Settlement And Plan Of Allocation describes two recent cases where plaintiffs' class counsel has either lost at trial (and was forced to pay all of defendants' costs) or won at trial only to have a substantial judgment overturned through post-trial motions.  *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) and *In re Apollo Group, Inc. Sec. Litig.*, Slip Copy, 2008 WL 3072731 (D. Ariz. Aug 4, 2008).

---

1   559 F. Supp. 2d at 1047 (approving 28% fee award in securities class action) (citing *Activision,*

2   723 F. Supp. at 1377-78 (surveying securities cases nationwide and noting, "This court's review

3   of recent reported cases discloses that nearly all common fund awards range around 30%")); *see*

4   *also Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)

5   (approving 30% fee award); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478 (N.D.

6   Cal. Apr. 4, 2007) (approving 30% fee award).

7       In addition, many courts weigh the customary fee in the marketplace for non-class action

8   contingency cases as a significant measure in approving fees.  *See e.g., In re Synthroid Mktg.*

9   *Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in

10  common-fund cases, courts must do their best to award counsel the market price for legal

11  services, in light of the risk of nonpayment and the normal rate of compensation in the market at

12  the time."); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24,

13  1992) ("What should govern such [fee]awards is not the essentially whimsical view of a judge,

14  or even a panel of judges, as to how much is enough in a particular case, but what the market

15  pays in similar cases"); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court

16  must give counsel the market rate for legal services . . . .").

17      Although the Ninth Circuit has not adopted the marketplace analogy as a factor to

18  consider in setting fees in class actions, the Circuit expressly recognized it as at least "probative"

19  of what fee is reasonable.  *Vizcaino*, 290 F.3d at 1049.  If this was a non-class action litigation,

20  the customary contingent fee would likely range between 30 and 40 percent of the recovery.[7]

21  _____

22  [7]  *See, e.g., Ikon*, 194 F.R.D. at 194 ("in private contingency fee cases, particularly in tort
23  matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty
    percent of any recovery"); *accord Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an
24  attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases,
    therefore, the fee is directly proportional to the recovery.") (concurring opinion); *In re United*
25  *States Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's
    conclusion that 30% would likely have been negotiated in securities action); *see also Kirchoff*,
26  786 F.2d at 323 (observing that 40% is the customary fee in tort litigation); *In re Pub. Service*
    *Co. of New Mexico*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992); ("[i]f this were a non-
27  representative litigation, the customary fee arrangement would be contingent, on a percentage
    basis, and in the range of 30% to 40% of the recovery"); *In re M.D.C. Holdings Sec. Litig.*, 1990
28  WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("[i]n private contingent litigation, fee contracts

1    Plaintiffs' Counsel's work was performed, and the results achieved, on a wholly

2  contingent basis in the face of determined opposition.  Under these circumstances, it necessarily

3  follows that Lead Counsel is entitled to the award of a reasonable percentage fee based on the

4  benefit conferred and the common fund obtained.  Under all of the circumstances present here, a

5  25% fee is fair and reasonable.

6              **6.      Reaction Of The Class Supports**
                       **The Fees And Expenses Sought**
7

8          The reaction of the class to a proposed settlement and fee request is a significant factor in

9  approving fees.  *See Red Door Salons,* 2009 WL 248367, at *7; *Omnivision,* 559 F. Supp. 2d at

10  1048.  Here, as of September 15, 2009, the Notice was sent to 47,376 potential Class Members

11  and the Publication Notice ("Summary Notice") was published in the *Investor's Business Daily*

12  on August 7, 2009.  *See* La Count Aff. ¶¶10, 16.  The Court-approved Notice informed Class

13  Members that Lead Counsel "will apply to the Court for an award of attorneys' fees from the

14  Settlement Fund in an amount not to exceed 25% of the Settlement Fund plus interest earned at

15  the same rate and for the same period as earned by the Settlement Fund."  The Notice further

16  advised Class Members of their right to object to or opt out of the Settlement, the Plan of

17  Allocation or the request for attorneys' fees and expenses.  The deadline for submitting any

18  objections or exclusion requests will expire on September 30, 2009.  As of the date of this

19  Motion, no Class Member has objected, and only two exclusion requests have been received.  *Id.*

20  ¶¶17-18.  This factor further supports the requested award of 25% of the Settlement Fund.  *See*

21  *Red Door Salons,* 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision,* 559

22  F. Supp. 2d at 1048 (only three objections supports 28% award).

23

24

25

26  ———————————————————————————

27  have traditionally ranged between 30% and 40% of the total recovery"); *Phemister v. Harcourt*
     *Brace Jovanovich, Inc.,* 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984) ("[t]he percentages
28  agreed on [in non-class-action damage lawsuits] vary, with one-third being particularly
     common").

———————————————————————————

### 7.   The Lodestar Crosscheck Confirms The Reasonableness Of The Requested Fee

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common-fund cases, courts may use a lodestar analysis "as a cross-check on the percentage method." *See Vizcaino*, 142 F. Supp. 2d at 1302; *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 144 (W.D. Wash. 1994); *WPPSS*, 19 F.3d at 1296-98.  Here, such a "cross-check" confirms that the requested fee amount is reasonable.

In *Vizcaino,* the Ninth Circuit noted that

> "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." . . .  In common fund cases, "attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'"

290 F.3d at 1051 (quoting *WPPSS,* 19 F.3d at 1300).

There, the Ninth Circuit affirmed a fee awarded in this District that equaled 28% of the settlement fund and a multiplier of 3.65.  Indeed, in cases applying the lodestar method, fee "'multipliers of between 3 and 4.5 have been common.'"[8]

Here, Plaintiffs' Counsel's lodestar is $3,321,741.25.  *See* Stickney Decl. ¶¶76-77.  Thus, Lead Counsel's request for an award of $3,187,500, is *less* than the lodestar, resulting in a negative multiplier.  Courts have routinely held that much larger positive multipliers are fair and reasonable.  *See, e.g., Vizcaino,* 290 F.3d 1043 (affirming fee award equaling 28% of the settlement fund, resulting in a 3.65 multiplier).  Further, Lead Counsel's lodestar does not

---

[8]   *Rabin v. Concord Assets Group, Inc.,* 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4) (citation omitted); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *see also Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5); *see also In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *17 (S.D.N.Y. Nov. 12, 2004) (multiplier of 2.46); *In re Lucent Tech., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) (multiplier of 2.13); *Kurzweil v. Philip Morris Cos., Inc.*, 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (recognizing that multipliers of between 3 and 4.5 are common in federal securities cases).

---

account for the additional time that will be required of Lead Counsel to participate in the final approval process and to oversee the claims administration process and the distribution of the net settlement funds to eligible claimants.

## IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

Lead Counsel also requests that the Court grant its application for $398,689.23 to reimburse costs in connection with the prosecution of this litigation.[9]  The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris*, 24 F.3d at 19 ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citations omitted).

From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until the action was successfully resolved.  Stickney Decl. ¶88.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this action.  Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the action.  *Id*.

The expenses which Lead Counsel seek are the type of expenses routinely charged to hourly paying clients.  For example, included in the amount of expenses is $148,264.88 paid or payable to Lead Plaintiff's damage consultant.  The damage consultant provided Lead Counsel with substantial assistance in connection with the development, prosecution and settlement of the action, as well as drafting the Plan of Allocation for disbursement of the net settlement fund.  *See*

---

[9]  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.") (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).  The amount requested includes the expenses of Plaintiffs' Counsel.  *See* Stickney Decl. ¶¶87-94.

Stickney Decl. ¶91.  Additional experts were also necessarily retained in the area of accounting and FDA-approval issues.  *Id.* ¶40.

The expenses also include the costs of on-line legal research in the amount of $40,018.03, and on-line factual research in the amount of $8,760.53.  *Id.* ¶93.  These are the charges for computerized factual and legal research services such as *Lexis-Nexis* and *Westlaw*.  It is standard practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them in researching legal and factual issues.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996).  Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money.  *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).  In approving expenses for computerized research, the court in *Gottlieb v. Wiles* underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged.  150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).

In addition, Lead Counsel received a substantial volume of documents produced by both parties and non-parties during the course of the litigation.  Conversion of electronic documents into a searchable format and duplication of many of these documents, as well as the voluminous Court documents and other publicly-available documents, was necessary for the effective prosecution of the case.  Included in the expense request is $93,696.09, for reimbursement of internal and external copying costs.  Stickney Decl. ¶92.

Further, Plaintiffs' Counsel were required to travel in connection with, among other things, attending depositions, the hearing on Defendants' motions to dismiss, the Case Management Conference, the mediation, and the hearing on Lead Plaintiff's class certification motion, depositions, and the hearing on Lead Plaintiff's motion for preliminary approval of the Settlement.  *Id.* ¶94.  Plaintiffs' Counsel thus incurred the related costs of, for example, airline tickets, meals and lodging.  Included in the expense request is $19,251.21, out-of-town for travel expenses necessarily incurred for the prosecution of this litigation.  The expenses in this category

1    are reasonable in amount, and are properly charged against the fund created.[10]

2           And finally, the Court-approved Notice provided to potential Class Members informed

3    them that Lead Counsel "will apply for the reimbursement of litigation expenses paid or incurred

4    in connection with the prosecution and resolution of the Litigation, in an amount not to exceed

5    $550,000 plus interest earned at the same rate and for the same period as earned by the

6    Settlement Fund."[11]   The amount of expenses now sought is less than the amount included in the

7    Notice.   The deadline for objecting to the fee and expense application or opting out of the

8    Settlement expires on September 30, 2009.   As of the filing date of this Motion, no Class

9    Member has objected, and only two requests for exclusion have been received.  La Count Aff.

10   ¶¶17-18.

11   **V.     CONCLUSION**

12          From the beginning of this litigation, Lead Plaintiff has faced determined adversaries

13   represented by experienced counsel.   With no assurance of success, Lead Plaintiff and Lead

14   Counsel pursued the action, and successfully obtained a $12.75 million Settlement that has

15   accrued interest to the benefit of the Class.   The Settlement reflects Lead Counsel's efforts in the

16   face of significant risk.   Accordingly, Lead Counsel respectfully submits that the Court should

17   approve the fee and expense application and enter the proposed Order submitted herewith

18   awarding Lead Counsel 25% of the Settlement Fund, or $3,187,500 in fees, plus interest at the

19

20

21

22   ─────────────────────

23   [10]  *See Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and

24   remanded on other grounds*, 461 U.S. 952 (1983); *see also Red Door Salon,* 2009 WL 248367,
     at *7 (approving of expenses relating to "online legal research, travel, postage and messenger

25   services, phone and fax charges, copying, court costs, and the costs of travel"); *Omnivision,* 559
     F. Supp. 2d at 1048 (approving of expenses relating to "photocopying, printing, postage and

26   messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants,
     and the costs of travel for various attorneys and their staff throughout the case").

27   [11]  The Notice further informed Class Members that "If the Court approves Lead Counsel's fee

28   and expense application, the average cost per affected share of common stock will be
     approximately $0.07."

─────────────────────

1 | rate accrued by the Settlement Fund, and $398,689.23 in expenses, plus interest at the rate
2 | accrued by the Settlement Fund.

3 | Dated: September 18, 2009      Respectfully submitted,

4 |                   BERNSTEIN LITOWITZ BERGER
5 |                     & GROSSMANN LLP

6

7 |                   */s/ David R. Stickney*
                   DAVID R. STICKNEY

8 |                   DAVID R. STICKNEY
9 |                   NIKI L. MENDOZA
                  TAKEO A. KELLAR
10 |                   12481 High Bluff Drive, Suite 300
                  San Diego, CA 92130
11 |                   Tel:    (858) 793-0070
                  Fax:   (858) 793-0323

12 |                   *Attorneys for Lead Plaintiff Teachers' Retirement*
                  *System of Oklahoma and Lead Counsel to the Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28